# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

ROBERT MENENDEZ

 and

SALOMON MELGEN,

Defendants.

Crim. No.  2:15-cr-00155
Hon. William H. Walls

## DEFENDANTS' MOTION TO DISMISS THE INDICTMENT FOR ERRONEOUS INSTRUCTIONS TO THE GRAND JURY ON SPEECH OR DEBATE CLAUSE LAW, FIRST AMENDMENT LAW AND OTHER ISSUES
### (Motion to Dismiss No. 4)

Abbe David Lowell
Jenny R. Kramer
Christopher D. Man
Scott W. Coyle
**CHADBOURNE & PARKE LLP**
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 974-5600

Kirk Ogrosky
Murad Hussain
**ARNOLD & PORTER LLP**
555 12th Street, N.W.
Washington, DC 20004
 (202) 942-5330

Raymond M. Brown
**GREENBAUM ROWE SMITH & DAVIS LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095
(732) 476-3280

Matthew I. Menchel
Michael C. Fasano
**KOBRE & KIM LLP**
2 South Biscayne Boulevard, 35th Floor
Miami, FL 33131
 (305) 967-6108

Stephen M. Ryan
Thomas J. Tynan
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

*Counsel for Defendant*
*Senator Robert Menendez*

*Counsel for Defendant*
*Dr. Salomon Melgen*

## TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................1

ARGUMENT .......................................................................................................................1

I.     THE PROSECUTORS ERRONEOUSLY INSTRUCTED THE GRAND
JURY ON THE APPLICABLE LAW AND DISMISSAL IS REQUIRED ......................2

      A.    Prosecutors Erroneously Instructed The Grand Jury On Speech
Or Debate Clause Immunity And Dismissal Is Required .......................................5

           1. The erroneous instruction .................................................................................5

           2. The need for dismissal ...................................................................................10

      B.    Prosecutors Failed To Instruct The Grand Jury On Its Heightened
Burden In Charging Political Contributions As Bribes And Dismissal
Is Required ...........................................................................................................13

      C.    Prosecutors Erroneously Instructed That Gifts To Obtain Access To
A Senator Constitute Bribery And Dismissal Is Required....................................16

           1.    Prosecutors improperly suggested gifts to obtain access to a
Senator constitute bribery ........................................................................16

           2.    The prosecutors' efforts to lower the bar on what constitutes
bribery required dismissal........................................................................16

II.    THE ERRONEOUS MODEL GRAND JURY INSTRUCTIONS REQUIRE
DISMISSAL OF THE INDICTMENT...........................................................................19

      A.    The Model Grand Jury Instructions Are Unconstitutional Because
They Instruct Grand Jurors They Must Indict Upon Finding
Probable Cause.....................................................................................................21

      B.    The Instructions Impermissibly Encourage Deference To The
Prosecution...........................................................................................................25

      C.    The Erroneous Charge Created A Structural Error, Requiring Reversal..............26

CONCLUSION..................................................................................................................27

TABLE OF AUTHORITIES

CASES

Bank of Nova Scotia v. United States, 487 U.S. 250 (1988)........................................................27

Branzburg v. Hayes, 408 U.S. 665 (1972)..................................................................20

Citizens United v. FEC, 558 U.S. 310 (2010) ........................................................5, 17

Gaither v. United States, 413 F.2d 1061 (D.C. Cir. 1969)..................................................22

In re Grand Jury Subpoena, 745 F.3d 681 (3d Cir. 2014) ..............................................20

McCormick v. United States, 500 U.S. 257 (1991)..................................................4, 13

McCutcheon v. FEC, 134 S. Ct. 1434 (2014)..................................................15, 17, 19

Moody v. United States, 377 F.2d 175 (5th Cir. 1967) ..................................................26

Quercia v. United States, 289 U.S. 466 (1933)..................................................26

Sorrell v. IMS Health Inc., 131 S. Ct. 2653 (2011) ..................................................17

Stirone v. United States, 361 U.S. 212 (1960)..................................................3, 20

United States v. Asdrubal-Herrera, 470 F. Supp. 939 (N.D. Ill. 1979) ..................................21

United States v. Assi, 748 F.2d 62 (2d Cir. 1984) ..................................................26

United States v. Braniff Airways, Inc., 428 F. Supp. 579 (W.D. Tex. 1977)..................... 10-11

United States v. Breslin, 916 F. Supp. 438 (E.D. Pa. 1996) ..................................................1

United States v. Calandra, 414 U.S. 338 (1974)..................................................1, 19

United States v. Cerullo, 2007 WL 2462111 (S.D. Cal. 2007)..................................15, 18

United States v. Ciambrone, 601 F.2d 616 (2d Cir. 1979) ..................................... 2-3, 12

United States v. Cotton, 535 U.S. 625 (2002) ..................................................1

United States v. Cox, 342 F.2d 167 (5th Cir. 1965) ..................................................22

United States v. Donna, 366 F. App'x. 441 (3d Cir. 2010) ..................................................13

United States v. Helmsley, 866 F.2d 19 (2d Cir. 1989)....................................................20

United States v. Hogan, 712 F.2d 757 (2d Cir. 1983) ................................................2, 20

United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992)...................................................21

United States v. Knight, 490 F.3d 1268 (11th Cir. 2007)...............................................23

United States v. Leeper, 2006 WL 1455485 (W.D.N.Y. May 22, 2006) .......................3

United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002)........................................23, 25

United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004) ..............................22, 25

United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) ...........................23-27

United States v. Pellegrino, 470 F.2d 1205 (2d Cir. 1972)............................................26

United States v. Peralta, 763 F. Supp. 14 (S.D.N.Y. 1991)......................................14, 26

United States v. Salahuddin, 765 F.3d 329 (3d Cir. 2014) ...........................................13

United States v. Samango, 607 F.2d 877 (9th Cir. 1979) ..........................................3, 20

United States v. Sanchez, 269 F.3d 1250 (11th Cir. 2001)............................................21

United States v. Sears, Roebuck & Co., 719 F.2d 1386 (9th Cir. 1983) .........................2

United States v. Sigma Int'l, Inc., 244 F.3d 841 (11th Cir. 2001)...................................3

United States v. Stevens, 771 F. Supp. 2d 556 (D. Md. 2011) ................................. 11-12

United States v. Twersky, 1994 WL 319367 (S.D.N.Y. June 29, 1994)....................2, 10

United States v. Vetere, 663 F. Supp. 381 (S.D.N.Y. 1987) ........................................26

United States v. Williams, 504 U.S. 36 (1992).............................................................19

United States v. Wright, 667 F.2d 793 (9th Cir. 1982)....................................................2

Vasquez v. Hillery, 474 U.S. 245 (1986)..............................................................21-22, 26

Williams-Yulee v. The Florida Bar, 135 S. Ct. 1656 (2015).........................................17

Wood v. Georgia, 370 U.S. 375 (1962) ........................................................................1, 3

## MISCELLANEOUS

Niki Kuckes, <u>The Democratic Prosecutor: Explaining the Constitutional Function of the</u>
<u>Federal Grand Jury</u>, 94 Geo. L.J. 1265 (2006) ............................................................................25

Roger A. Fairfax, <u>Grand Jury Discretion and Constitutional Design,</u>
93 Cornell L. Rev. 703 (2008) ............................................................................25

1 S. Beale et al., <u>Grand Jury L. and Prac.</u> § 1:7 (2d ed. 1997)......................................................21

## INTRODUCTION

The prosecution compromised the independence of the grand jury and its ability to fairly determine probable cause by providing the grand jury erroneous legal instructions as to what conduct can be charged and by restricting the scope of what the grand jury could consider while deliberating.  In addition, the model grand jury charge improperly told the grand jury that it must indict if it found probable cause, when the Supreme Court has held otherwise, and improperly vouched for the prosecutors.  The Indictment must be dismissed.

