FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROBERT MENENDEZ and<br>SALOMON MELGEN,<br><br>                  Defendants. | **OPINION**<br>Cr. No. 15-155 |

**Walls, Senior District Judge**

Defendants Robert Menendez and Salomon Melgen bring fifteen motions to dismiss the indictment in this criminal action on multiple grounds. Among these grounds, Senator Menendez moves, in several motions, for the Court to dismiss the indictment under the Speech or Debate Clause of the United States Constitution. After oral argument on September 17, 2015, the Court denies these motions. The Court's decision is subject to immediate appeal, *Helstoski v. Meanor*, 442 U.S. 500, 506-08 (1979).

## PROCEDURAL AND FACTUAL BACKGROUND

Defendant Robert Menendez was indicted on April 1, 2015 on charges of bribery and related crimes. Indictment, ECF No. 1.[1] He has represented New Jersey in the United States

---

[1] This case has a relevant procedural history from its time in front of the grand jury. On September 15, 2014, the Government filed motions to compel four current and former staffers to Senator Menendez to provide testimony they withheld from the grand jury under assertions of the Speech or Debate Clause, attorney-client privilege, and/or attorney work-product doctrine. After hearing motions and oral argument from the Government and Menendez, the District Court, Thompson, J., ordered the parties to meet and confer and schedule new grand jury appearances in an effort to narrow and resolve the disputed issues. On November 12, 2014, three of the staffers reappeared before the grand jury and continued to withhold testimony. On November 25, the court held that the Speech or Debate Clause did not immunize the testimony of two staffers regarding Menendez's involvement in Melgen's Medicare billing dispute and the U.S. Customs and Border Protection's potential donation of surveillance equipment to the Dominican

FOR PUBLICATION

Senate since 2006. Dr. Salomon Melgen, an ophthalmologist, was named as his co-defendant in the same indictment. *Id.* The indictment's core allegation is bribery: that Dr. Melgen gave things of value to Senator Menendez in exchange for beneficial official acts. *Id.* ¶¶ 9-23.

The indictment includes a number of charges. Count One charges both Defendants with conspiracy to commit bribery and honest services wire fraud. *Id.* ¶¶ 1-227. Count Two charges Senator Menendez with violation of the Travel Act, and Dr. Melgen with aiding and abetting the violation. *Id.* ¶¶ 228-29. Counts Three through Eight charge Defendants with bribery, alleging that Senator Menendez sought and received flights from Dr. Melgen in return for being influenced in his performance of official acts. *Id.* ¶¶ 230-41. Counts Nine through Eighteen also charge Defendants with bribery, alleging that Senator Menendez sought and received financial contributions from Dr. Melgen, benefitting his personal and political interests, in return for being influenced in his performance of official acts. *Id.* ¶¶ 242-61. These counts relate to two alleged $20,000 contributions by Dr. Melgen to "a legal defense trust fund" benefitting Senator Menendez, *id.* ¶¶ 242-49, an alleged $40,000 contribution to the New Jersey Democratic State Committee Victory Federal Account, *id.* ¶¶ 250-53, two alleged $300,000 contributions to Majority PAC "earmarked for the New Jersey Senate race," *id.* ¶¶ 254-61, and an alleged $103,500 contribution to "various New Jersey county Democratic Party entities." *Id.* ¶¶ 258-61.

---

Republic, both discussed in detail later. The court ordered the staffers to reappear before the grand jury and answer questions on these topics. *In re Grand Jury Investigation*, No. 3-14-mc-00077 (D.N.J. Nov. 25, 2014). On appeal, the Third Circuit held that it could not determine whether this testimony was protected by the Speech or Debate Clause and remanded the case to the district court to make "specific factual findings about the communications implicated by the grand jury questions," namely whether they were "legislative acts" protected by the Speech or Debate Clause. *In re Grand Jury Investigation (Menendez)*, 608 F. App'x 99, 101 (3d Cir. 2015). On remand, the Government submitted a notice of intent announcing that it no longer sought to compel the disputed testimony. Opposition to Motions to Dismiss Predicated on Assertion of Speech or Debate Clause ("Opp. to Mot. to Dismiss") Ex. 2, ECF No. 85-2 at 2. The district court did not issue formal findings on the Speech or Debate issues, and the indictment was filed on April 1, 2015.

FOR PUBLICATION

Counts Nineteen through Twenty-One charge Defendants with honest services fraud. *Id.* ¶¶ 262-65. These counts allege that Senator Menendez and Dr. Melgen intentionally devised a scheme to defraud and deprive the United States and New Jersey citizens of Senator Menendez's honest services. Finally, Count Twenty-Two charges Senator Menendez with falsifying information in Senate financial disclosure forms. *Id.* ¶¶ 266-72.

Most relevant to the Court's consideration of these motions are the indictment's allegations regarding Senator Menendez's conduct. In alleged exchange for things of value, the indictment asserts that Senator Menendez took official actions to benefit Dr. Melgen. These actions fall into three categories. First, the indictment alleges that Senator Menendez "used his position as a United States Senator to influence the visa proceedings of [Dr. Melgen's] foreign girlfriends." *Id.* ¶ 70. Second, it alleges that Senator Menendez advocated for Dr. Melgen's financial interests regarding a contract dispute between a private company and the Dominican Republic. *Id.* ¶¶ 117-43. Third, it charges that Senator Menendez advocated for Dr. Melgen's financial interests regarding a Medicare billing dispute at the U.S. Department of Health and Human Services and the Centers for Medicare and Medicaid Services. *Id.* ¶¶ 144-227.

Senator Menendez now moves to dismiss the indictment's counts against him on the grounds that (a) its charges rely on evidence of his legislative acts which is inadmissible under the Constitution's Speech or Debate Clause, Motion to Dismiss No. 1, ECF No. 48-1 at 3-4, (b) the Government presented evidence protected by the Clause to the grand jury, Motion to Dismiss No. 2, ECF No. 49-1, (c) the Government incorrectly instructed the grand jury about the applicability of the Clause, Motion to Dismiss No. 4, ECF No. 51-1 at 5-13, and (d) the Speech or Debate Clause and Separation of Powers doctrine bar prosecution for the actions alleged in

FOR PUBLICATION

Count Twenty-Two. Motion to Dismiss No. 13, ECF No. 60-1 at 18-29. The Government

responds in a consolidated opposition. Opp. to Mot. to Dismiss, ECF No. 85.

## LEGAL STANDARD

Article 1, Section 6, Clause 1 of the Constitution reads, in part, that members of

Congress:

> 'shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged
> from Arrest during their Attendance at the Session of their respective Houses, and
> in going to and returning from the same; and *for any Speech or Debate in either
> House, they shall not be questioned in any other Place*.'

U.S. Const. art. I, § 6, cl. 1 (emphasis added).

The Supreme Court has "read the Speech or Debate Clause broadly" to grant members of

Congress "absolute immunity from judicial interference" for all legislative acts. *Eastland v. U. S.

Servicemen's Fund*, 421 U.S. 491, 501, 509 n.16 (1975). This immunity protects members of

Congress from (1) "criminal or civil liability" for those acts, *Gravel v. United* States, 408 U.S.

