FOR PUBLICATION

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROBERT MENENDEZ and<br>SALOMON MELGEN,<br><br>Defendants. | **OPINION**<br>Cr. No. 15-155 |

**Walls, Senior District Judge**

Defendants Robert Menendez and Salomon Melgen bring three motions to dismiss this action under Federal Rule of Criminal Procedure 12(b)(3) based on purported violations of the First Amendment. After oral argument on September 17, 2015, the Court grants in part one of these motions and denies the others.

## BACKGROUND

Defendants have been indicted in the District of New Jersey on charges of bribery and related crimes. Indictment ("Indict."), ECF No. 1. The full procedural and factual background of this case was discussed at length by the Court in its opinion on Defendants' motions to dismiss related to the Speech or Debate Clause, ECF No. 117, and need not be repeated here. Among Defendants' motions to dismiss are (a) a motion arguing that the indictment violates the First Amendment by charging "efforts to influence" as a crime and by failing to allege an explicit *quid pro quo*, Motion to Dismiss Number 8, ECF No. 55 at 5-8, (b) a motion arguing that certain Counts improperly allege that Dr. Melgen donated to a Super PAC, Motion to Dismiss Number 9, ECF No. 56 at 1, and (c) a motion alleging that erroneous instructions were given to the grand jury, Motion to Dismiss Number 4, ECF No. 51.

1

## LEGAL STANDARD

Federal Rule of Criminal Procedure 12(b)(3) allows a defendant to move to dismiss an indictment for a failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). An indictment is sufficient "so long as it '(1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must be prepared to meet, and (3) allows the defendant to show with accuracy to what extent he may plead a formal acquittal or conviction in the event of a subsequent prosecution.'" *United States v. Kemp*, 500 F.3d 257, 280 (3d Cir. 2007) (quoting *United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007)). For purposes of a motion to dismiss, the Court must accept as true all factual allegations in the indictment. *United States v. Besmajian*, 910 F.2d 1153, 1154 (3d Cir. 1990). Dismissal under Rule 12(b)(3) "may not be predicated upon the insufficiency of the evidence to prove the indictment's charges." *United States v. DeLaurentis*, 230 F.3d 659, 661 (3d Cir. 2000).

## DISCUSSION

1. **The indictment alleges a *quid pro quo* bribery scheme, which is not protected by the First Amendment.**

In their motion to dismiss the indictment for violations of the First Amendment, Defendants contend that the Constitution protects all "efforts to influence and obtain access to elected officials." Mot. to Dismiss 8 at 3. Defendants' arguments are primarily drawn from two cases. The first is *Citizens United v. FEC*, in which the Supreme Court held that a law prohibiting corporations from making independent political expenditures was barred by the First Amendment. 558 U.S. 310, 318-19 (2010). The law's categorical ban on these expenditures was held to be an insufficiently-narrow means to advance the government's legitimate interest in preventing *quid pro quo* corruption. *Id.* at 361.

2

The second case relied on by Defendants is *McCutcheon v. FEC*, in which the Supreme Court held that aggregate limits to campaign donations improperly restricted donors' First Amendment rights. 134 S. Ct. 1434, 1462 (2014). Base campaign donation limits are a prophylactic measure designed to prevent corruption and the appearance of corruption. *Id.* at 1458. The aggregate limits that were before the Court in *McCutcheon* were "then layered on top, ostensibly to prevent circumvention of the base limits," in what the Court described as a "prophylaxis-upon-prophylaxis approach." *Id.* (internal quotations omitted). The Court held that these aggregate limits were not "closely drawn to avoid unnecessary abridgment of associational freedoms." *Id.* at 1456 (internal citation omitted).

Defendants here have been charged with engaging in a *quid pro quo* bribery scheme, not with exceeding limits set by a prophylactic campaign finance regulation. *See, e.g.* Indict. ¶ 9 (alleging that Defendants conspired to offer Menendez "things of value to influence official acts benefitting Melgen's personal and business interests."). Nothing in either *Citizens United* or *McCutcheon* implies that the First Amendment prevents prosecution of an alleged conspiracy in which things of value were exchanged for official acts. *See McCutcheon*, 134 S. Ct. at 1450 ("Spending large sums of money in connection with elections, *but not in connection with an effort to control the exercise of an officeholder's official duties*, does not give rise to *quid pro quo* corruption.") (emphasis added); *Citizens United*, 558 U.S. at 360 ("If elected officials succumb to improper influences from independent expenditures . . . then surely there is cause for concern."); *Wagner v. FEC*, 793 F.3d 1, 6 (D.C. Cir. 2015) ("[T]he Supreme Court has repeatedly held that the Government's interest in preventing *quid pro quo* corruption or its appearance is sufficiently important to justify the regulation of campaign contributions. In fact, the Court has stated that the same interest may properly be labeled compelling, so that the

