UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:15-cr-155 |
| v. ) | Hon. William H. Walls |
| ) | |
| ROBERT MENENDEZ and ) | |
| SALOMON MELGEN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## UNITED STATES' MOTION TO QUASH

Almost two years ago, on August 21, 2015, defendants Robert Menendez and Salomon Melgen served seven federal agencies with Rule 17 subpoenas. Soon thereafter, each agency objected to the unreasonably broad scope and unduly burdensome nature of the defendants' subpoenas and sent the defendants a written response outlining their respective objections. One agency provided a limited production. The defendants ignored these letters and the production and allowed almost two years to pass without pursuing the matter. Recently, on June 27, 2017—less than two months before jury selection—the defendants issued new, though equally burdensome and broad in scope, subpoenas to six of these agencies, requesting substantially the same material and failing to address any of the concerns the agencies raised in 2015. None of the documents the defendants seek to obtain are relevant to the determination of their guilt. Furthermore, the subpoenas are dilatory, overbroad, and unduly burdensome, particularly considering how little time the agencies now have to collect and produce documents before trial begins. The subpoenas should be quashed.[1]

---

[1] The United States has standing to raise its objection to these subpoenas because it "has a legitimate interest in preventing one of its instrumentalities from being compelled to produce voluminous information that is not relevant to an ongoing criminal prosecution." *United States v. Avalos-Martinez,* 299 F.R.D. 539, 541 (W.D. Tex. 2014) (finding that the Department of Justice

## I.  Procedural History

On August 21, 2015, the defendants served the Department of Health and Human Services (HHS) (including the Centers for Medicare and Medicaid Services (CMS)), the Central Intelligence Agency (CIA), the Department of Commerce (DOC), the Department of State (DOS), the Department of Homeland Security (DHS), and Customs and Border Patrol (CBP) with Rule 17 subpoenas.  Exs. A, B, C, D, E, and F.  The subpoenas demanded broad categories of documents, such as "[a]ll documents concerning Medicare reimbursement policy for administration of the drug Lucentis" (Ex. A) and "[a]ll documents concerning the trafficking of illegal drugs/narcotics through ports in the Dominican Republic to the United States," (Exs. B, C, D, E, and F).

On September 14, 2015, DOS responded to the subpoena it received with a letter to defense counsel, objecting that the subpoena was "overly broad and unduly burdensome" and noting that it requested documents that already had been produced in response to the Department of Justice's (DOJ's) prior subpoena.  Ex. G.  Nevertheless, DOS agreed to search for documents in response to paragraphs 4-6, 7-10, and 13-14 of the subpoena.  *Id.*  The defendants did not respond.  *See* Ex. H.  DOS proceeded to search for responsive documents, and on April 13, 2016, DOS sent the

---

had standing to quash a subpoena directed at the Government Accountability Office); *see also In re Matter of Grand Jury (Schmidt)*, 619 F.2d 1022, 1026–27 (3d Cir. 1980) (holding that intervenor standing exists regarding a subpoena directed at a third party not only in cases involving intervenors with property interests or claims of privilege, but in cases where "legitimate interests of the party" would be affected); *In re Grand Jury*, 111 F.3d 1066, 1071-72 (3d Cir. 1997) (finding standing to quash a subpoena directed to a third party due to movants' legitimate interest in protecting their own statutory right to privacy); *Pleasant Gardens Realty Corp. v. H. Kohnstamm & Co.*, No. CIV. 08-5582JHRJS, 2009 WL 2982632, at *2 (D.N.J. Sept. 10, 2009) ("[B]ecause the United States is seeking to protect its property right or privilege, it has standing to object to . . . subpoenas even though they are directed to third persons.").

defendants a production accompanied by a letter.  *Id.*  The defendants did not acknowledge receipt of those documents.

Meanwhile, the other agencies registered their objections to the Rule 17 subpoenas.  On September 15, 2015, DOC sent a letter to defense counsel, noting that some of the requested documents had already been produced to the defense via the DOJ, and that the other document requests were "overly broad and unduly burdensome."  Ex. I.  That same day, HHS sent its objections to the defendants.  Ex. J.  On October 13, 2015, DHS followed suit, in response to the subpoenas that DHS and CBP received.  Ex. K.  On October 21, 2015, the CIA sent a letter with its objections to the defendants.  Ex. L.  The defendants did not respond to any of these letters, nor did they make any further attempts to enforce the 2015 subpoenas.

