**FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ROBERT MENENDEZ and<br>SALOMON MELGEN,<br><br>Defendants. | **OPINION**<br>Cr. No. 15-155 |

**Walls, Senior District Judge**

Defendant Robert Menendez moves to alter the trial schedule to permit him to participate in "critical" votes before the United States Senate. Decided without oral argument, the Court denies the motion.

**PROCEDURAL AND FACTUAL BACKGROUND**

The factual background of this case has been discussed at length in the Court's opinion denying Defendant Menendez's motions to dismiss under the Speech or Debate Clause, and need not be repeated here. ECF No. 117. The relevant procedural background is:

The Government brought an indictment against Defendants Senator Menendez and Dr. Salomon Melgen on April 1, 2015. They were indicted for Bribery, Honest Services Fraud, Conspiracy to Commit Bribery and Honest Services Wire Fraud, and violations of the Travel Act. ECF No. 1. Menendez was additionally charged with making false statements in his annual financial disclosures. *Id.*

**FOR PUBLICATION**

After a series of motions to dismiss and corresponding appeals, the Defendants were arraigned under a Superseding Indictment on August 22, 2017. At the arraignment, Defendant Menendez requested an adjournment until October to accommodate his congressional duties. ECF No. 202 at 12. The Court denied this request. *Id.* Defendant Menendez then requested that trial be adjourned on certain days on which the Senate would be voting on "important matters." *Id.* This was denied. *Id.* at 15.

Defendant Menendez also requested instead of adjournment that the jury be instructed not to draw a negative inference from his absence on such days, requesting an instruction to "explain to the jury [Menendez's] absence on a particular day." *Id.* at 14. The Court denied this request. *Id.* at 17.

The Court has granted Defendant Menendez's request that trial be on Monday through Thursday from 9:30 am to 2:30 pm, which would allow him to partake in business in Washington. *Id.* at 20–21. Trial is scheduled to begin on September 6, 2017. It is expected to last six to eight weeks, with sessions Monday through Thursday, 9:30 am to 2:30 pm.

Defendant Menendez has filed this motion to alter the trial schedule. Menendez argues that he is "situated differently from most other defendants" because of his position as a member of Congress. ECF No. 199 at 5. He argues that altering the trial schedule is necessary because the current schedule requires him to choose between exercising his constitutional right to be present at trial, and his duties under the Constitution to represent the people of New Jersey. *Id.* at 6–7. Menendez further argues that the Court should give deference to his schedule under the separation-of-powers doctrine. *Id.* at 8–9. He proposes that he inform the Court of days on which "critical issue[s]" will be debated and voted so that trial could be adjourned for those days. *Id.* at 10. Defendant Menendez indicates that these "critical issue[s]" include votes on raising the

**FOR PUBLICATION**

federal borrowing limit, the National Flood Insurance Program, the tax code, and health insurance. *Id.* at 3.

The Government says that Menendez should not be given special treatment because of his official position. ECF No. 200 at 3–4. The Government argues that the Constitution does not afford a Senator the right to dictate the schedule of his criminal trial. *Id.* at 3.

## DISCUSSION

Every person, regardless of birth, status, or position, is equal before the law. *See Butz v. Economou*, 438 U.S. 478, 505 (1978) ("Our system of jurisprudence rests on the assumption that all individuals, whatever their position in government, are subject to federal law[.]"); *United States v. Lee*, 106 U.S. 196, 220 (1882) ("All the officers of the government, from the highest to the lowest, are creatures of the law and are bound to obey it."). And no person is more equal than his or her fellows. These are foundational precepts of American jurisprudence, criminal and civil. They serve to guide this Court's discretion when reviewing this motion.

It is true that members of Congress are, in some circumstances, granted individual privileges as a function of their station in government. These privileges are found in Article I of the Constitution, which grants members of Congress immunity for "any Speech or Debate in either House," and from "Arrest during their Attendance at a Session of their respective houses." U.S. Const. art. I. § 6, cl. 1. The Speech or Debate Clause and the Arrest Clause are recognized as "two distinct privileges" immunizing members of Congress from (1) liability for legislative acts, and (2) civil arrest. *Gravel v. United States*, 408 U.S. 606, 614–15 (1972).

But the Supreme Court has repeatedly refused to extend special treatment to members of Congress beyond these express privileges. In *Davis v. Passerman*, 442 U.S. 228, 246 (1979), the

3

**FOR PUBLICATION**

Court acknowledged that "special concerns" arise when a Congressman is sued for official actions, but held that any privileges in that regard "are coextensive with the protections afforded by the Speech or Debate Clause." The Court held that outside these privileges, "we apply the principle that 'legislators ought . . . generally to be bound by [the law] as are ordinary persons.'" *Id.* (quoting *Gravel*, 408 U.S. at 615); *see also Doe v. McMillian*, 412 U.S. 306, 324 (1973) (finding that because the immunity afforded the Public Printer would be the same as that afforded a legislative aid, "[t]he scope of inquiry becomes equivalent to the inquiry in the context of the Speech or Debate Clause").