## ARGUMENT

The Grand Jury Clause provides "[n]o person shall be held to answer for a capital, or otherwise infamous, crime, unless on a presentment or indictment of a Grand Jury."  U.S. Const., amend V.  The grand jury serves two important functions in the criminal justice system.  It determines "whether there is probable cause to believe a crime has been committed" and, more importantly, protects citizens against "unfounded criminal prosecutions."   United States v. Calandra, 414 U.S. 338, 343 (1974).

> [The grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive prosecution; it serves the invaluable function in our society of standing between the accuser and the accused . . . to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

Wood v. Georgia, 370 U.S. 375, 390 (1962); see also see United States v. Cotton, 535 U.S. 625, 634 (2002) ("[T]he Fifth Amendment grand jury right serves a vital function in providing for a body of citizens that acts as a check on prosecutorial power.").  As Judge Friendly observed: "That a grand jury may legitimately perform a quasi-equitable function is implicit in its role as 'an irresponsible utterance of the community at large, answerable only to the general body of citizens, from whom they come at random, and with whom they are again at once merged.'"

1

United States v. Ciambrone, 601 F.2d 616, 629 n.2 (2d Cir. 1979) (Friendly, J., dissenting) (quoting In re Kittle, 180 F. 946, 947 (S.D.N.Y. 1910) (L. Hand, J.)).  But the grand jury cannot operate as an "independent and informed grand jury" or "determine whether a charge is founded upon reason" if it receives erroneous jury instructions that compromise the grand jury's independence or that misinform the grand jury as to what constitutes probable cause to believe a particular offense may have been committed.  Both types of errors occurred here.

## I.      THE PROSECUTORS ERRONEOUSLY INSTRUCTED THE GRAND JURY ON THE APPLICABLE LAW AND DISMISSAL IS REQUIRED

"As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law 'to enable it intelligently to decide whether a crime has been committed.'"  United States v. Twersky, 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994) (internal citation omitted).  "[W]hile courts are generally reluctant to grant motions to dismiss an indictment based on faulty instructions, an indictment will be dismissed where, for example, the evidence clearly establishes a defense to the charge and the government fails to inform the grand jury of the legal requirements of the defense."  Id. at *4.  In addition, "courts tend to look less leniently upon erroneous legal instructions where the instructions were made with the intent of precluding a line of relevant inquiry or when other misconduct by the prosecutor suggests a pattern of overreaching."  Id.  A "grand jury indictment" should be dismissed where "the record shows that the conduct of the prosecuting attorney was flagrant to the point that the grand jury was 'deceived' in some significant way."  United States v. Wright, 667 F.2d 793, 796 (9th Cir. 1982); United States v. Sears, Roebuck & Co., 719 F.2d 1386, 1391 (9th Cir. 1983) ("Dismissal of an indictment is . . . warranted on constitutional grounds if prosecutorial misconduct has undermined the grand jury's ability to make informed and objective evaluation of the evidence presented to it."); see also United States v. Hogan, 712 F.2d 757, 759 (2d Cir. 1983) (explaining

"the gain in prosecutor's influence over grand juries is all the more reason to insist that these limitations [on misleading the grand jury] be observed strictly") (affirming dismissal of indictment for prosecutorial misconduct before grand jury); United States v. Samango, 607 F.2d 877, 884 (9th Cir. 1979) (affirming dismissal of indictment for prosecutorial abuse before grand jury); United States v. Ciambrone, 601 F.2d 616, 622 (2d Cir. 1979) (noting a grand jury "must lean heavily upon the United States Attorney as its investigator and legal advisor").[1]

The prosecution ran afoul of these requirements in at least three respects. First, the prosecutors refused to answer the grand jurors' questions about the scope of the Speech or Debate Clause immunity, and told the grand jurors that it is beyond their authority to decide Speech or Debate Clause immunity issues. Telling the grand jury that it had to decide whether there was probable cause to believe Senator Menendez committed various crimes, without being able to consider whether or not his conduct was immunized by the Constitution, severely compromised the grand jury's ability to determine whether those charges were "founded upon reason." Wood, 370 U.S. at 390. The grand jury's ability to serve as a buffer, acting "independently of either prosecuting attorney or judge," also was compromised by telling the jury it could not independently determine the immunity issue for itself. Stirone v. United States, 361 U.S. 212, 218 (1960).

---

[1]    See also United States v. Sigma Int'l, Inc., 244 F.3d 841, 856 (11th Cir. 2001) (dismissing indictment for erroneous prosecutorial instructions and other misconduct, noting it would "dismiss an indictment . . . so overborne by a prosecutor or judge that the indictment was, in effect, the prosecutor's or judge's handiwork, and not the result of considered judgment by an independently functioning grand jury."), vacated for *en banc* review, 287 F.3d 1325 (11th Cir. 2012). Following a subsequent plea, the appeal in Sigma was dismissed as moot without an *en banc* opinion, but other courts have found the panel decision persuasive. United States v. Leeper, 2006 WL 1455485, at *2 n.2 (W.D.N.Y. May 22, 2006); see id. at *5 (dismissing indictment because letting it stand "would make a mockery out of the entire grand jury process and render the Grand Jury Clause a nullity").

Second, the grand jury indicted Dr. Melgen and Senator Menendez for bribery involving political contributions, but it does not appear from any of the transcripts the defense has been provided that the grand jury received any <u>McCormick</u> instruction regarding the prosecution's heightened burden in the political contribution context. (<u>See</u> MTD 8 (First Amendment).) Campaign contributions can be charged as bribery, "but only if the payments are made in return for an <u>explicit</u> promise or undertaking by the official to perform or not to perform an official act." <u>McCormick v. United States</u>, 500 U.S. 257, 273 (1991) (emphasis added). Because this is an added requirement on the statutes in question, simply reading the statute to the grand jury without a specific <u>McCormick</u> instruction would not convey to the grand jury what is needed to determine whether probable cause exists in the political contribution context. The Indictment contains no reference to any "explicit" *quid pro quo*; rather the Indictment reflects that the government persuaded the grand jury to indict on a basis <u>McCormick</u> found improper – by looking to whether a legislator acted for the benefits of a donor "shortly before or after campaign contributions are solicited and received." <u>Id.</u> at 272. Because a grand jury's finding of probable cause to believe a crime has been committed is meaningless when the grand jury is told that offense is more easily proven than the law allows, the Indictment must be dismissed.[2]

---

[2]     Relatedly, dismissal is also required because the prosecutors failed to instruct the grand jury that political contributions by Dr. Melgen to Majority PAC, an independent political action committee (*i.e.*, "Super PAC"), cannot give rise to *quid pro quo* corruption unless Majority PAC coordinated its election expenditures with Senator Menendez. (<u>See</u> MTD No. 9.) In the context of contributions to and expenditures by independent groups, the Supreme Court "has effectively held that there is no corrupting '*quid*' for which a candidate might in exchange offer a corrupt '*quo*,'" <u>SpeechNow.org v. FEC</u>, 599 F.3d 686, 694-95 (D.C. Cir. 2010) (*en banc*), because "[t]he intervention of a political action committee that is independent of a specific candidate breaks the "'candidate-funding circuit,'" <u>Lodge No. 5 of Fraternal Order of Police ex rel. McNesby v. City of Philadelphia</u>, 763 F.3d 358, 378 (3d Cir. 2014) (quoting <u>Ariz. Free Enter. Club's Freedom Club PAC v. Bennett</u>, 131 S. Ct. 2806, 2826 (2011)).