606, 615 (1972), (2) the introduction of "evidence of a legislative act" in a prosecution, *United

States v. Helstoski*, 442 U.S. 477, 487 (1979), (3) questioning in a grand jury proceeding about

legislative acts, *Gravel*, 408 U.S. at 622, and (4) judicial orders, such as injunctions, that

interfere with the legislative acts themselves, *Eastland*, 421 U.S. at 505-06. The Clause protects

acts of both Senators and their aides, but it is the "privilege of the Senator, and invocable only by

the Senator or by the aide on the Senator's behalf" and applies only to actions by aides that

"would be immune legislative conduct if performed by the Senator himself." *Gravel v. United

States*, 408 U.S. at 622.

The Clause protects not only "words spoken in debate," but anything "generally done in a

session of the House by one of its members in relation to the business before it." *United States v.

Johnson*, 383 U.S. 169, 179 (1966) (quoting *Kilbourn v. Thompson*, 103 U.S. 168, 204 (1880)).

FOR PUBLICATION

The Clause "extends only to an act that has already been performed." *Helstoski*, 442 U.S. at 490.

For instance, "a *promise* to introduce a bill is not a legislative act." *Id.* (emphasis in original).

Not all past acts performed by members of Congress or their staffers are protected

legislative acts. A legislative act "must be an integral part of the deliberative and communicative

processes by which Members participate in committee and House proceedings with respect to the

consideration and passage or rejection of proposed legislation or with respect to other matters

which the Constitution places within jurisdiction of either House." *Gravel*, 408 U.S. at 625.

Legislative acts include actual speech or debate in either House, voting on legislation,

"authorizing an investigation" by a Congressional Committee, "holding hearings," "preparing a

report," and "authorizing the publication and distribution of that report" at a committee hearing.

*Doe v. McMillan*, 412 U.S. 306, 313 (1973). The Speech or Debate Clause protects both formal

and informal investigations related to proposed legislation. *Gov't of the V.I. v. Lee*, 775 F.2d 514,

521 (3d Cir. 1985).

But the Clause "has not been extended beyond the legislative sphere." *Gravel*, 408 U.S.

at 624-25. Senators are not protected from liability for non-legislative acts, even if they perform

them "in their official capacity as Senators," *id.* at 625, and even if these acts have "some nexus

to legislative functions" or "casually or incidentally relate[ ] to legislative affairs." *United States

v. Brewster*, 408 U.S. 501, 528 (1972). Non-legislative, "political acts" include "a wide range of

legitimate 'errands' performed for constituents, the making of appointments with Government

agencies, assistance in securing Government contracts, preparing so-called 'news letters' to

constituents, news releases, and speeches delivered outside the Congress." *Id.* at 512. Attempting

to influence the Executive Branch is also a non-legislative activity. *McMillan*, 412 U.S. at 313;

*see also Johnson*, 383 U.S. at 172 (In case where members of Congress received campaign

FOR PUBLICATION

contributions and legal fees from officers of loan company under indictment, "[n]o argument is made, nor do we think that it could be successfully contended, that the Speech or Debate Clause reaches conduct, such as was involved in the attempt to influence the Department of Justice" by contacting prosecutors and urging them to "review" the indictment).

Some official acts – particularly those related to "oversight" of the Executive Branch, such as "letters or other informal communications to Executive Branch officials from committee chairmen, ranking committee members, or other committee members" – fall into a "middle category" of activities that are not "clearly protected." *United States v. McDade*, 28 F.3d 283, 299-300 (3d Cir. 1994). As the Third Circuit held in a non-precedential decision regarding the grand jury proceedings in this case, where an act or communication is not "manifestly" legislative, but might be either legislative or merely political, "district courts must make factual findings regarding the content and purpose of the acts and communications in question to address their legislative or non-legislative character." *Menendez*, 608 F. App'x. at 101 (citing *Lee*, 775 F.2d at 522-24).

The court should analyze the record evidence already before it, including contemporaneous emails, calendar entries, and notes related to each communication, as well as testimony or affidavits about the contents and purposes of the communication from the member of Congress asserting the privilege or her staff. *Id.* at 101-02 (citing *In re Grand Jury (Eilberg)*, 587 F.2d 589, 597 (3d Cir. 1978)).

Where an act has both legislative and non-legislative components, a court should attempt to separate the legislative components from the non-legislative components. *Id.* at 101 (citing *Helstoski*, 442 U.S. at 488 n. 7). "Where they are inseparable, the court must ascertain the nature of the act or communication by assessing its predominate purpose." *Id. See, e.g., McDade*, 28

FOR PUBLICATION

F.3d at 300 (in dicta, where two communications by Congressman with Executive Branch officials were purportedly legislative "oversight," letter to Secretary of the Navy warning not to stop work with specific company in Congressman's district was likely non-legislative because it lobbied on behalf of a particular company, while letter to Secretary of the Army regarding award of work contract in general was likely protected "oversight" because it did not lobby on behalf of a particular company).

On a motion to dismiss an indictment under the Speech or Debate Clause, the district court must examine the indictment to determine whether its charges are predicated upon evidence of legislative acts. *Fields v. Office of Eddie Bernice Johnson*, 459 F.3d 1, 13 (D.C. Cir. 2006); *see also Brewster*, 408 U.S. at 525 (examining the face of the indictment to determine whether "inquiry into legislative acts or motivation for legislative acts is necessary . . . to make out a prima facie case"). If a charge cannot be proved without evidence of a legislative act, it must be dismissed. *Johnson*, 383 U.S. at 184-85. If, however, a charge can be proved without evidence of a legislative act, the charge survives and trial must be "wholly purged of elements offensive to the Speech or Debate Clause." *Id.* at 185; *Brewster*, 408 U.S. at 512.

Under this approach, the Court first reviews the face of the indictment to determine if any of its allegations depend upon inadmissible evidence of legislative acts. If the Court determines that allegations within the indictment depend upon such evidence, the Court will evaluate whether barring the evidence from trial will preclude the Government from proving any charge in the indictment. If the Court determines that a charge is predicated upon evidence of a legislative act, such that it cannot be proved without it, the Court will dismiss the charge. A party asserting a legislative privilege, as Senator Menendez does here, bears the burden of establishing

7

FOR PUBLICATION

the applicability of legislative immunity by a preponderance of the evidence. *Lee*, 775 F.2d at

524.

DISCUSSION

Senator Menendez contends in several motions that the indictment must be dismissed

because of violations of the Speech or Debate Clause. The Court will determine whether (a) the

indictment must be dismissed because of violations of the Clause in the indictment, (b) violations

of the Clause before the grand jury, (c) erroneous instructions about the Clause to the grand jury,

and whether (d) Count Twenty-Two of the indictment must be dismissed because the alleged

activity is protected by the Clause.

I.   **Motion to Dismiss 1 (Speech or Debate-Immunized Evidence in the Indictment)**

    A.   **Counts Two through Eighteen: the Bribery Counts do not rely on evidence immunized by the Speech or Debate Clause.**

In Motion 1, Senator Menendez argues that the entire indictment must be dismissed

because all counts require evidence that is protected by the Speech or Debate Clause. Though he

calls for dismissal of the whole indictment the evidence he claims is protected is primarily

important to the bribery charges.

And although the Speech or Debate Clause shields members of Congress from

prosecution for legislative acts and from the introduction of evidence of legislative acts to

establish other offenses, *Brewster*, 408 U.S. at 525-26, it does *not* bar prosecution for bribery.

"Taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative

act." *Id.* at 526. "The illegal conduct is taking or agreeing to take money for a promise to act in a

certain way. . . . [A]cceptance of the bribe is the violation of the statute." *Id.*  "There is no need

for the Government to show that [defendant] fulfilled the alleged illegal bargain." *Id.*

FOR PUBLICATION

Bribery "requires intent 'to influence' an official act or 'to be influenced' in an official act." *United States v. Sun-Diamond Growers*, 526 U.S. 398, 404 (1999). "[T]here must be a *quid pro quo* – a specific intent to give or receive something of value *in exchange* for an official act." *Id*. at 404-05 (emphasis in original). Generally, the government does not need to provide evidence of an explicit agreement between the parties to demonstrate a *quid pro quo*; it is enough to show a "course of conduct of favors and gifts flowing to a public official in exchange for a pattern of official actions favorable to the donor," or a "stream of benefits" between the parties. *United States v. Bryant*, 655 F.3d 232, 241 (3d Cir. 2011) (internal quotations and emphasis omitted). The Supreme Court has held that, at least in the context of extortion prosecutions under the Hobbs Act, evidence of an "explicit promise or undertaking by the official to perform or not perform an official act" is required when the "thing of value" given is a campaign contribution, *McCormick v. United States*, 500 U.S. 257, 273-74 (1991).

Senator Menendez does not argue that he is immune from prosecution for allegedly accepting bribes, but he does claim that the Government does not allege any evidence of an explicit agreement in the indictment. Instead, the Government demonstrates a *quid pro quo* by alleging that Menendez took official acts for the benefit of Dr. Melgen.  Senator Menendez claims these actions – his alleged communications with HHS and CMS regarding Dr. Melgen's Medicare billing dispute and his communications with the State Department regarding Dr. Melgen's Dominican Republic port security issues – are legislative in nature and protected by the Speech or Debate Clause. The Government responds that they are unprotected political attempts to influence the Executive Branch.

FOR PUBLICATION

The Court addresses these particular acts as they are charged in the indictment. Evidence of these acts is necessary to support the charges. The question is whether the acts are legislative and protected by the Speech or Debate Clause.

### 1. State Department Visa Advocacy

Senator Menendez has conceded that his advocacy during the visa proceedings of Dr. Melgen's girlfriends was non-legislative. Mot. to Dismiss 1 at 8 (acknowledging "that his assistance to people applying for visas, for example, falls within this unprotected category, as it is pure case work."). Further discussion of these acts is not needed.

### 2. Communications Related to the Dominican Republic

Indictment Counts Thirteen and Fourteen allege that Senator Menendez and Dr. Melgen violated bribery statutes when Dr. Melgen donated $40,000 to the New Jersey Democratic State Committee Victory Federal Account "in return for Menendez's advocacy to the State Department on behalf of Melgen in his contract dispute with the Government of the Dominican Republic." Indict. ¶¶ 250-253. Counts Three through Twelve also incorporate allegations that Senator Menendez's chief counsel, Kerri Talbot, asked a U.S. Customs and Border Protection official not to donate cargo screening equipment to the Dominican Government, *id*. ¶¶ 132-143, into charges that Senator Menendez received something of value "in return for… being influenced in the performance of official acts, as opportunities arose." *Id*. ¶¶ 230-49. Senator Menendez is alleged to have advocated on behalf of a company known as Boarder Support Services, LLC ("Border"), a holding company established by Melgen to control another company known as ICSSI. *Id*. ¶¶ 114-17. During the period in which the alleged actions occurred, ICSSI was exclusively owned and controlled by Dr. Melgen and a party to a contract with the Dominican Republic for exclusive rights to install imaging equipment in Dominican

FOR PUBLICATION

ports. *Id.* ICSSI and the Dominican Government were litigating the legality and legitimacy of

this contract. *Id.* Senator Menendez asserts that his alleged communications with CBP and State

Department officials were legislative acts and immunized by the Speech or Debate Clause.

### a. State Department Advocacy Regarding the Contract Dispute

Are the allegations of Senator Menendez's advocacy in the Dominican contract dispute

necessary to support these bribery charges? Though an indictment need not allege the actual

performance of an official act to adequately plead bribery, *Brewster*, 408 U.S. at 526, Senator

Menendez correctly argues that the Government does not allege an explicit *quid pro quo*

agreement for the $40,000 contribution. Mot. to Dismiss 1 at 12-13. The Government instead

alleges official acts to demonstrate a *quid pro quo* agreement. And so the challenged allegations

are necessary to support the bribery charges.

Were Senator Menendez's acts on behalf of Dr. Melgen legislative or merely political in

nature? Senator Menendez declares that his communications were "oversight over the

Department of State and Department of Commerce" regarding "United States policy on Port

Security," a legislative activity. Mot. to Dismiss 1 at 3, 29. The Government answers that, by

asking the Assistant Secretary of State to intervene in a private contract dispute, Senator

Menendez was simply attempting to influence members of the Executive Branch, a non-

legislative activity. Opp. to Mot. to Dismiss at 20.

Senator Menendez says that his office's communications were really about a "broader

issue involving security and corruption," and that there would merely be an "incidental benefit to

Dr. Melgen if the ICSSI contract were enforced," Mot. to Dismiss 1 at 31. In support, he offers

evidence of his professional interest in port security and involvement in U.S. foreign relations

policy with Caribbean nations, including the Dominican Republic. Senator Menendez explains

FOR PUBLICATION

his background as a member of the Foreign Affairs Committee and Select Committee on

Homeland Security during his time as a U.S. Representative and his experience as Chairman of

the Senate Committee on Foreign Relations and Subcommittee on Western Hemisphere, Peace

Corps, and Narcotics Affairs ("WHA Subcommittee"). *Id.* at 26. He describes several bills he has

supported regarding port security and cites the transcript of several WHA Subcommittee

hearings where he addressed Dominican port security, including one where he explicitly

discussed Dr. Melgen's contract dispute. *Id.* at 27-28. But Speech or Debate analysis does not

turn on whether a particular act or communication was motivated by a genuine concern over

policy. *See, e.g., Hutchinson v. Proxmire*, 443 U.S. 111, 114 (1979) (Senator's attempts to

highlight what he believed were "egregious examples of wasteful governmental spending"

through press releases and newsletters were not legislative acts); *cf. Fields*, 459 F.3d at 12 ("The

Speech or Debate Clause protects conduct that is integral to the legislative *process*, not a

Member's legislative *goals*.") (emphasis in original). Nor does the Senator's position on relevant

committees and subcommittees establish that any particular communication with the State

Department was not an attempt to influence the Executive Branch on behalf of Dr. Melgen. *Cf.*

*United States v. Biaggi*, 853 F.2d 89, 91-92, 98 (2d Cir. 1988) (Congressman who accepted

illegal gratuities used his position on the House Committee on Merchant Marine and Fisheries to

advocate on behalf of a dry dock company.).

      Because the Dominican Republic contract dispute acts contain both potentially legislative

and non-legislative components, the Court seeks to separate these components. *Menendez*, 608 F.