interest would satisfy even strict scrutiny." (citing *McCutcheon*, internal quotations omitted)); *see also United States v. McDonnell*, 792 F.3d 478, 513 (4th Cir. 2015) (Trial court in honest services fraud and extortion case did not err in refusing to instruct jury that "mere ingratiation and access are not corruption" because "[a]ffording the talismanic significance Appellant assigns to this language [from *Citizens United*] ignores its context.").

Defendants are correct that attempts to influence a public official through speech alone are protected. But the Constitution does not protect an attempt to influence a public official's acts through improper means, such as the bribery scheme that has been alleged in this case. The government has adequately alleged that Melgen made contributions in an effort to control the exercise of Menendez's official duties, and the truth of these allegations is a question of fact.

## 2. A donation to a Super PAC can be a "thing of value" under 18 U.S.C. § 201.

Relying on related arguments, Defendants have separately moved for Counts 15-18 to be dismissed and for the Court to strike all overt acts relating to Melgen's donations to a Super PAC known as "Majority PAC" from Count 1. Motion to Dismiss 9 at 1-3. Defendants point to the indictment's allegations that Melgen made donations to Majority PAC, which he earmarked to be spent on Menendez's Senate campaign, in exchange for "Menendez's advocacy at the highest levels of CMS and HHS on behalf of Melgen in his Medicare billing dispute." Indict. ¶¶ 59, 255. Referring to *Citizens United*, Defendants argue that "no *quid pro quo* corruption can arise when a private citizen contributes to a *bona fide* Super PAC, because a *bona fide* Super PAC does not coordinate its expenditures with a candidate." Motion to Dismiss 9 at 2. Defendants further contend that "[m]oney spent on truly independent election advocacy is beyond a candidate's control, and therefore, the Court has held, it *cannot* be sufficiently valuable to a candidate in a way that might ever lead to *quid pro quo* corruption." *Id.* at 11 (emphasis in original).

Defendants correctly point out that, since *Citizens United* held that "[l]imits on independent expenditures . . . have a chilling effect extending well beyond the Government's interest in preventing *quid pro quo* corruption," 558 U.S. at 357, courts have held that the government is not permitted to limit donations to Super PACs. *See, e.g., Arizona v. Free Enterprise Club's Freedom PAC v. Bennett*, 131 S. Ct. 2806, 2826-27 (2011) (statute providing funds to publicly financed candidates that matched independent expenditures on behalf of privately financed candidates unconstitutional); *Lodge No. 5 of Fraternal Order of Police ex rel. McNesby v. City of Philadelphia*, 763 F.3d 358, 378-79 (3d Cir. 2014) (restriction on donations by police employees to police union PAC unconstitutional); *SpeechNow.org v. FEC*, 599 F.3d 686, 694 (D.C. Cir. 2010) (contribution limits to groups that make only independent expenditures unconstitutional). Citing *Buckley v. Valeo*, 424 U.S. 1, 47 (1976), *Citizens United* reasoned that independent expenditures had insufficient actual value to candidates because of the "absence of prearrangement and coordination of an expenditure with the candidate." 558 U.S. 908. The passage of *Buckley* cited by *Citizens United* noted that, because of this lack of coordination, independent expenditures "may well provide little assistance to the candidate's campaign and indeed may prove counterproductive." 424 U.S. at 47. The concern expressed in *Buckley* was that independent expenditures did not *necessarily* provide any value to a particular candidate. These cases do not warrant striking references to Majority PAC from the indictment for two reasons: (1) "value" for the purposes of § 201 is subjective, and (2) § 201 reaches bribes given to third parties if a public official sought them with the intent to be influenced.