Almost two years later, on June 27, 2017, the defendants sent new subpoenas to CBP, CMS, DHS, DOC, HHS, and DOS.  Exs. M, N, O, P, Q, and R.  While containing fewer numbered paragraphs of document requests than their 2015 predecessors, these subpoenas seek similarly broad categories of information.  For example, the subpoenas to DHS and CBP demand "[a]ll Documents, whether classified or not, concerning the security of ports in the Dominican Republic" and "[a]ll Documents, whether classified or not, concerning corruption within the government of the Dominican Republic."  Exs. M and O.  The HHS and CMS subpoenas seek "[a]ll Documents concerning HHS or CMS policies or reimbursements for multi-dosing all medicines used to treat eye conditions other than Lucentis" and "[a]ll Documents concerning HHS or CMS policies or reimbursements for multi-dosing all medicines used to treat conditions other than eye conditions." Exs. N and Q.

The agencies responded promptly.  On July 7, 2017, DOS wrote a letter to defense counsel objecting to the new subpoena, outlining the history of its unanswered letters regarding the first

subpoena, and explaining why the new request for documents was both moot (given what DOS had already produced) and unduly burdensome (given everything else the defendants wanted). Ex. S.  On July 19, 2017, HHS sent a letter to defense counsel, stressing that, two years ago, "HHS expressed its commitment to work with [defense counsel] to resolve the agency's concerns" but "heard nothing in reply," and reiterating its objections to the broad and burdensome nature of the subpoena.  Ex. T.  On July 26, 2017, DOC followed suit, noting that compliance with the subpoena "would consume hundreds of [its employees'] working hours."  Ex. U.  On August 3, 2017, DHS responded, noting that "the short period of time provided to DHS and CBP to respond to the subpoenas . . . enhances the undue burden imposed by the request and would have an adverse impact on DHS's, CBP's, and their employees' ability to perform their respective missions and duties."  Ex. V.  Jury selection starts in two weeks, and the defendants have not responded to any of these letters, nor made any other attempt to resolve the agencies' concerns.

## II.     The Subpoenas Seek Material that is Irrelevant to the Trial.

Under Rule 17 of the Federal Rules of Criminal Procedure, "[a] subpoena may order [a] witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1).  Courts have made clear, however, that Rule 17(c) was not intended to be a "broad discovery device," and only materials that are admissible as evidence are subject to subpoena under the rule. *United States v. Cuthbertson*, 630 F.2d 139, 144, 146 (3d Cir. 1980) (*Cuthbertson I*) (citing *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)).

As an initial matter, the Court should quash the subpoenas because they seek documents that would be irrelevant and inadmissible at trial.  The allegations in this case concern things of value that defendant Menendez received from defendant Melgen, in exchange for defendant Menendez's official action.  The defendants have not requested any specific documents that would

4

be relevant to those allegations. In fact, the breadth and lack of specificity of the defendants' requests demonstrate the irrelevance of the documents they seek. Notably, the defendants have not identified specific documents or information of which they had personal knowledge at the time defendant Menendez engaged in advocacy on defendant Melgen's behalf. Their inability to do so demonstrates that any documents they would receive in response to these broadly-worded subpoenas could not have had any impact on their state of mind at the time they committed the crimes alleged in the indictment. Accordingly, these documents cannot constitute evidence of their intent and thus have no possible relevance to this case.