### A. There is No Clash of Constitutional Values

Defendant Menendez first urges the Court to exercise its discretion to avoid forcing him to choose between being present at his trial and participating in Senate votes.

It is true that all defendants have a right to be present at their own trial. *See United States v. Gagnon*, 470 U.S. 522, 526 (1985). This right is established by the Confrontation Clause of the Sixth Amendment, as well as the Due Process Clause of the Fifth Amendment, *United States v. Toliver*, 330 F.3d 607, 611 (3d Cir. 2003), and is codified in the Federal Rules of Criminal Procedure. *See* Fed. R. Crim. P. 43(a) (providing that defendant may be present at "initial appearance, the initial arraignment, and the plea; . . . every trial stage[;] . . . [and] sentencing"). But presence at trial is not mandatory, and a defendant may voluntarily waive this right. *See* Fed. R. Crim. P. 43(c)(1); *Thomas v. Carroll*, 581 F.3d 118, 124 (3d Cir. 2009) ("A criminal defendant may waive these rights if such a waiver is knowingly and voluntarily made.").

The Government does not contest Defendant Menendez's right to be present at his trial, and Menendez does not claim that the Court is prohibiting him from attending. Rather, he argues that holding trial during Senate votes "risks involuntarily denying" him of these rights. ECF No.

4

199 at 6. In doing so, the Senator emphasizes his "constitutional duty" to vote in the Senate, and stresses that the current trial schedule creates conflict with "important constitutional values." *Id.* at 7.

There is no conflict because the Senator does not have a "constitutional duty," as he claims, to be in Washington on any day. The Constitution explicitly contemplates the absence of some members, and authorizes other members to compel attendance. U.S. Const. art. I. § 5, cl. 1. ("[A] majority of each [House] shall constitute a Quorum to do Business; but a smaller Number may adjourn from day to day, and may be authorized to compel the Attendance of absent members."). Rule VI of the Standing Rules of the Senate provides that senators may compel the attendance of an absent senator when necessary to establish a quorum. *See* Standing Rules of the Senate, S. Doc. No. 113-18, 4 (2013). Unless a senator's presence is so compelled, any "duty" is political, not constitutional.

It follows then that this motion does not concern a conflict of constitutional values, but the normal operation of criminal laws. The Senator is neither being forced to withhold his vote from the Senate, nor being forced to waive his right to be present at his trial. Senator Menendez may absent himself if he so chooses. Realistically, during any absences, his lawyers will be present at trial to maintain his interests.

This application of criminal law is bolstered by the text and structure of the Constitution. If the Framers had intended to grant members of Congress the right to postpone a criminal trial during the pendency of high-profile votes, they could have done so explicitly. *See Clinton v. Jones*, 520 U.S. 681, 706 (1997) ("Indeed, if the Framers of the Constitution had thought it necessary to protect the President from the burdens of private litigation, we think it far more likely that they would have adopted a categorical rule than a rule that required the President to

5

litigate the question[.]"). The Framers limited the privilege of members of Congress to civil arrest; prosecution for alleged crimes has long been outside that exception both in British common law and American decisions. *See Williamson v. United States*, 207 U.S. 425, 436–46 (1908) (rejecting Representative's argument that criminal arrest would deprive him of the constitutional right to attend sessions of Congress, with a historical discussion thereof).

Because the clash in constitutional values is illusory, this Court will adhere to the principle that "all individuals, whatever their position in government, are subject to federal law[.]" *Butz*, 438 U.S. at 506; *see Gravel*, 408 U.S. at 615 ("[I]mplicit in the narrow scope of the privilege of freedom from arrest is, as Jefferson noted, the judgment that legislators ought not to stand above the law they create[.]"). Menendez is entitled to no more and no less deference than any other defendant. If the motion had been made by a defendant orthopedic surgeon who asked the Court to recess to accommodate her operating room schedule, it would be denied. So too would the motion be denied if made by a construction worker who sought trial schedule adjustment so that he could go to work on a building project. And if a college professor sought recess of the trial to meet his lecture appointments, his motion would likewise be denied.