Third, the prosecutors argued to the grand jury that Dr. Melgen gave things of value to Senator Menendez so Dr. Melgen would gain access to the Senator, but the government does not appear to have told the grand jury that such "access," as a matter of law, cannot be the basis for a bribery charge (even ignoring the fact that Dr. Melgen had the same level of "access" to Senator Menendez long before he was a Senator).  Indeed, the Supreme Court has held that receiving special access or even favoritism is not corruption, and efforts to cultivate such access are protected by the First Amendment.  See, e.g., Citizens United v. FEC, 558 U.S. 310, 359 (2010).  Because the grand jury was erroneously instructed that constitutionally-protected First Amendment activity could be the basis for finding probable cause to believe a bribery had been committed, the Indictment must be dismissed.

**A.**    **Prosecutors Erroneously Instructed The Grand Jury On Speech Or Debate Clause Immunity And Dismissal Is Required.**

**1.**    **The erroneous instruction**

The prosecution asked questions to which Senator Menendez had objected on Speech or Debate Clause grounds.  When they did, grand jurors asked questions about the scope of Speech or Debate Clause immunity.  The prosecutors then erroneously instruction the grand jury that it was an issue the grand jury could not independently consider, and compromised the grand jury.  This was wrong.  Before the grand jury, several witnesses invoked the Speech or Debate Clause, refusing to answer certain questions that were asked due to that immunity.  (See, e.g., Barnard 8/13/14 Tr. at 28, 53-55, 61-63; Palmer 8/13/14 Tr. at 14, 22-37; Talbot 8/13/14 Tr. at 63-71; Kelly 9/3/14 Tr. at 79; Barnard 11/12/14 Tr. at 16-17, 27, 32, 38, 41-62; Talbot 11/12/14 Tr. at 22-28.)  The witnesses often provided their understanding of the relevance of the Speech or Debate Clause to the issues the grand jury was considering.  Emma Palmer, a former policy advisor to Senator Menendez, explained that she had conferred with her lawyer, and she

understood that she could answer questions about casework, but "casework would also be protected under speech and debate" if that "casework might have had a larger public policy implication[]." (Palmer 8/13/14 Tr. at 24; see id. at 22 ("The question is whether it touched on a larger public policy issue, whether the specific casework delved into a larger public policy question."), 33 (distinguishing "pure casework, without policy implications").) Michael Barnard, another policy advisor to Senator Menendez, explained it was his understanding that the Speech or Debate Clause applies to deliberations on a pending Presidential nominee awaiting Senate confirmation. (Barnard 8/13/14 Tr. at 48.) He clarified that, in his opinion, it did not matter for purposes of the Speech or Debate Clause who a Senator consulted about a nominee, even if that person is "a lobbyist" or "people who are outside of Congress." (Id. at 48-49.)

The witnesses also provided some understanding of how the Speech or Debate Clause immunizes Senator Menendez. Barnard explained "the Senator has the right to invoke said privilege in the capacity of his official duties per the Constitution." (8/13/14 Tr. at 29.) Later, Prosecutor Koski asked Barnard for his "understanding" of whether a Senator reaching out to the Executive Branch is "conduct protected by the Speech-or-Debate Clause," and Barnard answered that his attorneys advised him it would be. (Id. at 63.) Thus, the grand jury understood it was Barnard's belief that the Constitution protects the Senator's conduct in some situations.

Kerri Talbot, Senator Menendez's Chief Counsel, explained the Speech or Debate Clause gave Senator Menendez a "use privilege." (Talbot 11/12/14 Tr. at 22.) She explained that the Speech or Debate Clause is "a use privilege, so that my answering the questions about an email you already have does not affect their waiver of the privilege." (Id.) After Talbot said that she would answer the prosecutors' questions, but that it would not result in a waiver of the Senator's privilege, the prosecutor did not ask for an answer, and a grand juror asked: "Didn't she just say

she would answer the questions?  I don't understand." (Id. at 25.)  Mr. Koski responded:

"[W]hether she's prepared to answer the questions doesn't affect a speech or debate assertion

because the speech or debate clause privilege is held not by this witness but by Senator

Menendez.  And so this witness can't waive that privilege assertion for the Senator." (Id. at 26.)

Mr. Koski then asked Talbot to confer with Senator Menendez's counsel about what privileges

the Senator is asserting, and she reported back that the Senator's counsel advised her "they're not

my attorney and there's no reason for them to confer with me about what they're asserting."

(Id.)  Plainly, Talbot's testimony conveyed to the grand jury that the Speech or Debate Clause

was a "use privilege" that belonged to the Senator, and this privilege – whatever it is – would not

be waived by her answering the grand jury's questions.

Prosecutor Cooney conveyed the same idea, instructing the grand jury that the privilege

"is not held by this witness" and the privilege is "such an important privilege and such an

important part of the constitution" that they were carefully "not eliciting testimony about

something when the senator does not intend to waive it." (Id. at 27-28.)[3]  Mr. Cooney correctly

described the Speech or Debate Clause as "important," but he did not explain why it was

important or why it would be relevant to the grand jury.  His instruction made clear that a

situation could arise where a witness disclosed something that was privileged without the

approval of the Senator, but he did not explain the consequence of that, and those consequences

are tremendously important to the grand jury.

_____

[3]      As noted in MTD No. 3, the prosecution chose to be less careful about excluding
potential Speech or Debate privileged evidence after the Third Circuit rejected their blanket
claim that the Clause did not apply to the contested evidence.  Rather than follow the remand
procedure of allowing the District Court to act as a filter for such contested evidence, the
prosecution chose to bypass the Court altogether and introduce the disputed evidence unilaterally
as hearsay through its case agent.  (MTD No. 3 at 1-23.)

These explanations did not go far enough, leaving the grand jury with a misimpression of the law.  The grand jury should have been told that it would be improper for Speech or Debate privileged information to have been disclosed to them, let alone used by them, and not because it was some sort of secret, like attorney-client privileged information.  Most Speech or Debate privileged information is not secret, but consists of things such as publicly recorded votes, transcribed speeches and hearings, and published reports.  Once the prosecution decided to wade into the Speech or Debate Clause waters and spurred questions from the grand jury, the grand jury should have been told that the reason the Speech or Debate Clause is so important is that it is a source of immunity, and the grand jury cannot consider anything that is covered by the Clause as a basis for bringing any charge.  Just as the grand jury should have been told to disregard any Speech or Debate privileged information a witness may have disclosed because of that immunity, the grand jury should have been instructed that any conduct that was covered by the Clause could not be the basis for any charge.  In other words, because covered conduct is immune, the grand jury should have been instructed that it could not find probable cause to indict on any charge that depended on proof of an immunized act.

These various discussions are difficult enough to follow for those few lawyers who have studied the Speech or Debate Clause.  It must have been even more difficult for a lay grand jury to follow, particularly when the answers were coming in piecemeal through witnesses who candidly conceded they were not experts on the Clause and were doing their best to follow the instructions of lawyers who were not permitted in the grand jury room.  The grand jurors clearly had questions.