App'x at 101. Some allegations are clearly non-legislative. As example, paragraphs 118-121 of

the indictment include communications that took place between two State Department officials

and Pedro Permuy, "a friend of Melgen's who was a former Menendez staffer." Permuy

FOR PUBLICATION

allegedly "represented to the Assistant Secretary [of State for the Bureau of International Narcotics and Law Enforcement Affairs] that he was there to speak on behalf of a United States entity involved in a contract dispute with the Government of the Dominican Republic. . . ." Indict. ¶¶ 120. According to an email quoted in the indictment, Permuy "dropped the name of Sen. Menendez pretty squarely as having an interest in this case." *Id.* ¶ 119.

The Speech or Debate Clause "applies not only to a Member but also to his aides insofar as the conduct of the latter would be a protected legislative act if performed by the Member himself." *Gravel*, 408 U.S. at 618. In *Gravel*, the Supreme Court extended the protections of the Speech or Debate Clause to one of Senator Mike Gravel's assistants. *Id.* at 608, 628-29. In doing so, the Court explained that "the day-to-day work of such aides is so critical to the Members' performance that they must be treated as the latter's alter egos." *Id.* at 616-17.

Nothing, however, in *Gravel* or later cases suggests that the Speech or Debate Clause protects a *former* aide who has left the employment of a Member. Permuy cannot be considered an alter ego of Senator Menendez for the purposes of communications made on behalf of a private entity after the end of his employment with the Senator. The communications in paragraphs 118-121 of the indictment are not protected by the Speech or Debate Clause.

Also clearly non-legislative is Paragraph 123, which includes a series of emails between Senator Menendez's Senior Policy Advisor, Jodi Herman, and a State Department official setting up a meeting between the Senator and an Assistant Secretary. Herman wrote that the Senator "would like to see [the Assistant Secretary] next week to talk about DR (cargo from DR coming into US ports)." Indict. ¶ 123. The State Department official asked for specificity about what the meeting would be about, and Herman replied that, while she "had to drag even this information out of him," Senator Menendez had "concerns about what is flowing through the ports either

13

FOR PUBLICATION

unobserved or with tacit permission." *Id.* Herman also suggested that the Assistant Secretary have "some talkers on any new DR initiatives, particularly at the ports" when he met with Senator Menendez. *Id.*

Although "fact-finding, information gathering, and investigative activities" are legislative acts, *Lee*, 775 F.2d at 521, there is a distinction between legislative acts themselves and routine preparations for legislative acts. The "making of appointments with Government agencies" is not a legislative act. *Brewster*, 408 U.S. at 512; *see also United States v. Jefferson*, 546 F.3d 300, 311 (4th Cir. 2008) (It is "apparent that nonlegislative acts, *such as making appointments with agencies* . . . are within the scope of an appropriate inquiry.") (emphasis added).

The Court finds that the emails in paragraph 123 were non-legislative because they primarily involve scheduling an appointment for the Senator rather than actual fact-finding. Although Herman suggests that the focus of the meeting would be the gathering of information about Dominican port issues, it is significant that she neither asked for nor received any information in these emails. Indeed, she expressed only a vague awareness of why the Senator wanted to meet with the Assistant Secretary at all. Indict. ¶ 123 ("I had to drag even this information out of him . . . [I] imagine he has some observations to share . . ."). The Defendant fails to demonstrate that these communications are protected by the Speech or Debate Clause.

The remaining acts alleged in the indictment relating to the Dominican Republic involve communications or references to communications between Senator Menendez and his staff and Executive Branch officials specifically discussing Dr. Melgen's contract dispute. For these acts, the potentially legislative and non-legislative components are "inseparable," so the Court must assess the "contents and purposes" of each communication to determine its "predominant purpose." *Menendez*, 608 F. App'x at 101. The text of the remaining communications

14

FOR PUBLICATION

demonstrate that Senator Menendez's primary focus was getting the Executive Branch to intervene in Dr. Melgen's contract dispute.

The Assistant Secretary's own understanding of the conversations is particularly instructive. The indictment alleges that, at the May 16, 2012 meeting between the Assistant Secretary and Senator Menendez, "Menendez questioned the Assistant Secretary about the contract dispute between [Dr. Melgen] and the Dominican Republic." Indict. ¶ 124. An email from the Assistant Secretary to his staff after the meeting characterized the "DR port issue" as "the issue of a US company attempting to sell a tracking and security system to the DR port authority. . . . If I recall correctly, our investigation last time suggested that this was more a commercial dispute than a law enforcement issue." *Id.* ¶ 125. The Assistant Secretary alluded to policy but indicated that Senator Menendez was interested primarily in any policy's effect on Dr. Melgen's contract, writing "I told the Senator that we were working up some sort of port initiative, once we had a concrete initiative we would see if it could leverage a correct GODR decision on the port contract." *Id.* On June 18, 2012, the Assistant Secretary forwarded an email from Permuy regarding Dr. Melgen's contract dispute to his staff with the note "This is the case about which Sen. Menendez threatened to call me to testify at an open hearing." Id ¶ 129.[2] And on June 20, 2012, the Assistant Secretary forwarded another email from Permuy, this one with the subject "ICCSI [sic]-Border Security Solutions documents," to his staff with the message, "More on Menendez' favorite DR port contract case." *Id*. ¶ 131.

Given Senator Menendez's extensive involvement in Dominican port policy, he may indeed have had a policy reason to value Dr. Melgen's contract. But with Menendez's repeated

---

[2] Senator Menendez claims that his threat to hold an open hearing makes this communication a legislative act, since Senate hearings are legislative acts. As already explained, though, the Speech or Debate Clause only protects acts that have already been performed. A promise – or in this case, a threat – to perform a legislative act is not itself a legislative act. *Helstoski*, 442 U.S. at 490.

FOR PUBLICATION

discussions of this *specific* contract dispute, the Assistant Secretary's characterization of the

dispute as the Senator's "favorite" case, and the Assistant Secretary's understanding that the

conversations were primarily about Dr. Melgen's case, Menendez fails to meet his burden to

demonstrate that the primary goal of these communications was not to lobby the Executive

Branch to enforce Dr. Melgen's specific contract, a non-legislative activity. *See McDade*, 28

F.3d at 300 (distinguishing between letter to Secretary of Navy openly lobbying on behalf of

specific company and letter to Secretary of Army discussing a "broader policy question" without

reference to specific parties).

### b.  Customs and Border Protection Advocacy Regarding Equipment Donations

Paragraphs 132-143 allege communications in January 2013 between Menendez staffer

Kerri Talbot and Customs and Border Protection ("CBP") officials about a potential donation of

equipment to the Dominican Government that might have conflicted with the financial interests

of ICSSI. In Talbot's initial email to CBP, she asked "that [CBP] please consider holding off on

the delivery of any such equipment until you can discuss this matter with us- [the Senator would]

like a briefing. Could [CBP] please advise whether there is a shipment of customs surveillance

equipment about to take place?" Indict. ¶¶ 132-143. Talbot's communications with CBP ceased

once it was determined that no donation of equipment was actually planned. *Id.*

These communications involve both an attempt to influence an executive agency (the

request to postpone the equipment delivery) and an attempt to gather information (the request to

confirm Senator Menendez's information about the supposed upcoming shipment). *Id.* These

requests were made simultaneously, as part of the same email, and both became moot when

Senator Menendez's information was determined to be incorrect. The legislative and non-

FOR PUBLICATION

legislative components are "inseparable, [and] the court must ascertain the nature of the act or communication by assessing its predominant purpose." *Menendez*, 608 F. App'x at 101.