First, the reasoning of *Citizens United* and later cases centers on whether the real value of independent expenditures to a candidate can justify limits placed on contributions. In contrast, bribery under § 201(b), which is defined as the corrupt acceptance of "anything of value" with

5

the intent to be influenced in the performance of an official act, turns on a *subjective* definition of "anything of value." *See, e.g., United States v. Renzi*, 769 F.3d 731, 744 (9th Cir. 2014) (The term "anything of value" is "defined broadly to include 'the value which the defendant subjectively attaches to the items received.'" (quoting *United States v. Gorman*, 807 F.2d 1299, 1305 (6th Cir. 1986)); *United States v. Williams*, 705 F.2d 603, 623 (2d Cir. 1983) ("Corruption of office occurs when the officeholder agrees to misuse his office in the expectation of gain, whether or not he has correctly assessed the worth of the bribe."). Notwithstanding the statement in *Citizens United* that independent expenditures have no actual value to candidates, a jury could find that Defendant Menendez placed value, albeit subjective, on the earmarked donations given to Majority PAC by Melgen.

Second, § 201(b)(1) criminalizes the making of a corrupt promise to a public official "to give anything of value *to any other person or entity*, with intent to influence any official act," and § 201(b)(2) criminalizes corruptly seeking "anything of value *personally or for any other person or entity*, in return for being influenced in the performance of any official act." (emphasis added). Public officials have been convicted for being influenced in the performance of their duties in return for bribes paid to third parties. *See United States v. Jefferson*, 674 F.3d 332, 341-42 (4th Cir. 2012) (Payments made to a business controlled by a Congressman's wife in exchange for official action constituted bribery.); *United States v. Siegelman*, 640 F.3d 1159, 1165-66 (11th Cir. 2011) (Governor was guilty of federal funds bribery and honest services fraud after exchanging a seat on a state board for a donation to a foundation campaigning for a ballot initiative to establish a lottery to fund education.); *cf. United States v. Spano*, 421 F.3d 599, 603 (7th Cir. 2005) ("A participant in a scheme to defraud is guilty even if he is an altruist and all the benefits of the fraud accrue to other participants . . . the public is deprived of its servants' honest

6

services no matter who receives the proceeds.") (internal citations omitted). The indictment alleges, among other Charges, that "Menendez sought and received from Salomon Melgen . . . approximately $300,000 for Majority PAC that was earmarked for the New Jersey Senate race . . . in return for Menendez's advocacy at the highest levels of HHS on behalf of Melgen. . . ." Indict. ¶ 259. Even if contributions to Majority PAC had no objective value to Menendez, they unquestionably had value to Majority PAC as an entity, and § 201(b)(2) criminalizes corruptly seeking anything of value, even for another person or entity, in return for being influenced in the performance of an official act. *Cf. Siegelman*, 1169-70 (allowing federal funds bribery conviction of a governor based on a corrupt donation to an issue advocacy campaign).

Because the "government is entitled to marshal and present its evidence at trial, and [may] have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29," *DeLaurentis*, 230 F.3d at 661, the Court is not persuaded to strike references to Majority PAC at this stage.

### 3. Counts 9-12 do not meet the heightened pleading standard required by *McCormick*.

#### a. The *McCormick* standard

Defendants have also contended in their eighth motion to dismiss that the indictment fails to comply with the Supreme Court's ruling in *McCormick v. United States*, 500 U.S. 257 (1991). In *McCormick*, the Court reviewed the conviction of a state legislator charged with violating the Hobbs Act, 18 U.S.C. § 1951, by using his office to extort campaign contributions. *Id.* at 259-60. The Court held that a defendant can be convicted of extorting campaign contributions under color of official right "only if the payments are made in return for an explicit promise or undertaking by the official to perform or not perform an official act." *Id.* at 273. The Court explained that:

7

> Whatever ethical considerations and appearances may indicate, to hold that legislators commit the federal crime of extortion when they act for the benefit of constituents or support legislation furthering the interests of some of their constituents, shortly before or after campaign contributions are solicited and received from those beneficiaries, is an unrealistic assessment of what Congress could have meant by making it a crime to obtain property from another, with his consent, "under color of official right."

*Id.* at 272.

*McCormick* was further explained by the Court in *Evans v. United States*, 504 U.S. 255, 268 (1992). The *Evans* Court held that, because fulfilment of the *quid pro quo* is not an element of the offense, the government "need only show that a public official has obtained a payment to which he was not entitled, knowing that the payment was made in return for official acts." *Id.* In his concurrence to *Evans*, Justice Kennedy further explained that the "official and the payor need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods." *Id.* at 274 (Kennedy, J., concurring). The requirement of an express *quid pro quo* does not mean that an explicit agreement is required; instead, *McCormick* is satisfied if the agreement "is implied from [the official's] words and actions, so long as he intends it to be so and the payor so interprets it." *Id.* Interpreting the two cases, the Sixth Circuit has explained that:

> *Evans* provided a gloss on the *McCormick* Court's use of the word "explicit" to qualify its *quid pro quo* requirement. Explicit, as explained in *Evans*, speaks not to the form of the agreement between the payor and payee, but to the degree to which the payor and payee were aware of its terms, regardless of whether those terms were articulated. Put simply, *Evans* instructed that by "explicit" *McCormick* did not mean "express."