Instead, these subpoenas are nothing more than an impermissible probe designed to uncover documents that could provide a *post hoc* rationale for defendant Menendez's official action on defendant Melgen's behalf, but were unknown to defendant Menendez at the time he took that action. If the documents are not now in defendant Menendez's possession, then they could not in any way be relevant to this case because they could have no impact on his intent regarding actions he took years earlier. In other words, defendant Menendez should not have to rely on internal documents from a federal agency in order to contrive a defense for his intent regarding actions he took years before he discovered the existence of any such internal documents. *See, e.g.*, Ex. O (seeking unidentified documents from DHS because they would demonstrate "an ongoing policy debate within the executive and legislative branches" that would justify an official action taken by defendant Menendez). These subpoenas therefore fail "[t]he test for enforcement [of a Rule 17 subpoena][—]whether the subpoena constitutes a good faith effort to obtain *identified* evidence rather than a general 'fishing expedition' that attempts to use the rule as a discovery device." *Cuthbertson I*, 630 F.2d at 144 (citing *Bowman*, 341 U.S. at 220-21)) (emphasis added); *see also United States v. Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981) (*Cuthbertson II*) ("[O]nly

5

materials that are 'admissible as evidence' are subject to subpoena under [Rule 17(c)]."); *Cuthbertson I*, 630 F.2d at 145-46 (quashing a subpoena that sought prior statements of non-witnesses based on the "general assertion that this material might contain exculpatory information," and finding the defendant's request "was based solely on the mere hope that some exculpatory material might turn up"); *United States v. Maloney*, 37 F.R.D. 441, 446 (W.D. Pa. 1965) (quashing a subpoena duces tecum as "oppressive and unreasonable," in part, because the defendant did not show the material was "evidentiary and relevant" and because the subpoena was not "reasonable and specific").

Moreover, this general information would be inadmissible at trial. Whether defendant Menendez *should* have taken those actions, regardless of the bribes he received, is irrelevant to the defendants' guilt; the merits of those actions have no bearing on whether the things of value were given or received, in part, in exchange for those official actions. *See, e.g.*, *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 378 (1991) ("A mayor is guilty of accepting a bribe even if he would and should have taken, in the public interest, the same action for which the bribe was paid. That is frequently the defense asserted to a criminal bribery charge—and though it is never valid in law, it is often plausible in fact.") (internal punctuation and citations omitted); *United States v. Jannotti*, 673 F. 2d 578, 601 (3d Cir. 1982) ("[I]t is neither material nor a defense to bribery that 'had there been no bribe, the (public official) might, on the available data, lawfully and properly have made the very recommendation that (the briber) wanted him to make.'") (quoting *United States v. Labovitz,* 251 F.2d 393, 394 (3d Cir. 1958)); *United States v. Orenuga*, 430 F.3d 1158, 1165 (D.C. Cir. 2005) ("[I]t is not a defense to the crime of bribery that had there been no bribe, the public official might have lawfully and properly performed the same act.").

Because the subpoenas fail to identify specific, or even existing, admissible documents and information, they should be quashed. *United States v. Onyenso*, No. 12-602, 2013 WL 5322651, at *2 (D.N.J. Sept. 20, 2013); *see also United States v. Eisenhart*, 43 F. App'x 500, 505 (3d Cir. 2002) (holding a defendant was not denied due process where the trial court quashed his subpoena for documents to use at sentencing after finding the defendant had not established a reason to believe the subpoena targeted relevant evidence); *United States v. Gatto*, 746 F. Supp. 423, 479 (D.N.J. 1990), *rev'd on other grounds*, 924 F.2d 491 (3d Cir. 1991) (refusing to allow the defendants to send subpoenas to third parties without first presenting to the court the "specific information sought and the parties they wish to subpoena with contention why the materials are relevant," and noting that the government will have an opportunity to object to the subpoena "based on . . . oppressiveness").

### III. The Subpoenas Should be Quashed as Overly Broad and Unduly Burdensome.

The defendants waited until the eve of trial to demand broad swaths of irrelevant documents from large federal agencies. Moreover, the defendants ignored the agencies' 2015 written objections to the original subpoenas for nearly two years—a period during which the defendants could have narrowed their requests and negotiated a reasonable production protocol. The defendants' unjustified delay compounds the prejudice and unduly burdensome nature caused by the subpoenas' improper breadth in scope.