### B. The Current Schedule Does Not Give Rise to Separation-of-Powers Concerns

Defendant Menendez next argues that the Court should adjourn trial because of the separation-of-powers doctrine. He asserts that failure to modify the schedule amounts to impermissible judicial oversight of his legislative duties. ECF No. 199 at 8–9. He claims that the current schedule frustrates the purposes of the Arrest Clause by threatening to "distort[ ] legislative outcomes." *Id.* at 8.

Separation-of-powers concerns are primarily aimed at preventing aggrandizement by one branch encroaching into the sphere of authority of another. *See Mistretta v. United States*, 488

**FOR PUBLICATION**

U.S. 361, 382 (1989) ("It is this concern of encroachment and aggrandizement that has animated our separation-of-powers jurisprudence[.]"); *Buckley v. Valeo*, 424 U.S. 1, 122 (1976) (superseded by statute on other grounds as recognized in *McConnell v. Fed. Election Comm.*, 540 U.S. 93 (2003)) ("The Framers regarded the checks and balances that they had built into the tripartite Federal Government as a self-executing safeguard against the encroachment or aggrandizement of one branch at the expense of the other."). Separation-of-powers concerns primarily arise when one branch seeks to improperly usurp power from another branch. *See, e.g., Free Enter. Fund v. PCAOB*, 561 U.S. 477, 496–97 (2010) (finding Congress' imposition of dual-layer for-cause protection for executive employees impermissible); *I.N.S. v. Chadha*, 462 U.S. 919, 958–59 (1983) (finding Congressional veto violates separation-of-powers principles).

To prevent impermissible encroachment by coequal branches, government officials are shielded from some forms of judicial process by the Speech or Debate Clause, the Arrest Clause, and the doctrine of official immunity. *See Gravel*, 408 U.S. at 618 (noting that the purpose of the Speech or Debate Clause is "freeing the legislator from executive and judicial oversight").

However, the protection the Senator now seeks exceeds the scope of any privilege. As said, the Supreme Court has not extended special treatment to members of Congress beyond those expressly enumerated privileges. *Davis* 442 U.S. at 246 (quoting *Gravel*, 408 U.S. at 615) (finding that if the conduct was not shielded by the express constitutional privileges, "we apply the principle that 'legislators ought . . . generally to be bound by [the law] as ordinary persons'").

None of the authority relied upon by Menendez persuades the Court that it is necessary to create a new category of protection. Because criminal prosecution for nonlegislative conduct is clearly outside the scope of the constitutional privileges, *see Gravel*, 408 U.S. at 614, 625, the Senator's argument that the purpose of the Arrest Clause is frustrated is unconvincing. *See*

*Williamson*, 207 U.S. at 445–46. The Supreme Court has emphasized that the separation-of-powers doctrine does not blindly prohibit all interaction between branches. *Clinton*, 520 U.S. at 702 ("[P]etitioner errs by presuming that interactions between the Judicial Branch and the Executive, even quite burdensome interactions, necessarily rise to the level of constitutionally forbidden impairment[.]").

To the extent that separation-of-powers principles are properly considered outside the context of the expressly enumerated constitutional privileges, they weigh against granting the Defendant's request. Here, the structural interest in the separation-of-powers concerns is not significant. The Senator is one of a multi-member institution. *See Clinton*, 520 U.S. at 713 (Breyer, J., concurring) ("For present purposes, this constitutional structure means that the President is not like Congress, for Congress can function as if it were whole, even when up to half its members are absent."). And at this stage, the inability to participate in any particular vote is entirely speculative.

On the other hand, the interests in denying the request are telling. The Court determined the trial schedule after consultation with counsel. In doing so, the Court recognized its primary responsibility to set a reasonably definite structure for the practical, just progress of a lengthy trial. To do so, the Court sought to minimize disruption to the lay jurors and their lifestyles during an extended period of jury service. A jury has been selected, and any delay would unnecessarily and unpredictably extend their service in a case already delayed for over two years. The Court also gave consideration to the advent of various religious holidays, the obligations of the parties as well as the other, non-related matters before the Court. In doing so, the Court has already modified the trial schedule to end at 2:30 pm, at the request of counsel for this Defendant.

8

**FOR PUBLICATION**

Furthermore, the Defendant's proposal risks the very intrusion into the legislative process that it purportedly seeks to avoid. Defendant Menendez proposes that he submit requests to adjourn on days on which "critical issue[s] . . . will be debated and voted." ECF No. 199 at 10. The Government has repeatedly opposed Menendez's requests for a modified trial schedule, *see* ECF No. 200; ECF NO. 202 at 13, and would likely oppose similar requests in the future. This Defendant's requests will necessarily thrust the Court into the legislative realm, forcing it to make explicitly political determinations. The Court is not the proper forum to decide which vote constitutes a "critical issue," ECF No. 199 at 10, or is of "major national or international importance," *id.* at 4, or whether the Senator's absence would be "determinative," *id.* at 3.