After Barnard testified, a grand juror asked the prosecutor:  "[C]an you review for us the terms of the Speech and Debate Clause on what it can or could be <u>used</u> for?"  (Barnard 8/13/14

tr. at 64 (emphasis added).)  Mr. Koski explained the "Speech or Debate Clause is a provision in the Constitution, which says that members of the House or Senate cannot be called into question for their speech or debate." (Id. at 64.)  He went on to explain that "it has been limited to legislative activity," and "not necessarily everything a U.S. Senator or a member of Congress does in his official capacity, only to legislative activity." (Id. at 65.)  That answer, however, only partially explained what is covered by the Speech or Debate Clause; it did not even attempt to explain how it could be used.  For example, it does not explain how it can be both a testimonial privilege that could be used as a basis for refusing to answer a question and – more importantly in this case – that it is a source of immunity, such that there can be no probable cause to charge any conduct immunized by the Clause as a crime.  It also explained in only a very generic way what is covered.

The grand jury understandably had follow-up questions.  A grand juror asked:  "But that can include any type of content, dialogue, communication regarding any legislative information or act?" (Id.)  Mr. Koski then explained that he understood why they would "be very curious about the scope and application of the Speech or Debate Clause" after it had come up so much, but he refused to answer the question and shut down all discussion about it.  He explained:

> I want to make sure that I, I don't give you too much law on the Speech or Debate Clause because this is not an issue for you to decide.  You all should not be deciding whether or not this is about an invalid assertion of the Speech or Debate Clause.  That's an issue that if we need to raise, we'll bring it before a judge, and the judge will make a determination.

(Id.)

Mr. Koski was wrong.  The issue was one for the grand jury, and Mr. Koski's legal instruction eliminated any issue of Speech or Debate Clause immunity from consideration by the grand jury.  Rather than tell the grand jury that the Speech or Debate Clause is a source of

immunity for the Senator, such that there is no probable cause to charge any conduct immunized by the Clause as a crime, Mr. Koski's instruction left the impression that the only relevance of the Clause was with respect to the testimony a grand jury witness may disclose.  In addition, Mr. Koski's answer told the grand jury not to consider Speech or Debate Clause issues at all.  He would not even give them enough law (what he called "too much law") so that they could understand the issue, emphasizing "this is not an issue for you to decide," that "you should not be deciding" it, and the only person who may ever decide such issues is a "judge" and, even then, only if the prosecutors "bring it before a judge."  (Id.)

Because the prosecutors' instructions to the grand jury both misinformed the grand jury about the immunity function of the Speech or Debate Clause and precluded the grand jury from even considering the issue in determining probable cause, the grand jury's independence and ability to fairly evaluate probable cause was compromised.[4]  The Indictment must be dismissed.

### 2.   The need for dismissal

The prosecution's refusal to instruct the grand jury on Speech or Debate Clause immunity and its erroneous instruction that the grand jury could not even consider the issue in determining probable cause "precluded a line of relevant inquiry," requiring dismissal of the Indictment.  Twersky, 1994 WL 319367, at *4.  The situation here is analogous to the erroneous instruction that led to the dismissal of the indictment in United States v. Braniff Airways, Inc., 428 F. Supp. 579 (W.D. Tex. 1977).

---

[4]      Additionally, Agent Sheehy provided the grand jury with a false understanding of the law concerning Medicare reimbursement, which improperly conveyed that Dr. Melgen's multi-dosing of Lucentis was illegal and that Senator Menendez's purported "advocacy" of Dr. Melgen was without merit.  Those erroneous legal instructions prejudiced the grand jury against both Defendants.  (MTD No. 3 at 26-31.)

In Braniff, the prosecution had secured a criminal antitrust indictment against an airline, but the prosecution never informed the grand jury that there was statutory immunity for airlines in certain circumstances. As the court explained, "[n]o basis existed to indict these air carriers under the Sherman Act if their conduct is immunized by virtue of acts performed under Section 414," but "the grand jury was never informed of the immunization afforded interstate air carriers when their activities fall under the provisions of Section 414 of the Federal Aviation Act." Id. at 586. The court rejected the government's arguments that it was "not required to inform the grand jury of possible defenses" because immunity is different. Id. The

> distinction [is] that per se there can be no criminality in conduct which is made immune by statute. Whether the acts and conduct of the defendants were performed pursuant to the immunization afforded by the Federal Aviation Act, thus becomes a matter for grand jury determination. Yet if the elements of immunity are unknown to the grand jury, if the very existence of a statute conferring immunity is not disclosed, it is obviously unable to obtain the complete picture to which it is entitled for a proper decision.

Braniff Airways, Inc., 428 F. Supp. at 586. Consequently, the court found it necessary to "strike the indictment." Id. at 589; see also United States v. Breslin, 916 F. Supp. 438, 445-46 (E.D. Pa. 1996) (dismissing indictment for flawed legal instruction by prosecutor).

The situation here is more serious than in Braniff. Here, the immunity at issue is a constitutional, rather than a statutory, immunity. Moreover, in Braniff, the government simply failed to instruct on the immunity. Here, the grand jury itself asked about the Speech or Debate Clause, but the prosecution did not properly instruct the grand jury that it was a source of immunity and affirmatively instructed the grand jury not to consider the Speech or Debate Clause in its deliberations.

Also instructive here is United States v. Stevens, 771 F. Supp. 2d 556 (D. Md. 2011). The grand jury had charged a corporate executive with obstruction of justice, but the prosecutors had given the grand jury erroneous legal advice when a grand juror "asked a question about the

11

[defendant's] advice of counsel defense." Id. at 564. Although advice of counsel is labeled a "defense," the court explained that is a "misnomer" because it actually "negates the element of wrongful intent of a defendant that is required for conviction." Id. Because it goes to the elements of what the government must prove, the court explained "the Government's instruction to the grand jury regarding the advice of counsel defense must be closely scrutinized." Id. at 566. Even if the government was not required to give any such instruction, "where a prosecutor's legal instruction to the grand jury seriously misstates the applicable law, the indictment is subject to dismissal if the misstatement casts 'grave doubt that the decision to indict was free from substantial influence' of the erroneous instruction." Stevens, 771 F. Supp. 2d at 567 (quoting United States v. Peralta, 763 F. Supp. 14, 21 (S.D.N.Y. 1991)); see Ciambrone, 601 F.2d at 623 (noting that "the prosecutor's right to exercise some discretion and selectivity in the presentation of evidence to a grand jury does not entitle him to mislead it"); id. at 629 (Friendly, J., dissenting) ("[W]hen a grand juror requests advice, the prosecutor may not fence with him but must respond fully and fairly."). In Stevens, the error was that the prosecutor conveyed that the defense was only applicable at trial, and that it was not something for the grand jury to consider at the charging stage. Id. at 567. That required dismissal of the indictment. Id. at 568.

Stevens noted that the grand juror's question about advice of counsel was "akin to asking about the elephant in the room," as there was considerable evidence the corporate executive led a team of lawyers. Id. The same sort of situation existed here. There was considerable discussion of the Speech or Debate Clause before the grand jury, so the jury understandably asked about it. But unlike Stevens, in this case the prosecutors did not even inform the grand jury that the Speech or Debate Clause provided a defense to liability (whether at trial, or prior to indictment).

Instead, the prosecutors in this case essentially told the grand jury not to worry about it, that it was not something that they needed to consider.  Because the grand jury was precluded from independently considering the issue of immunity in determining whether there was probable cause, the Indictment must be dismissed.