The Court finds that Senator Menendez does not meet his burden to establish that the predominant purpose of these emails was to gather information for a legislative purpose rather than to lobby for a postponement of planned official action. The Senator directs the Court to various acts he took before 2013 that establish his longstanding involvement with port security policy. Mot. to Dismiss 1 at 25-29. This is insufficient to meet his required burden to establish that the 2013 emails are protected by the Speech or Debate Clause. As said, unprotected attempts to influence an agency do not become immunized merely because they concern policy. The Senator has the burden to demonstrate that these communications are privileged by a preponderance of evidence, and because these emails had two purposes, neither of which is found to be predominant, his burden is not met: the communications are not privileged by the Speech or Debate Clause.

### 2. Communications Related to the Medicare Billing Dispute

Senator Menendez is alleged to have advocated on Dr. Melgen's behalf in an $8.9 million Medicare billing dispute concerning the drug Lucentis. Indict. ¶ 144-227. Counts Fifteen and Sixteen allege that, in return for a donation from Melgen of approximately $300,000 to Majority PAC that was earmarked for the 2012 New Jersey Senate race, Menendez advocated "at the highest levels" of the Centers for Medicare and Medicaid Services (CMS) and Department of Health and Human Services (HHS) "on behalf of Melgen in his Medicare billing dispute." Indict. ¶¶ 254-57. Counts Seventeen and Eighteen allege that, in return for a $103,500 contribution to "various New Jersey county Democratic Party entities" and another donation of approximately $300,000 to Majority PAC earmarked for the 2012 New Jersey Senate race, Menendez

FOR PUBLICATION

advocated "at the highest levels of HHS on behalf of Melgen in his Medicare billing dispute." Indict. ¶¶ 258-61. Menendez's communications with CMS and HHS officials are also incorporated by reference in the remaining Counts. Again, the indictment alleges official acts as evidence of a *quid pro quo*, so the allegations are necessary to support the bribery charges.

At the time of the dispute, Senator Menendez sat on the Committee on Finance, which oversees Medicare along with other programs and departments. Mot. to Dismiss 1 at 13. In his motion, Senator Menendez notes that he considered asking a possible question "on the broader issue surrounding Dr. Melgen's situation" during a hearing before the Senate Finance Committee. Mot. to Dismiss 1 at 19. Preparations for a committee hearing are clearly protected by the Speech or Debate Clause, *e.g. McDade*, 28 F.3d at 300, but no allegations in the indictment are related to the hearing. That Senator Menendez considered addressing Melgen's situation at a hearing does not immunize his other attempts to influence the resolution of Melgen's case. *See Johnson*, 383 U.S. at 171-72 (Congressman who took bribes from a savings and loan association was immune from charges relating to a speech he made on the House floor in favor of such associations but not immune as to attempts to lobby the Department of Justice on behalf of the association.). Those other attempts are each discussed later.

### a. Paragraphs 148-161

The communications alleged in Paragraphs 148-156 are unprotected. Senator Menendez allegedly sent an email, with the subject "Dr melgen" [sic], describing the topic as "a Medicare problem we need to help [Dr. Melgen] with." Indict. ¶ 148. A staffer later replied that they were "looking into how [they could] be helpful." *Id.* ¶ 149. The other emails in this section similarly contain communications on the subject of an intervention on behalf of Dr. Melgen. These communications discuss pure casework, and the goal of the discussions alleged in these

18

FOR PUBLICATION

paragraphs was to influence the Executive Branch's resolution of Melgen's case. These are not legislative acts.

At first sight, Paragraphs 157 and 158 may appear to be within the scope of the Speech or Debate Clause, but reviewed in the context of the "contemporaneous email" in Paragraph 159, *Menendez*, 608 F. App'x. at 101, they are unprotected attempts to influence the Executive Branch. Paragraphs 157 and 158 discuss an email from Menendez staffer Emma Palmer to a CMS administrator along with the administrator's response:

> Beginning in or about July 2009, Menendez's staff reached out to CMS to advocate for Melgen. To address Melgen's pressing concern, [Emma Palmer] inquired as to whether a CMS administrative contractor would be issuing a new policy that would affect the future coverage of Lucentis in Florida.
> On or about July 10, 2009, [Elizabeth Engel], the then-Deputy Assistant Secretary for Legislation at HHS, emailed [Palmer] to notify her that "CMS has confirmed that [the contractor] has not issued, nor does it plan to issue, a revision to its local coverage determination for Lucentis."

Indict. ¶¶ 157-58. Palmer did not advocate for CMS to take any official action; instead, she requested information from the agency about a subject for which Senator Menendez's committee was responsible. But Palmer then forwarded this email to Menendez staffer Karissa Willhite, who indicated that the true focus of the communication was Dr. Melgen's specific dispute, responding, "Yeah, but what are they talking about being in the works... a decision on *Dr. Melgen specifically*? I think we have to weigh in on his behalf.... To say they can't make him pay retroactively." *Id.* ¶ 159 (emphasis added).

### b.  Paragraphs 162-184

None of the communications alleged in paragraphs 162-179 involve an attempt to gather facts or information related to oversight or legislation. HHS employees, describing these interactions with Menendez, wrote that the Senator was "advocating on behalf of a physician friend in Florida." *Id.* at ¶ 166. A talking points memorandum prepared by Menendez staff for a

FOR PUBLICATION

later call that took place between the Senator and HHS expressly disclaimed any interest beyond

Dr. Melgen's case: "I am not weighing on how you should administer Lucentis, nor on how his

specific audit should be resolved but rather asking you to consider the confusing and unclear

policy on this issue and *not punish him retroactively* as a result." *Id.* ¶ 167 (emphasis added).

The alleged call itself focused on "a doctor in Florida." *Id.* at ¶ 169. Further communications

followed between Melgen's lobbyists and Menendez staffers. *Id.* ¶¶ 172-78. The Court finds that

these communications are concerned with the outcome of a specific case and are unprotected.

Paragraphs 180-184 involve the scheduling of a meeting between a Menendez staffer and

a HHS staffer. As with paragraph 123, the scheduling of a meeting with HHS officials is not

itself a legislative act. *See Brewster*, 408 U.S. at 512; *Jefferson*, 546 F.3d at 311.

### c.   Paragraphs 185-197

Paragraphs 185-189 of the indictment allege interactions Senator Menendez had with

Senator Tom Harkin "so that Melgen could personally solicit [Harkin's] assistance with his

Medicare billing dispute." Indict. ¶ 185. A Menendez staffer allegedly told a Harkin staffer that

the "doctor Senator Menendez spoke to [Harkin] about is Dr. Sal Melgen" and that "CMS is

pursuing Dr. Melgen for a matter around dosing procedures and relevant charges to Medicare."

*Id.* ¶ 186. The indictment then alleges that Menendez set up a personal meeting between Melgen

and Senator Harkin, and that Menendez "introduced Melgen to [Harkin] at the beginning of the

meeting and remained while Melgen solicited [Harkin's] assistance." *Id.* ¶ 188.