*United States v. Blandford*, 33 F.3d 685, 696 (6th Cir. 1994).

This case raises two initial questions about the reach of *McCormick*. The first is whether, as Defendants contend, the *McCormick* pleading requirement of an explicit *quid pro quo* agreement for campaign contributions applies to bribery and honest services fraud as well as

8

extortion. Mot. to Dismiss 8 at 13. The second is whether the *McCormick* standard applies beyond campaign contributions to cover Melgen's alleged donations to the "Fund to Uphold the Constitution," ("the Fund"), a legal defense trust fund benefiting Menendez. The government has not disputed the application of the *McCormick* requirement to the bribery and honest services fraud charges, Opp. to Mot. to Dismiss, ECF No. 86 at 5 n.1, but has disputed the application of *McCormick* to the charges alleging Melgen's donations to the Fund, *id.* at 11. The Court will apply *McCormick* both to the statutes at issue here and the donations to the Fund.

*McCormick* was decided based on the application of a canon of statutory interpretation. 500 U.S. at 272-73 ("It would require statutory language more explicit than the Hobbs Act contains to justify a contrary conclusion."). As a matter of statutory interpretation, the Seventh Circuit has observed that "[g]iven the minimal difference between extortion under color of official right and bribery, it would seem that courts should exercise the same restraint in interpreting bribery statutes as the *McCormick* Court did in interpreting the Hobbs Act." *United States v. Allen*, 10 F.3d 405, 411 (7th Cir. 1993). That rationale is particularly appropriate to the Court's present inquiry.

Additionally, *McCormick*'s special protection for campaign contributions draws on the same underlying concerns reflected in the Court's First Amendment cases. *Compare id.* (Campaign contributions are "unavoidable so long as election campaigns are financed by private contributions or expenditures, as they have been from the beginning of the nation.") (quotation omitted) *and McCutcheon*, 134 S. Ct. 1434, 1441 (It is "a central feature of democracy[ ]that constituents support candidates who share their beliefs and interests, and candidates who are elected can be expected to be responsive to those concerns."). The Eleventh Circuit has interpreted the *McCormick* standard as serving to protect against convictions that "impact the

First Amendment's core values." *Siegelman*, 640 F.3d at 1169-70. It follows that the *McCormick* standard should be interpreted in light of the Supreme Court's First Amendment jurisprudence, and the Supreme Court has explained that "First Amendment standards . . . must give the benefit of any doubt to protecting rather than stifling speech." *See Citizens United*, 558 at 327 (citations and quotations omitted). For these reasons, the *McCormick* standard applies to alleged bribery under 18 U.S.C. § 201(b).

The Court will also apply the *McCormick* standard when analyzing all political donations in the indictment, including Melgen's contributions to the Fund. The First Amendment "has its fullest and most urgent application to speech uttered during a campaign for political office." *Citizens United*, 558 U.S. at 339 (internal citations omitted). Although not technically connected with an election campaign, the Fund's money paid for the litigation of an unconstitutional attempt to recall the Senator through a New Jersey state statute that was decided by the Supreme Court of New Jersey in 2010. *See* Mot. to Dismiss 8 at 20-22; *see generally Committee to Recall Robert Menendez from the Office of U.S. Senator v. Wells*, 204 N.J. 79, 85-87 (2010). The Fund's money was given and spent for the same political purpose as money donated directly to Menendez's 2012 campaign: to ensure that Menendez remained in his office. A donation to the Fund was a "symbolic expression of support" in the same sense that a donation to a campaign or PAC would have been. *Cf. Lodge No. 5 of Fraternal Order of Police*, 763 F.3d at 367; *Buckley*, 424 U.S. at 21 ("A contribution serves as a general expression of support for the candidate and his views, but does not communicate the underlying basis for the support.") . There is no principled distinction to be made from which a contribution to a campaign seeking to reelect Menendez to the office of Senator was political speech but a contribution to a fund seeking to protect Menendez from being removed from that same office was not political speech. *See*

*Citizens United*, 558 U.S. at 327 ("First Amendment standards . . . must give the benefit of any doubt to protecting rather than stifling speech.") (citations and quotations omitted).