A Rule 17 subpoena may be quashed "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2). Even where the documents sought are relevant and admissible, the court may still quash the subpoena where it finds any evidentiary purpose is outweighed by the burden on the producing entity. *See United States v. Hardy*, 224 F.3d 752, 756 (8th Cir. 2000) ("[A] district court may, in its discretion, determine whether 'the burden of producing subpoenaed

7

records greatly outweighs any relevance they may have to the case.'") (citing *United States v. Roach*, 164 F.3d 403, 412 (8th Cir. 1998)); *United States v. Kubini*, No. 12-602, 2013 WL 5963392, at *3 (W.D. Pa. Nov. 7, 2013) (suggesting that even had the defendant submitted a sufficient request, the entity receiving the subpoena could demonstrate undue hardship in complying and have the subpoena quashed). Here, the subpoenas' lack of specificity makes them overly burdensome to the agencies, and any evidentiary value these materials may have is outweighed by the burden placed on the agencies to comply in the few short weeks before trial begins.

The language of the subpoenas best demonstrates how difficult, if not impossible, compliance would be. For example, two of the 2015 subpoenas demand—from *the entire United States Department of Homeland Security, including Customs and Border Protection*—"[a]ll documents concerning the trafficking of illegal drugs/narcotics through ports in the Dominican Republic to the United States" and "[a]ll documents concerning the trafficking of illegal drugs/narcotics into the ports of south Florida." Exs. E and F. The 2017 subpoenas to DHS and CBP contain similarly broad language, seeking "[a]ll Documents, whether classified or not, concerning the trafficking of illegal drugs/narcotics through ports in the Dominican Republic to the United States." Exs. M and O. DHS, a federal agency with more than 240,000 employees and offices spread across the country and globe, cannot possibly be expected to search for and identify such a broad category of documents, particularly since such documents are irrelevant and inadmissible. *See* Department of Homeland Security, *About DHS*, *available at* https://www.dhs.gov/about-dhs, last visited July 16, 2017.

The same issues exist for the 2017 HHS and CMS subpoenas. Those subpoenas contain only two paragraphs requesting documents, but those paragraphs are breathtakingly overbroad,

8

demanding "[a]ll Documents concerning HHS or CMS policies or reimbursements for multi-dosing all medicines used to treat eye conditions other than Lucentis" and "[a]ll Documents concerning HHS or CMS policies or reimbursements for multi-dosing all medicines used to treat conditions other than eye conditions." Exs. N and Q. CMS processes millions of claims from providers a year; even producing all documents relating to reimbursements for a single medicine would be unduly burdensome. These subpoenas, which require production of all documents relating to reimbursements for *all* multi-dosing medicines, would result in the costly and time-consuming collection of thousands upon thousands of wholly irrelevant documents. Moreover, as noted above, if defendant Menendez is unaware of the existence of specific responsive documents falling under these categories, then any such responsive documents could not have affected his intent years earlier when he took the action alleged in the indictment. In fact, the broad scope of the subpoenas is a concession that the defendants know of no specific documents that could have had a bearing on their criminal intent—all the more reason not to burden agencies with the resource expenditure necessary to respond.

The subpoenas are not requests for specified, relevant documents; they are dilatory, unduly burdensome demands for potentially many thousands of irrelevant documents. Compliance with their terms would tax federal agencies beyond what is reasonable.

**IV.    Conclusion**

The defendants' subpoenas are so broad that compliance with their terms would be impossible. And their lack of specificity demonstrates that they are merely improper fishing expeditions that would squander federal agency resources in search of inadmissible documents. The defendants' 2015 and 2017 subpoenas to DHS, CBP, HHS, CMS, DOS, DOC, and the CIA should be quashed.

ANNALOU TIROL
ACTING CHIEF
PUBLIC INTEGRITY SECTION

By: *s/ Monique Abrishami*
Monique Abrishami
Trial Attorney
Peter Koski
Deputy Chief
J.P. Cooney
Deputy Chief
Amanda Vaughn
Trial Attorney
Public Integrity Section
1400 New York Ave. NW
Washington, D.C. 20005
Telephone: (202) 514-1412
Facsimile: (202) 514-3003

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

Dated: August 7, 2017                    *s/ Monique Abrishami*
                                          Monique Abrishami
                                          Trial Attorney
                                          Public Integrity Section
                                          Criminal Division
                                          U.S. Department of Justice