Judicial determinations regarding the import and outcome of legislative discourse pose a greater threat to the separation of powers than a straightforward trial schedule. Asking this Court to make such determinations intrudes the Court into the legislative process.

None of the cases relied upon by the Senator requires the Court to hold otherwise. Defendant Menendez is not the first sitting member of Congress to stand trial for alleged crimes. With that in mind, the Court asked his counsel who raised this request orally in court on August 22, to furnish the Court with case precedent. They have not—there is none. Until now, no court has been required to decide the obvious.

*Clinton v. Jones*, 520 U.S. 681 (1997) and *Cheney v. United States District Court for the District of Columbia*, 542 U.S. 367 (2004) both involve high-ranking members of the executive (the president and vice president respectively) in the context of civil suits. Neither case is applicable to a criminal proceeding against a member of Congress. The Supreme Court has long recognized the "unique position in the constitutional scheme that this office [of the President]

9

occupies." *Clinton*, 520 US at 698–99 (quotation marks omitted) (quoting *Nixon v. Fitzgerald*, 457 U.S. 731, 749 (1982)).

In *Clinton*—where the Chief Executive himself was required to answer to civil charges—the Court found that being forced to answer a civil claim would *not* unduly interfere with the office of the presidency. *Id.* at 705–06. Here, the Senator is one member of a diffuse body; the interference is with a member of Congress, not the body itself.

*Cheney*, at most, holds that the Court should consider the separation-of-powers doctrine, as the district court there had failed to do. 542 U.S. at 390–91. This Court is not refusing to consider such arguments; it merely finds them unconvincing.

To repeat, both cases involved civil, not criminal actions. Criminal trials are at the core of the judicial function. *Id.* at 384 ("A primary constitutional duty of the Judicial Branch [is] to do justice in criminal prosecutions.").

Defendant Menendez also relies on dicta from *United States v. Myers*, 635 F.2d 932 (2d Cir. 1980), suggesting that courts be mindful in criminal cases of interfering with congresspersons' official duties. But that case held only that a member of Congress was entitled to pretrial appellate review of an order denying his motion to dismiss his indictment. *Id.* at 936. The uncontroversial principle that government officials are entitled to pretrial review in some circumstances, *see Fitzgerald*, 457 U.S. at 743 (allowing appeal for absolute immunity); *Helstoski v. Meanor*, 442 U.S. 500, 507 (1979) (allowing appeal for Speech or Debate Clause), does not aid the Senator's argument.

The *Myers* facts weighed heavily in favor of granting appellate review. Denying review could have forced a member of Congress to endure a full trial that itself would have violated the separation-of-powers doctrine. *Id.* at 936. The only countervailing interest was judicial

efficiency. But as the court noted, most members of Congress in that situation would already be granted pretrial appellate review of their official immunity claims. *Id.* The impact on judicial economy would be negligible.

Here, there is no possibility that the Defendant will be subjected to a facially unconstitutional trial. He merely faces the reality, clearly contemplated by the Founders, that criminal prosecution may interrupt congressional duties. *See Williamson*, 207 U.S. at 445–46.

The Court suspects that the trial strategy behind this motion, if granted, would be to impress the jurors with the public importance of the defendant Senator and his duties. No other plausible reason comes to mind. Whether so or not is of no moment. Defendant Menendez, granted, as are all defendants, with the presumption of innocence, need not appear in court if he does not wish or wants to be absent. He may voluntarily absent himself. This is his prerogative. All defendants have that right. Such right is not new nor recent. Practically speaking, during any absence his lawyers will be present to maintain his interests. The motion—from a practical perspective—is nigh frivolous. Under the circumstances advanced by Defendant Menendez, the Court will not serve as a concierge to any party or lawyer. The motion is denied.

## CONCLUSION

The Court will not serve as concierge to any party or lawyer. Defendant Menendez claims that he is in a "unique situation" because his voting duties are "on a schedule not of his own making." ECF No. 199 at 2. But so are the duties of the radio repairman, the cab driver, and the businessman. Yet none would claim the right to dictate the schedule of their own criminal trial. Menendez is given the same choice as any other criminal defendant. In doing so, this Court is doing no more than applying the principle that "no man in this country is so high that he is

11

**FOR PUBLICATION**

above the law." *United States v. Lee*, 106 U.S. 196, 220 (1882). The Defendant's motion to alter the trial schedule is denied. An appropriate order follows.

DATE: 31 August 2017

William H. Walls
Senior United States District Court Judge