### B.  Prosecutors Failed To Instruct The Grand Jury On Its Heightened Burden In Charging Political Contributions As Bribes And Dismissal Is Required

The Indictment bases numerous charges of bribery on political contributions from Dr. Melgen that allegedly benefited Senator Menendez.  (Indict. ¶¶ 12, 16, 38-43, 46-63, 221, 243, 245, 247, 251, 255, 259, 265.)  The Supreme Court, however, has held that because donors often make political contributions to candidates and other entities with the expectation or hope that those candidates will support the donor's political agenda, such contributions may form the basis of a criminal charge only if the government can prove that "the payments are made in return for an explicit promise of undertaking by the official to perform or not to perform an official act." McCormick, 500 U.S. at 273 (emphasis added).  Without such a restriction, officials who acted for the benefit of donors "shortly before or after campaign contributions [were] solicited and received" would constantly be in jeopardy; donors, in turn, would be discouraged from engaging in constitutionally protected conduct.  Id. at 272; see also United States v. Salahuddin, 765 F.3d 329, 343 n.9 (3d Cir. 2014) (noting the district court gave a proper instruction requiring an "explicit promise" where political contributions are at issue) (emphasis in original).  DOJ also has indicated it will adhere to that distinction in this Circuit.  United States v. Donna, 366 F. App'x. 441, 444 n.3 (3d Cir. 2010) (noting the government had made assertions about corrupt political contributions, but declining to address them further because "the government acknowledges that is does not have evidence of an explicit quid pro quo . . . and it acknowledges that campaign contributions cannot satisfy a quid pro quo requirement for a criminal conviction

arising from the payment and receipt of the contributions unless the agreement was explicit.") (emphasis in original). The prosecutors, however, did not do so in this case.

The Indictment is completely silent about the supposed agreement between Senator Menendez and Dr. Melgen – no "explicit" agreement is charged and no evidence of an "explicit" agreement was put before the grand jury because there was no such agreement. Rather, all the Indictment alleges is what the Supreme Court in McCormick found to be insufficient: inference of an explicit agreement by comparing the timing of official acts with the timing of campaign contributions. In short, the Indictment fails to allege an explicit *quid pro quo*, and the reason for that is clear – there is no evidence of it, and the prosecution failed to instruct the grand jury on this element of the offense.

That makes this case similar to Peralta. There, the government secured an indictment for drug possession, but the grand jury had questioned the prosecutor about how they could establish possession when there was no evidence of actual possession. The prosecutor explained that the government's theory was based on constructive possession, but his instruction to the jury was erroneous and suggested it was far easier for the government to establish constructive possession than the law allows. 763 F. Supp. at 18-20. The Court dismissed the indictment because those instructions lowered the government's burden, so that the grand jury could find probable cause based on less of a showing than the law requires. Id. at 21.

The same problem occurred here. While a jury can understand the role of ordinary gifts and of actual possession, the jury would not understand the McCormick limitation on campaign contributions or the law of constructive possession without adequate instructions. As in Peralta, the failure to give a proper instruction here allowed the government to improperly lower its burden and thereby obtain an Indictment using an improper standard for probable cause.

14

The situation here is also similar to United States v. Cerullo, 2007 WL 2462111 (S.D. Cal. 2007).  There, a minister was prosecuted for tax evasion for not reporting all the money he received in collections following his sermons.  The Supreme Court had issued a decision that provided "the definitive authority" on how to distinguish taxable income from non-taxable gifts, but the prosecutor did not explain that distinction to the grand jury.  Id. at *1-2.  The court noted that the "tax statute is silent" on this issue and "the prosecutor did not attempt to inform the grand jury of the Supreme Court's decision."  Id. at *3.  Although there was "no deliberate malice or malicious intent to mislead," the court found the grand jury was misled as to the government's burden and the indictment had to be dismissed. Cerullo, 2007 WL 2462111 at *3 n.3.  In doing so, the court noted that "the grand jury was making judgments on[] an area that is dangerously close to the wide freedoms protected by the First Amendment Free Exercise Clause."  Id. at *4.

As in Cerullo, the prosecutors' failure to explain a relevant Supreme Court decision compromised the grand jury's ability to determine probable cause.  And like Cerullo, the conduct here also comes "dangerously close" to protected First Amendment freedoms.   Political contributions to candidates and other entities are protected by the First Amendment.  See, e.g., McCutcheon v. FEC, 134 S. Ct. 1434, 1444 & n.2 (2014); SpeechNow.org v. FEC, 599 F.3d 686, 694-95 (D.C. Cir. 2010) (en banc).  The Court should protect this First Amendment principle by dismissing an indictment that is returned by a grand jury that has not been instructed on whether there was an "explicit" agreement to engage in bribery. (See MTD No. 8 (First Amendment).)

15

### C. Prosecutors Erroneously Instructed That Gifts To Obtain Access To A Senator Constitute Bribery And Dismissal Is Required

#### 1. Prosecutors improperly suggested gifts to obtain access to a Senator constitute bribery

Prosecutors tried to build a case for the grand jury that Dr. Melgen obtained special access to Senator Menendez by giving him things of value, including campaign contributions – as though Dr. Melgen needed to "buy" special access to one of his closest friends of more than 20 years, to whom he had the same "access" long before his friend was a Senator. For example, Mr. Koski repeatedly asked Senator Menendez's former Chief of Staff, Daniel O'Brien, whether "an ordinary citizen" would "have the same <u>access</u> to Senator Menendez that Dr. Melgen had?" (O'Brien 1/21/15 Tr. at 84-85 (emphasis added).) O'Brien answered that "[c]ampaign contributions I would say facilitate access. I don't think they facilitate decisions or legislation, but it's clear that, you know, folks who give contributions get access to elected officials across the board." (<u>Id.</u> at 84.) He added "it's their constitutional right – they, by proximity they gain, they gain the ear of legislators and policymakers and decision makers. It's the process." (<u>Id.</u> at 85.) Mr. Koski jumped on this answer as though it was some major concession of illegal conduct (which is how the grand jury must have understood the exchange). He asked: "So you don't dispute that Dr. Melgen had <u>special access</u> to Senator Menendez?" (<u>Id.</u> (emphasis added).) Again, O'Brien explained that Dr. Melgen had access, but "[i]t wasn't that, oh, we have to do this because Dr. Melgen brought this issue to Senator Menendez's attention." (<u>Id.</u>)

#### 2. The prosecutors' efforts to lower the bar on what constitutes bribery required dismissal

Despite Mr. Koski's apparent beliefs to the contrary, the Supreme Court has categorically rejected any attempt by the government to equate "access" or "special access" with corruption.

16

The fact that speakers [*i.e.*, political donors] <u>have influence over and access to</u> elected officials does not mean that these officials are corrupt:  "<u>Favoritism and influence</u> are not . . . avoidable in representative politics.  It is in the nature of an elected representative to favor certain policies, and, by necessary corollary, to favor the voters and contributors who support those policies.  It is well understood that a substantial and legitimate reason, if not the only reason, to cast a vote for, or to make a contribution to, one candidate over another is that the candidate will respond by producing those political outcomes the supporter favors.  Democracy is premised on responsiveness."  Reliance on a "generic <u>favoritism or influence theory</u> . . .  is at odds with standard First Amendment analyses because it is unbounded and susceptible to no limiting principle."