The preliminary emails between Menendez and Harkin staffers did not involve legislative

acts, they simply provided background about Dr. Melgen in preparation for a meeting. Senator

Menendez now argues that this meeting itself was privileged "because it involved two Senators

investigating issues raised by a citizen concerning matters of health care policy." Mot. to Dismiss

FOR PUBLICATION

2 at 16. The Court disagrees. The indictment does not allege any substantive discussions between

Menendez and Harkin; instead, it alleges that Menendez remained at the meeting while Melgen

"solicited [Harkin's] assistance." Indict. ¶ 188. In theory, communications between Melgen and

Senator Harkin could be protected by Harkin's Speech or Debate privileges if Harkin had been

engaging in legislative fact finding. But the indictment alleges only that Melgen solicited

Harkin's assistance at the meeting.

Apart from the indictment, in another motion, Defendants have directed the Court to a

summary from an FBI interview in which Harkin said that he did not recall Melgen specifically

asking him for anything. Mot. to Dismiss No. 3 Ex. A, ECF No. 50-2, at 5. Significantly, the

interview summary also notes that "Harkin just considered this to be a meeting in which he

extended a professional courtesy to Menendez." *Id.* If anything, this evidence supports the

conclusion that the meeting was *not* legislative in nature and was not a part of Congress's core

deliberative processes that the Speech or Debate Clause exists to protect. In any event, any

Speech or Debate privilege would be personal to Senator Harkin. Another Senator, such as

Menendez, cannot shelter under Senator Harkin's privilege. *See In re Grand Jury (Eilberg)*, 587

F.2d at 593.

The communications in paragraphs 192-197 show Menendez staffers and Melgen

lobbyists coordinating and developing a strategy to advocate to CMS administrators on behalf of

Melgen. As example, in one email a staffer asked another staffer to "circle back with Dr.

Melgan's [sic] attorney to find out specifically what they're asking for?" *Id.* ¶ 194. These

communications are unprotected casework rather than legislative acts.

### d. Paragraphs 198-208

Paragraphs 198-208 allege a meeting between Senator Menendez and the Acting

Administrator of CMS, Marilyn Tavenner, who at the time had been nominated to be

FOR PUBLICATION

Administrator of CMS. See Indict. ¶¶ 198-208; Mot. to Dismiss 1 at 20; Opp. to Mot. to Dismiss at 12. The parties dispute the significance of the circumstance that Tavenner was awaiting confirmation by the Senate at the time of the meeting. *Id.* Senator Menendez's calendar reflected that this meeting was "re: her nomination before the Finance Committee," Mot. to Dismiss 1 at 20, but the government contends that no hearing on Tavenner's confirmation was scheduled during the 2012 legislative session. Opp. to Mot. to Dismiss at 18. At the meeting itself, the indictment alleges that "Menendez pressed [Tavenner] about multi-dosing and Medicare payments, and advocated on behalf of the position favorable to Melgen in his Medicare billing dispute." Indict. ¶ 200. The meeting was followed by a call between Menendez and Tavenner, for which a Melgen lobbyist and a Menendez staffer had prepared talking points, including the point that "we're talking about payments made in 2007-2008" and that CMS's current policies "don't have any bearing on the issue at hand." *Id.* ¶ 202. During the call, "Menendez expressed dissatisfaction with [Tavenner's] answers and stated that he would speak directly with the Secretary of HHS about the matter." *Id.* ¶ 204.

Although any effort to vet Tavenner as a nominee for confirmation would be a clearly protected act, the Speech or Debate Clause does not immunize all communications or requests made by a Senator to a current Executive Branch official while that official awaits a confirmation hearing.[3] That the Senator's calendar noted that the meeting was "re: [Tavenner's] nomination" suggests that the nomination was discussed at the meeting, but it does not establish that other, non-legislative topics were not also discussed. In such a situation, "the correct

---

[3] Such an outcome would be especially unreasonable given the extended and ever-increasing time taken by the modern confirmation process. *See* Anne Joseph O'Connell, *Shortening Agency and Judicial Vacancies Through Filibuster Reform? An Examination of Confirmation Rates and Delays from 1981 to 2014*, 64 Duke L.J. 1645, 1669 (2015) (The average time for a successful nominee to be confirmed has increased in each of the last five administrations, reaching 127.2 days for successful Obama administration appointees through 2014.).

FOR PUBLICATION

approach is *not* to conclude that the [meeting was] entirely legislative and covered by the Clause or entirely non-legislative and unprotected by the Clause." *Menendez*, 608 F. App'x at 101. To the extent that any legislative communications took place at the meeting between Menendez and Tavenner, they are not alleged in the indictment and the "legislative components [have already been] separated from the non-legislative components." *Id.*

There are no requests for information about CMS policies or procedures alleged in the indictment. The talking points prepared before Menendez's call with Tavenner explicitly disclaimed the relevance of current CMS policies, noting that they "don't have any bearing on the issue at hand." Indict. ¶¶ 199, 201-03, 205-08. Significantly, during his phone conversation with Tavenner, Menendez threatened to go above Tavenner's head when he was unsatisfied with Tavenner's response. Id. ¶ 204.

Again, the Senator has directed the Court's attention to FBI interviews with Tavenner and others concerning the call. Mot. to Dismiss 3 at 14; Mot. to Dismiss 3 Ex. A at 2-6. As with the initial meeting, these interviews, if anything, provide further support for the conclusion that the call was not about Tavenner's confirmation. Specifically, the summaries noted by the Senator explain that the call ended shortly after Tavenner told Menendez that CMS stood by its policy and would not change it. *Id.* In light of the evidence before the Court, the Senator has failed to meet his burden to show that the communications with Tavenner alleged in the indictment were protected.

### e. Paragraphs 209-227

Paragraphs 209 through 220 concern a meeting between Senator Menendez and Secretary of Health and Human Services Kathleen Sebelius that was organized by Senator Reid. Indict. ¶ 210. Before the meeting, Senator Menendez wrote that he had not "told Dr. Melgen yet. Prefer to

23

FOR PUBLICATION

know when we [are] meeting her so that I don't raise expectation just in case it falls apart." *Id.* The planning for the meeting was focused on Medicare policy that was in place during the time in which Melgen's dispute arose. *Id.* at ¶ 211. During the meeting itself, Sebelius told Senator Menendez that she had no power to influence Melgen's case because it was in the administrative appeals process. *Id.* at ¶ 216. It is quite clear that this was an attempt to influence CMS rather than an attempt to gather legislative information. Likewise, the communications in paragraphs 221-227 were attempts to coordinate a strategy to achieve a favorable result for Melgen. The Court finds that these were not legislative acts.

**B. Count One: The Conspiracy to Commit Bribery and Honest Services Wire Fraud Count does not rely on evidence immunized by the Speech or Debate Clause.**

This Court also denies the motion to dismiss Count One, which Senator Menendez does not explicitly discuss. An indictment for conspiracy under 18 U.S.C. § 371 "need only allege one overt act." *McDade*, 28 F.3d at 300. Count One incorporates all of the overt acts already discussed, as well as Senator Menendez's advocacy to the State Department on behalf of Dr. Melgen's girlfriends. Indict. ¶¶ 1-227. Because the Court finds that none of the acts disputed by Senator Menendez are protected by the Speech or Debate Clause, the indictment alleges ample activity to support the conspiracy charge. But even if this Court were to accept Senator Menendez's argument that the Medicare reimbursement policy issues and Dominican Republic port security issues are immunized, the unchallenged visa advocacy would still provide an adequate basis for the conspiracy charge. The motion to dismiss Count One is denied.