### b. Only Counts 9-12 fail to satisfy *McCormick*.

Defendants contend that Counts 1, 9-18, and 21 fail to allege an explicit *quid pro quo* as required by *McCormick*. Mot. to Dismiss 8 at 13. Counts 13 through 18, as well as 1 and 21, clearly allege an explicit *quid pro quo*. Counts 13 and 14 allege that Melgen donated to a New Jersey state Democratic fund "in return for Menendez's advocacy to the State Department on behalf of Melgen in his contract dispute with the Government of the Dominican Republic." Indict. ¶ 251. Although the government need not establish that the alleged *quid pro quo* was actually fulfilled, *Evans*, 504 U.S. at 268, the specifics of Menendez's advocacy in the Dominican Republic dispute are detailed in paragraphs 114-143. Counts 15-16 allege that Melgen donated money to Majority PAC "in return for Menendez's advocacy at the highest levels of CMS and HHS on behalf of Melgen in his Medicare billing dispute," while Counts 17-18 allege that Melgen donated money to Majority PAC and to New Jersey Democratic Party entities in return for Menendez's advocacy at HHS. Again, the specifics of Menendez's advocacy at CMS and HHS are detailed in paragraphs 144-227. Count 1 and Count 21 allege conspiracy and honest services fraud respectively, accusing Defendants of engaging in a bribery scheme that included the specific *quid pro quo* agreements listed earlier as well as other incidences of bribery that did not involve campaign contributions.

Additionally, incorporated into every count is Paragraph 16 of the indictment's "Manner and Means" section, which alleges that "Melgen offered and gave, and Menendez solicited and accepted from Melgen, hundreds of thousands of dollars of contributions to entities that benefitted Menendez's 2012 Senate campaign, *in exchange for specific requested exercises of*

*Menendez's official authority.*" (emphasis added). The language in Paragraph 16 alleging campaign contributions given "in exchange for specific requested exercises of Menendez's official authority" mirrors the language from the jury instruction in *Evans* that was upheld by the Supreme Court. 504 U.S. at 258. Far from alleging a "generalized expectation of some future favorable action" that would be inadequate under the heightened *McCormick* standard, these are precisely the kinds of explicit agreements which are required when a campaign contribution is alleged as part of a *quid pro quo*. *Siegelman*, 640 F.3d at 1171-72 (applying *McCormick* and affirming conviction where jury instruction "required the jury to find an agreement to exchange a specific official action for a campaign contribution").

This Court's "review of the facts set forth in the indictment is limited to determining whether, assuming all of those facts as true, a jury *could* find that the defendant committed the offense for which he was charged." *United States v. Huet*, 665 F.3d 588, 595-96 (3d Cir. 2012) (emphasis added). As Justice Kennedy explained in *Evans*, "the trier of fact is quite capable of deciding the intent with which words were spoken or actions taken as well as the reasonable construction given to them by the official and the payor." 504 U.S. at 274 (Kennedy, J., concurring). That the alleged agreement was not express is irrelevant. *Siegelman*, 640 F.3d at 1171 ("[T]he agreement must be *explicit*, but there is no requirement that it be *express*.") (emphasis in original); *Blandford*, 33 F.3d at 696 ("[T]he *quid pro quo* of *McCormick* is satisfied by something short of a formalized and thoroughly articulated contractual agreement."). Counts 13-18, 1, and 21 satisfy *McCormick*.

On the other hand, Counts 9-12 fail to satisfy the heightened pleading standard. These counts allege that Melgen made contributions to the Fund "in order to influence Menendez's official acts, as opportunities arose," Indict. ¶¶ 245, 249, and that Menendez sought and received

these funds in return for "being influenced in the performance of official acts, as opportunities arose." *Id.* ¶¶ 243, 247. This is an allegation of a "generalized expectation of some future favorable action" barred by *McCormick*. *Siegelman*, 640 F.3d at 1171.