(<u>Citizens United v. FEC</u>, 558 U.S. 310, 359 (2010) (quoting <u>McConnell v. FEC</u>, 540 U.S. 93, 296-97 (2003) (emphasis added)); <u>see</u> MTD No. 8 at 3-8.)  The Court emphasized:  "Ingratiation and access, in any event, are not corruption."  <u>Id.</u> at 360.  Moreover, efforts to hinder the "ability to influence" were held to be unconstitutional under the First Amendment in <u>Sorrell v. IMS Health Inc.</u>, 131 S. Ct. 2653, 2670 (2011).

In <u>McCutcheon v. FEC</u>, the Supreme Court explained "the possibility that an individual who spends large sums of money may garner 'influence or access to' elected officials or political parties" "does not give rise to such *quid pro quo* corruption."  134 S. Ct. at 1434 (plurality op.).  Accordingly, "the Government may not seek to limit the appearance of mere influence or access," because there is no governmental interest in such a limitation, and thus no compelling interest to outweigh a donor's First Amendment rights.  <u>Id.</u> at 1451.  Just this Term, in upholding restrictions on judicial campaigns, the Court noted that in legislative campaigns, "politicians are expected to be appropriately responsive to the preferences of their supporter" and to provide "<u>special consideration</u> to his campaign donors."  <u>Williams-Yulee v. The Florida Bar</u>, 135 S. Ct. 1656, 1667 (2015) (emphasis added).  Conversely, judges are expected to maintain independence.  Indeed, as Justice Ginsburg explained, "'Favoritism,' *i.e.*, partiality," may be "inevitable in the political arena."  <u>Id.</u> at 1674 (Ginsburg, J., concurring); <u>see also</u> <u>id.</u>

("'[f]avoritism and influence' are inevitable 'in <u>representative</u> politics.'") (emphasis in original) (citations omitted).

The prosecution's statements to the grand jury that Dr. Melgen's access to Senator Menendez was the *quo* in some kind of *quid pro quo* abrogated First Amendment principles that apply in bribery cases involving political contributions.  Not only is there nothing corrupt about efforts to facilitate access to an elected official, but efforts to criminalize the giving of donations to a campaign (or otherwise prohibit such access) infringe upon the freedoms of speech and association at the heart of the First Amendment.  Yet, over and over, it appears that "access" and mere favoritism are the *quo* repeatedly charged in the Indictment.  For example, several counts charge that Dr. Melgen gave things of value with the intent to influence Senator Menendez in only the most generic sense – "in the performance of official acts, as opportunities arose." (Indict. ¶¶ 229 (Count 2), 231 (Count 3), 235 (Count 5), 239 (Count 7), 243 (Count 9), 247 (Count 11).)  While hardly a model of clarity (which raises numerous questions about what opportunities the grand jury believed were covered by the alleged agreement, their basis for speculating on that, and whether they agreed on the object of this supposed conspiracy), the Indictment squarely criminalizes access.  The grand jury certainly could have understood that to mean that Dr. Melgen's support for Senator Menendez would grant the access to raise issues with him as opportunities arose, and that Dr. Melgen would be more likely to receive the Senator's attention for requests such as asking an Embassy to give a visa application "all due consideration within the requirements of the law."  (Indict. ¶ 88.)  But that is not legally cognizable bribery or corruption.  In this sense, the error here is much like <u>Cerullo</u>, where an indictment was dismissed because the prosecutor's conduct invited the grand jury to cross First Amendment boundaries.  <u>Cerullo</u>, 2007 WL 2462111, at *4.

The difference between mere "access" or "favoritism" and unlawful corruption is an issue that cried out for an instruction before the grand jury. As the Supreme Court has noted,

> [t]he line between *quid pro quo* corruption and general influence may seem vague at times, but the distinction must be respected in order to safeguard basic First Amendment rights. In addition, [i]n drawing that line, the First Amendment requires us to err on the side of protecting political speech rather than suppressing it.

McCutcheon, 134 S. Ct. at 1451. Without such an instruction, grand jurors may very well cross that line and return an indictment based on constitutionally protected First Amendment activity, *i.e.*, contributions that were made merely to obtain access, as opposed to a specific official act. See, e.g., Williams-Yulee, 2015 WL 1913912, at *11 ("Just as inevitably, the personal involvement of the candidate in the solicitation creates the public appearance that the candidate will remember who says yes, and who says no.").

Nevertheless, the prosecutors do not appear to have provided any instruction to the grand jury (at least in what has been provided the defense) that reflects any attempt to draw this "line between *quid pro quo* corruption and general influence," much less a line that errs on the side of protecting First Amendment values. The absence of such an instruction was error, and it invited a wrongful finding of probable cause. This error was further compounded by the government's implications that Dr. Melgen's "access" to his friend Senator Menendez was improper. Dismissal of the Indictment is required.

## II. THE ERRONEOUS MODEL GRAND JURY INSTRUCTIONS REQUIRE DISMISSAL OF THE INDICTMENT

The effective administration of our criminal justice system depends on each of the system's constituent elements functioning properly. The system relies on checks and balances to preserve fundamental fairness throughout the adjudication process. By design, the grand jury is to serve as a buffer, preventing criminal cases from advancing to trial solely at the discretion of

the prosecutor.[5]  In this respect, the grand jury acts as an impartial gatekeeper, screening out charges not warranting prosecution.

Defendants did not get the benefit of the Fifth Amendment right to an independent and properly charged grand jury, because it appears that the charge given to the grand jury improperly advised grand jurors that they must indict on all charges if they find that probable cause exists.  In addition, the grand jury charge also appears to have impermissibly vouched for the prosecutors' credibility.[6]

Unfortunately, prosecutors throughout the country routinely ask courts to instruct grand jurors using the Model Grand Jury Charge adopted by the Federal Judicial Conference, a charge that is constitutionally flawed.  (Ex. A.)  This charge instructs grand jurors that they "must" indict if they find probable cause, even though they are entitled to return a no bill even when they find probable cause.  (Id.)  In addition, the charge improperly praises the prosecutors and

---

[5]     The grand jury must be an investigating body "acting independently of either prosecuting attorney or judge."  United States v. Williams, 504 U.S. 36, 49 (1992) (quotations omitted); see also Stirone, 361 U.S. at 218-19 ("[T]he right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away . . . ."); Calandra, 414 U.S. at 344. Indeed, "[a] grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'"  Id. (quoting United States v. Stone, 429 F.2d 138, 140 (2d Cir. 1970)); Williams, 504 U.S. at 47 (finding function of grand jury is to "serv[e] as a kind of buffer or referee between the Government and the people"); Branzburg v. Hayes, 408 U.S. 665, 686-87 (1972) (noting the "ancient role" of the grand jury in both determining if there is probable cause to believe a crime has been committed and in protecting citizens against unjust prosecution); In re Grand Jury Subpoena, 745 F.3d 681, 687 n.2 (3d Cir. 2014) ("The grand jury belongs to no branch of the government, instead "serving as a kind of buffer or referee between the Government and the people.") (quoting In re Impounded, 241 F.3d 308, 312 (3d Cir. 2001)).

[6]     While the prosecution has provided the Defendants with all testimony before the grand jury, the prosecution has refused to provide the Defendants with the grand jury charge.  Through a separate motion, filed today, the Defendants ask the Court to order disclosure of all instructions to the grand jury.  Absent information to the contrary, Defendants can only assume the model grand jury charge was given.  If it is established that the grand jury received proper instructions, Defendants will withdraw this part of the motion.

vouches for their credibility, thereby stripping the grand jury of its independence.  (Id.)  And, the charge even instructs grand jurors that they cannot question the wisdom of the law at issue, even though the historic and constitutional function of the grand jury is to do just that.