FOR PUBLICATION

### C. Count Two: The Travel Act Count does not rely on evidence immunized by the Speech or Debate Clause.

Defendant Menendez fails in his burden to persuade the Court by a preponderance of the evidence to dismiss Count Two, which charges him with violating the Travel Act by traveling in interstate and foreign commerce with the intent to commit bribery. The Count incorporates the official actions and alleges that Senator Menendez agreed to perform official acts as opportunities arose in return for a stay at the Park Hyatt Paris Vendome provided by Dr. Melgen on or about April 8, 2010. Indict.¶¶ 228-229. Senator Menendez does not challenge the admissibility of evidence of his trip to Paris, and the Court has already held that sufficient non-immunized evidence exists to support the bribery charges.

### D. Counts Nineteen Through Twenty-One: The honest services fraud Counts do not rely on evidence immunized by the Speech or Debate Clause.

Defendant Menendez fails in his burden to persuade the Court to dismiss the honest services fraud counts. The Government adequately alleges that Dr. Melgen and Senator Menendez "devised and intended to devise a scheme and artifice to defraud and deprive the United States and the citizens of New Jersey of their right to [Menendez's] honest services" through bribery. Indict. ¶ 263. The unchallenged visa advocacy allegations support the bribery element of this charge, as do the Medicare and Dominican port security issues that the Court has found are not protected legislative acts.

Senator Menendez does not claim that any of the specific jurisdictional acts alleged in Counts Nineteen through Twenty-One – Dr. Melgen's private jet pilot's communication via interstate wire and radio while Senator Menendez rode in the jet on August 9 and September 6, 2010, and Dr. Melgen's delivery of a $300,000 check to Majority PAC by FedEx on June 5,

FOR PUBLICATION

2012 – are immunized by the Speech or Debate Clause. And they are not.[4] The motion to dismiss

Counts Nineteen through Twenty-One is denied.

## II.    Motion to Dismiss 13 (Speech or Debate-Immunized Evidence in Count Twenty-Two of the Indictment)

In a separate motion, Senator Menendez contends that his mandatory disclosures filed

under the Ethics in Government Act are protected by the Speech or Debate Clause. Mot. to

Dismiss 13 at 25-29. Senator Menendez argues that, because he was required by Senate Rules to

file financial disclosure forms, the filing was a legislative act. Mot. to Dismiss 13 at 25-26. This

argument fails because the filing of financial disclosures is not protected by the Clause. *United

States v. Myers*, 692 F.2d 823, 849 (2d Cir. 1982).

The indictment does not charge Senator Menendez with violating a Senate rule; it charges

him with violating federal law, a provision of the federal Ethics in Government Act ("EIGA"),

which requires members of Congress to file financial disclosure forms with the Secretary of the

Senate disclosing gifts they receive and makes it unlawful to include false information in these

forms. Indict.¶ 266-272; *see also* 5 U.S.C. App. 4 §§ 101, 102(a)(2)(A), 104(a)(2); Senate Ethics

Manual, S. Pub. 108-1, 108th Cont, 1st Sess., at 62 (2003), *available at*

http://www.ethics.senate.gov/downloads/pdffiles/manual.pdf (noting that the Senate requires

annual financial disclosures under the EIGA. As the Government points out, the first page of the

forms Menendez filed provides the warning: "Any individual who knowingly and willfully

falsifies, or who knowingly and willfully fails to file this report may be subject to civil and

---

[4] Senator Menendez does not argue that the "scheme and artifice to defraud and deprive" alleged in Count Twenty-One requires evidence of his involvement in Dr. Melgen's Medicare billing dispute, even though the Government specifically alleges that Dr. Melgen made the $300,000 Super PAC donation in exchange for "Menendez's advocacy at the highest levels of CMS and HHS." Indict.¶ 255. In any event, this Court has already held that Senator Menendez's communications with CMS and HHS are not protected by the Speech or Debate Clause.

FOR PUBLICATION

criminal sanctions (See 5 U.S.C. App. 6, § 104 and 18 U.S.C. § 1001)." Opp. to Mot. to Dismiss

at 37. The indictment charges Senator Menendez with violating one of the listed federal statutes

by doing what he was warned against.

Senator Menendez urges the court to adopt the reasoning of Judge Kavanaugh's

concurrence in *In re Grand Jury Subpoenas*, 571 F.3d 1200, 1203 (D.C. Cir. 2009). *In re Grand*

*Jury Subpoenas*, a case involving a congressman's allegedly false testimony before the House

Ethics Committee, *id.* at 1201, did not overturn the D.C. Circuit's earlier decision in *United*

*States v. Rose*, when that Circuit determined that "testimony by a Member of Congress about the

filing of a financial disclosure report under the Ethics [in Government] Act is not protected." 28

F.3d 181, 189 (D.C. Cir. 1994).[5] Regardless, the Court is persuaded by the Second Circuit's

statement in *Myers* (where, as here, the status of the forms themselves rather than testimony

about them was disputed) that "disclosure of income from sources other than employment by the

United States . . . is no part of [the] 'deliberative and communicative processes'" that are

protected by the Speech or Debate Clause. 692 F.2d at 849.

The Senator also makes a related argument that Count 22 violates the Separation of

Powers doctrine. Mot. to Dismiss 13 at 18-25. Relying on Article I, section 5 of the Constitution,

which empowers each house of Congress to regulate the conduct of its members, Senator

Menendez argues that "it is the Senate alone that decides whether a Senator engaged in

misconduct and, if so, what punishment is imposed." Mot. to Dismiss 13 at 25.

---

[5] In *In re Grand Jury Subpoenas*, Judge Kavanaugh wrote that *Rose*'s testimony about an EIGA form before the House Committee on Standards of Official Conduct "should have qualified as protected speech" because it was "Speech . . . in either House." 571 F.3d at 1205 (Kavanaugh, J. concurring). This reasoning is inapposite here. Menendez seeks to protect the act of filing a statutorily-required disclosure form itself, not testimony about the form before a Congressional committee.

FOR PUBLICATION

The suggestion that the Senate has exclusive power and jurisdiction to punish any act which, although being a crime under federal law, is also a violation of the Senate Rules is unsupported and has been rejected by the Supreme Court. Specifically, the Court explained in *Brewster* that, for many reasons,[6] "Congress is illequipped to investigate, try, and punish its Members for a wide range of behavior that is loosely and incidentally related to the legislative process." *Brewster*, 408 U.S. at 518; *cf. Johnson*, 383 U.S. at 185 (leaving open for consideration whether Congress's power to regulate its members' conduct could be used to authorize a criminal prosecution "entailing inquiry into legislative acts or motivations" that would normally be immunized by the Speech or Debate Clause). The submission of Senator Menendez's financial disclosure forms under the Ethics in Government Act was not a legislative act under the Speech or Debate Clause. The Separation of Powers doctrine does not immunize the Senator from prosecution merely because the form was mandated by a Senate Rule as well as by federal law. The Court will address Defendant's other, unrelated arguments in Mot. to Dismiss 13 in a separate opinion.