Like the other Counts in the indictment, Counts 9-12 incorporate the Manner and Means section of the Indictment, which includes Paragraph 16. *See* Indict. at ¶¶ 242, 244, 246, 248. But as discussed, Paragraph 16 reads "Melgen offered and gave, and Menendez solicited and accepted from Melgen, hundreds of thousands of dollars of contributions *to entities that benefitted Menendez's 2012 Senate campaign*, in exchange for specific requested exercises of Menendez's official authority." (emphasis added). On its face, Paragraph 16 does not refer to the Fund, which paid for a litigation decided in 2010. Supporting this interpretation is a common-sense reading of the Manner and Means section which includes Paragraph 16. Melgen's donations to the Fund are specifically mentioned not in Paragraph 16 but in Paragraph 12, where they are listed alongside several alleged bribes that do not trigger the *McCormick* standard, and Paragraph 12 alleges no explicit agreement.[1] Reading Paragraph 16 on its own and reading the indictment as a whole, the Fund to Uphold the Constitution was not one of the "entities that benefited Menendez's 2012 Senate Campaign." Nor does the indictment allege an explicit agreement tied to the donations to the Fund. The Court will dismiss Counts 9-12 and strike all references to the Fund to Uphold the Constitution. Defendants' motion with respect to all other Counts is denied.

4. **The grand jury instructions were sufficient.**

---

[1] Paragraph 12 reads in full: "Melgen offered and gave, and Menendez solicited and accepted from Melgen, things of value, including domestic and international flights on private jets, first-class domestic airfare, use of a Caribbean villa, access to an exclusive Dominican resort, a stay at a luxury hotel in Paris, expensive meals, golf outings, and *tens of thousands of dollars in contributions to a legal defense fund.*" (emphasis added).

13

FOR PUBLICATION

Finally, Defendants move to dismiss the indictment because of purportedly erroneous instructions given to the grand jury about Melgen's political contributions to Menendez. Mot. to Dismiss 4. Specifically, Defendants contend (1) that the government failed to instruct the grand jury on *McCormick*'s requirement of an explicit *quid pro quo* agreement for bribery allegations stemming from campaign contributions, and (2) that the government was required to instruct the grand jury that access to Senator Menendez could not constitute part of an illegal *quid pro quo*. As discussed earlier, *McCormick*'s application to 18 U.S.C. § 201(b) was and is a matter of unsettled law, and Defendants cite to no authority where an indictment was dismissed because a grand jury was not instructed on a legal principle that had yet to be established. *Cf. Jarvis v. Ford Motor Co.*, 283 F.3d 33, 63 (2d Cir. 2002) (no fundamental error in petit jury instructions where the nature of the law in question was unsettled). Even if the Court were willing to do so, the indictment properly alleges an explicit *quid pro quo* exchange for all remaining counts involving campaign contributions and is valid on its face. It also adequately charges bribery by alleging an agreement in which Melgen gave things of value to Menendez in exchange not merely for access but for official acts including advocacy with Executive Branch agencies.

Defendants' Fourth Motion to Dismiss makes two additional arguments. First, Defendants argue that the government erroneously instructed the grand jury on the Speech or Debate Clause. Mot. to Dismiss 4 at 5-13. This argument has been discussed and rejected by the Court in its opinion addressing Defendants' various Speech or Debate arguments ECF No. 117, which is incorporated by reference. Second, Defendants state that they "can only assume the model grand jury charge was given" to the grand jury and contend that the model grand jury charge is unconstitutional. Mot. to Dismiss 4 at 19-27. They argue that various provisions of the model grand jury charge improperly vouch for prosecutors' credibility and suggest to grand

jurors that they have an obligation to indict if probable cause is found, restricting their independence. *Id.*

Defendants have put forward no evidence to demonstrate that the model grand jury charge was used. Assuming for the sake of argument that the charge was given, similar contentions have been heard and rejected by two Circuit Courts. *United States v. Navarro-Vargas*, 408 F.3d 1184, 1206-08 (9th Cir. 2005); *United States v. Knight*, 490 F.3d 1268, 1271-72 (11th Cir. 2007). In *Navarro-Vargas*, the Ninth Circuit analyzed the history and structural roles of the grand jury and held that, while the model grand jury charge may contain language that is likely unnecessary and could be improved, provisions similar to those that Defendants have challenged are constitutionally adequate. 408 F.3d at 1208. In *Knight*, the Eleventh Circuit examined similar instructions and, citing to *Navarro-Vargas*, found that the grand jury "could easily understand it was independent from the court and could indict or not based upon the evidence. Thus, there was no constitutional violation in the grand jury instructions in this case." 490 F.3d at 1272. Defendants have not produced evidence of improper conduct before the grand jury, and their motion is denied. *See Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Vitillo*, 490 F.3d 314, 320-21 (3d Cir. 2007).

## CONCLUSION

Defendants' motions to dismiss Numbers 4, and 9 are denied. Defendants' motion to dismiss Number 8 is granted in part and denied in part. An appropriate order follows.

Date: September 28, 2015

William H. Walls
United States Senior District Judge