Accordingly, Defendants move this Court to dismiss the Indictment for failing to properly charge the grand jury.  Because this failure constitutes a structural error, dismissal of the Indictment is warranted, and the Court must view this "conduct cumulatively" in determining whether the Grand Jury Clause of the Fifth Amendment was violated.[7]

A.  **The Model Grand Jury Instructions Are Unconstitutional Because They Instruct Grand Jurors They Must Indict Upon Finding Probable Cause**

The charge impermissibly instructed the grand jury that it had to indict if it found probable cause.  The Supreme Court has made clear this model instruction is wrong:

> The grand jury does not determine only that probable cause exists to believe that a defendant committed a crime, or that it does not.  In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense – all on the basis of the same facts.  Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained."

Vasquez v. Hillery, 474 U.S. 245, 263 (1986) (quoting Ciambrone, 601 F.2d at 629  (Friendly, J., dissenting)).[8]  "Since it has the power to refuse to indict even where a clear violation of law is

_____

[7]      Hogan, 712 F.2d at 761; see Samango, 607 F.2d at 884; cf. United States v. Helmsley, 866 F.2d 19, 21 n.2 (2d Cir. 1989) ("[T]he Supreme Court made clear that a pre-conviction challenge may be made on the ground that errors in grand jury proceedings affected the decision to indict.") (citing Bank of Nova Scotia v. United States, 487 U.S. 250 (1988)); United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992) ("[A] district court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding.").

[8]      See also United States v. Asdrubal-Herrera, 470 F. Supp. 939, 942 (N.D. Ill. 1979) ("Just as a prosecutor can, in the exercise of discretion, decline prosecution in the first instance, a grand jury can return a true bill or a no bill as they deem fit."); 1 S. Beale et al., Grand Jury L. and Prac. § 1:7 at 1-31 (2d ed. 1997) ("The indicting grand jury – like the trial jury – may also shield

shown, the grand jury can reflect the conscience of the community in providing relief where strict application of the law would prove unduly harsh."  Gaither v. United States, 413 F.2d 1061, 1066 n. 6 (D.C. Cir. 1969).[9]

The model grand jury charge misleadingly tells grand jurors their sole responsibility is to determine probable cause.  The charge states "[t]he purpose of the Grand Jury is to determine whether there is sufficient evidence to justify a formal accusation against a person."

> Your task is to determine whether the government's evidence as presented to you is sufficient to cause you to conclude that there is probable cause to believe that the accused is guilty of the offense charged against him.  To put it another way, you should vote to indict where the evidence presented to you is sufficiently strong to warrant a reasonable person's believing that the accused is probably guilty of the offense with which [the accused] is charged.

(Ex. A.)  Using the singular terms "task" and "purpose," without ever addressing any other tasks or purposes, misleadingly conveys that grand jurors must indict whenever probable cause is found when, in fact, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained."  Vasquez, 474 U.S. at 263.

This grand jury charge also deprives the grand jury of the ability to act as the conscience of the community by advising the grand jury that it cannot consider either the merit of the law allegedly broken or the seriousness of the sentence that could be imposed.  The charge provides:

the accused from the criminal charges even though there is an adequate evidentiary basis if the grand jurors conclude that the charges are improperly motivated or unjust.").

[9]     See also United States v. Sanchez, 269 F.3d 1250, 1311-12 (11th Cir. 2001) (en banc) (Barkett, J., concurring) ("Under the Fifth Amendment the Constitution gives the grand jury complete discretion to provide the parameters of a criminal proceeding, vesting it with the power to indict based on the evidence presented to it and the absolute choice not to indict, notwithstanding any evidence presented."); United States v. Cox, 342 F.2d 167, 189-90 (5th Cir. 1965) (Wisdom, J., concurring) ("By refusing to indict, the grand jury has the unchallengeable power to defend the innocent from government oppression by unjust prosecution.  And it has the equally unchallengeable power to shield the guilty, should the whims of the jurors or their conscious or subconscious response to community pressures induce twelve or more jurors to give sanctuary to the guilty.").

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal.    That is determined by Congress and not by you. Furthermore, when deciding whether or not to indict, you should not be concerned about punishment in the event of conviction.  Judges alone determine punishment.

(Ex. A.)  But a grand jury that is forbidden from considering the importance of the law allegedly broken or penalty that could be imposed is not in any position to weigh whether the prosecution squares with the conscience of the community.[10]  This language reinforces the "should vote to indict" when provable cause is shown language by precluding the grand jury from considering anything other than its singular "task" and "purpose" of finding probable cause.  Read together, these directives mislead the grand jury into believing it must indict if probable cause is shown, even if their constitutional prerogative and the conscience of the community is otherwise.

The Third Circuit never has confronted questions concerning the constitutionality of the Model Grand Jury Charge.  Thus far, only the Ninth and Eleventh Circuits have addressed the issue.  United States v. Marcucci, 299 F.3d 1156, 1162 (9th Cir. 2002); United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc); United States v. Knight, 490 F.3d 1268, 1272 (11th Cir. 2007).[11]  Although the majority in each of those instances found that there was no constitutional violation, the dissenting opinions provide the more persuasive argument.  The majority in Marcucci admitted that the grand jury has a right not to indict but raised concerns about the practical implications of telling a grand jury that it had discretion not to indict.

---

[10]      Judge Kozinski explains there is a significant distinction between a grand jury refusing to indict based on a disagreement with whether a law merits the applicable punishment and a petit jury engaging in jury nullification.  United States v. Navarro-Vargas, 367 F.3d 896, 903 (9th Cir. 2004) (Kozinski, J., dissenting), withdrawn and en banc review granted, 408 F.3d 1184 (9th Cir. 2005) (en banc) (Judge Kozinski was not part of the en banc panel).

[11]      The Eleventh Circuit summarily followed Navarro-Vargas in concluding that the Model Grand Jury Charge did not require the grand jury to indict upon a finding of probable cause.  Id. The Eleventh Circuit did not consider the separate issue, addressed below, of whether the grand jury charge impermissibly vouched for the government.

Marcucci, 299 F.3d at 1161-64.  The majority concluded there was no violation because the instructions did not tell the grand jury that it "'shall' or 'must' indict, but merely that it 'should' indict, in the event it finds probable cause."  Id. at 1159.  The court found that "[t]he language does not eliminate discretion on the part of grand jurors," although it admitted that such language left the grand jury only "limited room" to reject an indictment.  Id. at 1159, 1164.

Yet, it is hard to deny Judge Hawkins' dissenting observation, "[a]s to the 'should' or 'shall' distinction, it is a lawyer's distinction – not a difference to which most lay people sitting as grand jurors are likely alert."  Id. at 1170 (Hawkins, J., dissenting).  The language referring to the "purpose" of the grand jury would lead "[a] grand juror paying close attention [to] conclude that the purpose of the grand jury is singular [i.e., requiring indictment if probable cause is shown] and that its discretion is constrained by the instruction."  Id. at 1167; Id. at 1169 ("[grand jurors] were misled by these instructions, told that their powers are restricted to determining probable cause").  The charge's language that follows advising that grand jurors "should vote to indict" if they find probable cause "seems to compel the grand jury to indict as long as probable cause exists."  Id. at 1167.

In Navarro-Vargas, the en banc Ninth Circuit upheld the instruction, but it was far from complimentary of it.