### III. Motion to Dismiss 2 (Speech or Debate Clause Violations Before the Grand Jury)

As discussed in footnote 1, Senator Menendez previously asserted Speech or Debate Clause immunity to challenge a motion to compel two of his staffers to testify before the grand jury. Senator Menendez argued that questions and answers about his involvement in Dr. Melgen's

---

[6] Specifically, "Congress has shown little inclination to exert itself in this area. Moreover, if Congress did lay aside its normal activities and take on itself the responsibility to police and prosecute the myriad activities of its Members related to but not directly a part of the legislative function, the independence of individual Members might actually be impaired. . . . Strong arguments can be made that trials conducted in a Congress with an entrenched majority from one political party could result in far greater harassment than a conventional criminal trial with the wide range of procedural protections for the accused, including indictment by grand jury, trial by jury under strict standards of proof with fixed rules of evidence, and extensive appellate review. Finally, the jurisdiction of Congress to punish its Members is not all-embracing." *Brewster* 408 U.S. at 519-20.

FOR PUBLICATION

Medicare billing dispute and the CBP's donation of port surveillance equipment were immunized by the Speech or Debate Clause, *Menendez*, 608 F. App'x at 100. The District Court held that none of the questions or answers were immunized. On appeal, the Third Circuit held that it could not "adequately evaluate the District Court's decision because it did not fully explain the basis for its factual determination" and remanded the case to the District Court to make "specific factual findings about the communications implicated by the grand jury questions." *Id.* at 101-02.[7]

In a separate motion to dismiss, Senator Menendez argues that the entire indictment must be dismissed because the District Court failed to make these "specific factual findings" and allowed the prosecution to present privileged Speech or Debate material, influencing the grand jury's decision to indict. Mot. to Dismiss 2 at 1.

A facially valid indictment can be dismissed based on "wholesale violation of the speech or debate clause before a grand jury" where "any attempt to cull out single counts of the indictment" are "unrealistic." *United States v. Helstoski*, 635 F.2d 200, 205 (3d Cir. 1980). Where there has been no wholesale or pervasive violation in front of the grand jury, it is generally true that an "indictment returned by a legally constituted and unbiased grand jury . . . if valid on its face, is enough to call for a trial on the merits." *Costello v. United States*, 350 U.S.

---

[7] Senator Menendez mischaracterizes the Third Circuit's decision, claiming that the Government "lost[] its Speech or Debate Clause claim before the Third Circuit." Mot. to Dismiss 2 at 1. He argues that the Third Circuit "rejected the prosecution's broad claim that its labelling the actions of Senator Menendez and his staff 'advocacy'" would remove the "protections of the Speech or Debate Clause," and "provided the prosecution with a roadmap on remand as to what it would need to prove to overcome the Speech or Debate privilege." *Id.* at 2. As stated already, the Government did not need to "prove" anything. A party asserting legislative immunity bears the burden of establishing the immunity by a preponderance of the evidence. *Lee*, 775 F.2d at 524. The burden was – and still is –on Senator Menendez to prove that his acts are protected by the Speech or Debate Privilege, not on the Government to prove that they are unprotected.

FOR PUBLICATION

359, 363 (1956); *Jefferson*, 546 F.3d at 314, 314 n. 8 (applying *Costello* in the Speech or Debate

context where defendant had made no allegation of a pervasive violation before the grand jury).

In this case any error in the grand jury was harmless and does not require dismissal of the

indictment. The District Court did not make the "specific factual findings" ordered by the Third

Circuit because the Government introduced evidence through Special Agent Gregory Sheehy of

the Federal Bureau of Investigation rather than re-examine the challenged staffers. Mot. to

Dismiss 2 at 5. The parties dispute whether the Third Circuit remanded for findings on only the

"specific questions" posed to the staffers, Opp. to Mot. to Dismiss at 27 – in which case

interviewing Agent Sheehy rendered the Third Circuit's instructions moot – or on the potentially

immunized communications themselves – in which case it did not. This Court finds that the

Third Circuit directed the District Court to make findings about the "*communications* implicated

by the grand jury questions," *Menendez*, 608 F. App'x at 101 (emphasis added). But the

distinction is immaterial. Senator Menendez notes, correctly, that "the issue as to what is

privileged under the Speech or Debate Clause is the same" under Motion 2 and Motion 1. Mot.

to Dismiss 2 at 3. As the Court has already determined, the indictment's allegations about

Senator Menendez's communications regarding Dr. Melgen's Medicare billing dispute and

Dominican port security issues are not legislative acts protected by the Speech or Debate Clause.

The evidence presented to the grand jury on all of these issues was materially the same as the

allegations contained in the indictment. The Court reaches the same holding as in Motion 1.

IV.    **Motion to Dismiss 4 (Erroneous Speech or Debate Clause Instructions to the Grand**
       **Jury)**

In a separate motion to dismiss, Senator Menendez and Dr. Melgen argue that the

indictment must be dismissed because the grand jury was erroneously instructed on several

FOR PUBLICATION

issues, including the applicability of the Speech or Debate Clause. Mot. to Dismiss 4. The Court

addresses the Defendants' Speech or Debate argument here and will address the remaining

arguments in a separate opinion.

Defendants do not identify any incorrect statements of law made by the prosecutors, who

correctly described the privilege as belonging to the Senator, being "an important part of the

constitution," and covering only legislative activity. Mot. to Dismiss 4 at 7-9. Defendants claim

that the prosecutors should have specified that any conduct covered by the Speech or Debate

Clause had to be disregarded by the grand jurors. *Id.* They also dispute the prosecutor's

statement to the grand jury that the jurors "should not be deciding whether or not this is about an

invalid assertion of the Speech or Debate Clause. That's an issue that if we need to raise, we'll

bring it before a judge, and the judge will make a determination." *Id.* Defendants contend,

without citation, that the validity of a Speech or Debate Clause assertion is a question for a grand

jury. *Id.* at 9-10.

The government's instructions to the grand jury were correct, and Defendants'

contentions about erroneous instructions are without merit. Accepting for the sake of argument

Defendants' contention that the government failed to explain to the grand jurors that they should

disregard material that was privileged by the Speech or Debate Clause, the Court has already

determined that there was no protected material. The government was also correct that the

validity of an assertion of the protection of the Speech or Debate Clause is a matter of law and

not a question for a grand jury to decide.

## CONCLUSION

Senator Menendez had the burden to demonstrate by a preponderance of the evidence

that his acts alleged in the indictment were legislative acts protected by the Speech or Debate

FOR PUBLICATION

Clause of the Constitution's Article I. He has failed for the reasons advanced in this opinion. It follows that Menendez's motion to dismiss the indictment for violations of the Speech or Debate Clause (Motion 1) is denied. Senator Menendez's motion to dismiss Count Twenty-Two of the indictment (Motion 13) is denied with respect to claims about violations of the Speech or Debate Clause and Separation of Powers doctrine. Senator Menendez's motion to dismiss the indictment for violations of the Speech or Debate Clause before the grand jury (Motion 2) is denied. Defendants' motion to dismiss the indictment for erroneous instructions to the grand jury (Motion 4) is denied with respect to the claim about erroneous instructions on the Speech or Debate Clause. An appropriate order follows.

DATE: 28 September 2015

William H. Walls
Senior United States District Court Judge