> [W]e do not necessarily hold that the current instructions could not or should not be improved.  We recognize the commentary pointing to discrete changes that tend to reduce the independence of the modern grand jury and the commentary urging reform in expanding the grand jury's duty and role in the criminal process. We even concede that there may be more done to further increase the shielding power of the modern federal grand jury.

Navarro-Vargas, 408 F.3d at 1207.  The grand jury and prosecutor serve as a check against one another.  Id. at 1200.  Yet the majority dismissed the defendant's objections as a "matter of pure semantics" and refused to differentiate "should" from "shall."  Id. at 1205.

Judge Hawkins, dissenting with Judges Pregerson, Fletcher, and Berzon, correctly asserted that "a grand juror paying close attention would conclude that the purpose of the grand jury is singular and that its discretion is constrained by the [model] instruction."  Id. at 1210 (Hawkins, J., dissenting).  Rather than "pure semantics," the "instruction's use of the word "should" is most likely to be understood as imposing an inflexible "duty or obligation" on grand jurors, and thus to circumscribe the grand jury's constitutional independence."  Id. at 1211.  The grand jury cannot protect against the other branches of government when its independence is so limited as to proactively prevent it from acting as the "conscience of the community."  Id.[12]

**B.**      **The Instructions Impermissibly Encourage Deference To The Prosecution**

In addition, the model grand jury instructions impermissibly vouch for the prosecution by noting the "candor, honesty and good faith in matters presented by government attorneys."  (Ex. A.)  As Judge Hawkins remarked:

> One can only wonder:  how truthful can these declarations be when prosecutors are free to deprive the grand jurors of exculpatory evidence, to provide unconstitutionally seized evidence, and to present evidence otherwise

---

[12]      Judge Hawkins also took note of Judge Kozinski's thoughts on the issue, in a dissent from a withdrawn opinion.  Navarro-Vargas, 408 F.3d at 1212 (citing United States v. Navarro-Vargas, 367 F.3d 896, 899-903 (9th Cir. 2004)).  Performing an "undeniably prosecutorial function," the grand jury "must have the power to consider the wisdom of a law," because "not every potential crime can (or should) be investigated or prosecuted, and an important part of the prosecutorial function is deciding which potential defendants to select for criminal prosecution and how serious the charges should be."  Id. at 1213.  Because prosecutors "can, and often do, make such decisions based on their judgments as to how wise and important certain laws may be," it would be hypocritical to deny the grand jury the same prerogative.  Id.  When even the majority opinion acknowledged "that a grand jury has the power to refuse to indict someone even when the prosecutor has established probable cause," it cannot follow that such discretion can be hidden from those serving on that body without violating the defendant's constitutional rights.  Id. at 1214; see Roger A. Fairfax, Grand Jury Discretion and Constitutional Design, 93 Cornell L. Rev. 703, 706 (2008) (endorsing the Hawkins-Kozinski approach); Niki Kuckes, The Democratic Prosecutor:  Explaining the Constitutional Function of the Federal Grand Jury, 94 Geo. L.J. 1265, 1289 (2006) (finding it "striking that the Vasquez line of authority finds no expression in the Model Charge.").

> inadmissible at trial.  More urgently, how independent can a grand jury be when they are told how wonderful the prosecutors are? . . . . "[A] grand jury cannot be 'independent' if the prosecutors' virtues are extolled to them without mention of the prosecutors' ability to present to the grand jurors far less than the whole story."

Marcucci, 299 F.3d at 1170 (Hawkins, J., dissenting) (citations omitted).

The Courts have been clear that a judge must refrain from communicating to the jury in a prejudicially partisan manner, and that even a later statement is not enough to cure such an error. Quercia v. United States, 289 U.S. 466, 468-69 (1933).  Because "a judge's words to the jury carry an authority bordering on the irrefutable," courts must "strive for neutrality and absolute circumspection," and when the "boundary of tolerance has been invaded and abused," the Court must reverse.  Moody v. United States, 377 F.2d 175, 179-80 (5th Cir. 1967).[13]  The model grand jury charge's commentary about the prosecutors violates this principle, as it impermissibly vouches for the "candor, honesty, and good faith" of the prosecutors.  As Judge Hawkins wrote, "the grand jury's independence is diluted by this instruction, which encourages deference to prosecutors."  Navarro-Vargas, 408 F.3d at 1215 (Hawkins, J., dissenting).

### C.     The Erroneous Charge Created A Structural Error, Requiring Reversal

"When constitutional error calls into question the objectivity of those charged with bringing the defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm."  Vasquez, 474 U.S. at 263.  Because it is impossible to know how a grand jury that operates in secret would have acted had it been properly

---

[13]     The Circuits have reversed convictions for much less.  United States v. Assi, 748 F.2d 62, 68 (2d Cir. 1984) (reversing a conviction where among other things the judge "vouched for the credibility of the prosecutor by referring the jury to 'the words of the distinguished Assistant United States Attorney who's been handling this case before us.'").  The Second Circuit has made it clear that "[i]t is not proper for a court to refer to the high character of counsel, especially of only one side."  Id.; cf.  United States v. Pellegrino, 470 F.2d 1205, 1207 (2d Cir. 1972) (advising judges "not to prejudice a party or create an impression of partisanship before the jury").

instructed, it is appropriate to presume prejudice for constitutional violations because the alternative would require "unguided speculation." Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988); see Peralta, 763 F. Supp. at 20-21 (dismissing indictment because grand jury instructions were misleading); United States v. Vetere, 663 F. Supp. 381, 383 (S.D.N.Y. 1987) (same).[14]

## CONCLUSION

The grand jury was erroneously instructed on critical constitutional issues, which prevented the grand jury from safeguarding the Defendants' rights. These erroneous instructions compromised the Defendants' Fifth Amendment right to an independent grand jury. Accordingly, the Indictment must be dismissed.

Respectfully submitted,

/s/ Abbe David Lowell
Abbe David Lowell
Jenny R. Kramer
Christopher D. Man
Scott W. Coyle
**CHADBOURNE & PARKE LLP**
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
adlowell@chadbourne.com
(202) 974-5600

/s/ Kirk Ogrosky
Kirk Ogrosky
Murad Hussain
**ARNOLD & PORTER LLP**
555 12th Street, N.W.
Washington, DC 20004
Kirk.Ogrosky@aporter.com
(202) 942-5330

Raymond M. Brown
**GREENBAUM ROWE SMITH & DAVIS LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095

Matthew I. Menchel
Michael C. Fasano
**KOBRE & KIM LLP**
2 South Biscayne Boulevard, 35th Floor
Miami, FL 33131

---

[14]   A "presumption of prejudice" is warranted because "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair." Nova Scotia, 487 U.S. at 257. "[I]t is conceivable that a grand jury made aware of its role as 'conscience of the community' would have provided 'relief where strict application of the law would prove unduly harsh,'" making finding structural error due to "unguided speculation" a necessity. Navarro-Vargas, 408 F.3d at 1216-17 (Hawkins, J., dissenting).

rbrown@greenbaumlaw.com                    matthew.menchel@kobrekim.com
(732) 476-3280                             (305) 967-6108

Stephen M. Ryan
Thomas J. Tynan
**MCDERMOTT WILL & EMERY LLP**
500 North Capitol Street, N.W.
Washington, D.C. 20001
sryan@mwe.com
(202) 756-8000
*Counsel for Defendant*                    *Counsel for Defendant*
*Senator Robert Menendez*                  *Dr. Salomon Melgen*

28