# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

               v.

ROBERT MENENDEZ

  and

SALOMON MELGEN,

                   Defendants.

Crim. No. 2:15-cr-00155
Hon. William H. Walls

# DEFENDANTS' RESPONSE TO THE GOVERNMENT'S TRIAL BRIEF

Abbe David Lowell
Jenny R. Kramer
Christopher D. Man
**NORTON ROSE FULBRIGHT US LLP**
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 974-5600

Raymond M. Brown
**GREENBAUM ROWE SMITH & DAVIS LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, NJ 07095
(732) 476-3280

*Counsel for Defendant
Senator Robert Menendez*

Kirk Ogrosky
Murad Hussain
**ARNOLD & PORTER KAYE SCHOLER LLP**
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 942-5330

Jonathan D. Cogan
Samuel A. Stern
**KOBRE & KIM LLP**
800 Third Avenue
New York, NY 10022
(212) 488-1200

*Counsel for Defendant
Dr. Salomon Melgen*

The prosecutors have chosen to file something called a "Trial Brief," not called for in the Court's Order for Discovery and Inspection, which appears to be a dry-run of their opening statement. Instead of addressing what might be helpful in a pre-trial setting for outstanding issues to be addressed, the prosecutors spend the first 14 pages of their filing restating the allegations in the indictment they wrote, in a narrative more appropriate for an opening statement. At the end of the filing, they finally state issues which may require the Court's attention, and it is to these that Defendants respond.

(1)     The Government Fails To Allege An Official Act

The government persists in arguing that Senator Menendez's official acts involved "advocacy" from his position in the Legislative Branch to officials in a completely separate branch of government, the Executive Branch (Dkt. 204 at 2), and that there was no specific official act that was agreed upon at the time of the exchange, but rather some sort of unspecified "stream of benefits" that could later be conferred if opportunities arose (*id.* at 5). Defendants already have demonstrated that both of those positions are categorically untenable under *McDonnell v. United States*, 136 S. Ct. 2355 (2016). (Dkt. 177-1.)

Even now, the government fails to specify exactly what official acts it believes that Senator Menendez ultimately took once the opportunity to do so allegedly arose. And in many counts, the government does not even deign to allege what *kind* of official action was supposedly given in exchange for the alleged things of value – whether "advocacy" or any other indication of what the alleged bribery produced. This failure to identify even the barest *genre* of corruptly secured official acts – rather than *overt* acts in the alleged conspiracy – reflects a fundamental deprivation of notice under the Due Process Clause.

(2)     Dr. Melgen's Florida Conviction Is Inadmissible

With respect to Dr. Melgen's Florida conviction, which is now on appeal, the prosecution appropriately stated that "the Government does not intend to admit the fact of the conviction itself," but adds the curious caveat "unless the defense opens the door – as it certainly could – or if one of the defendants takes the stand." (Dkt. 204 at 7 n.2.) Defendants have no intention of claiming that Dr. Melgen has not been convicted, so it is difficult to imagine how the Defendants could do anything to open that door.

Moreover, the conviction would not become admissible simply because "one of the defendants takes the stand." (*Id.*) The use of prior convictions is governed by Federal Rule of Evidence 609. It authorizes, under limited circumstances, attacking a witness's character for truthfulness with *that witness's* own conviction. *See generally* Fed. R. Evid. 609. If Senator Menendez takes the stand, the government surely would not suggest that he could be impeached through a co-defendant's prior conviction. Similarly, if Dr. Melgen does not take the stand, the government should not be allowed to introduce that conviction to impeach him either.

(3)     Defendants Object To The Government's Use Of Case Agent Testimony But Reserve Objections To Summary Exhibits

The government's proposed use of its case agents as witnesses, whom it may recall at various point in time, is potentially problematic. It is unclear what the government intends to have the case agents testify about, but Defendants would insist that any testimony given be admissible and based on first-hand knowledge. Additionally, if the government does intend to recall its case agents after they have testified, those agents should be sequestered throughout the trial. It would not be appropriate for those case agents, like any other witness, to observe the testimony of others and tailor their own testimony accordingly.

Defendants do not object to the use of summary charts as a general matter as long as they comply with the requirements of Federal Rule of Evidence 1006. But depending on the government's proffer at trial and the foundation laid by the summary witness, Defendants may object to the summaries if, for example, they impermissibly rely on irrelevant matter or inadmissible hearsay. *See, e.g.*, *United States v. Pelullo*, 964 F.2d 193, 204 (3d Cir. 1992) (reversing conviction due to improper admission of FBI agent's summaries of his analysis of financial transactions because they relied on inadmissible hearsay, and explaining that "summary evidence is admissible under Rule 1006 only if the underlying materials upon which the summary is based are admissible").

(4) Defendants Do Not Intend To Argue Selective Prosecution But Reserve The Right To Attack The Investigation's Flaws

The government's concern that Defendants intend to argue to the jury that they are the victims of selective prosecution is misplaced (Dkt. 204 at 17-19); that is not Defendants' intention. The fact remains, however, that this case was initiated based on allegations that were proven false, and there may be a need to address those facts by contextualizing certain pieces of evidence and questioning the credibility of certain witnesses.

It is also improper for the government to suggest that Defendants cannot attack "the legitimacy of the investigation," "how the investigation began[,] or whether the Government sufficiently investigated" the smear campaign against Defendants. (Dkt. 204 at 17,19.) It is entirely appropriate, if Defendants so choose, to attack the investigation that led to this prosecution. *Cf. Kyles v. Whitley*, 514 U.S. 419, 448-49 (1995) (noting that a *Brady* violation prejudiced defendant by depriving him of the ability to mount "an attack on the integrity of the investigation" that led to his prosecution). The soundness of the investigation and the motives of

its participants could inform the jury's evaluation of the prosecution's case theory and its witnesses' credibility or bias.

Moreover, bias need not be political or even conscious to infect an investigation. For example, "confirmation bias" involves "nonconscious information processing rather than deliberate case building," and consists of "unwittingly selecting and interpreting evidence to support a previously held belief," "while minimizing inconsistent evidence." Barbara O'Brien, *Prime Suspect: An Examination of Factors That Aggravate and Counteract Confirmation Bias in Criminal Investigations*, 15 Psychol. Pub. Pol'y & L. 315, 315-16 (2009) (citations omitted).[1]

The defense must be permitted to explore all forms of potential government witness bias, including confirmation bias, that may undercut the reliability or representativeness of the prosecution's evidence. If only for this reason, the motives and conduct of all participants in the government's investigation of Defendants are highly relevant if they take the stand. The government may not preemptively insulate its agents' credibility from attack.

(5)     Defendants Have Every Right To Argue Innocent Motives

By arguing that "credible evidence of another motive for [Defendants'] acts" would not be "a silver bullet to the charges against them" (Dkt. 207 at 21), the government obscures the fact that Defendants are entitled to refute the allegations by arguing that a gift was not a bribe but something given out of friendship, shared political values, or any other legitimate motive. *See,*

---

[1] *Accord* Richard A. Posner, *How Judges Think* 110-11 (2008) (describing confirmation bias as the "well-documented tendency once one has made up one's mind, to search harder for evidence that confirms rather than contradicts one's initial judgment"); Francis Bacon, *Advancement of Learning and Novum Organum* 320-21 (1620) (J.E. Creighton ed., Colonial Press 1900) ("The human understanding, when any proposition has been once laid down . . . forces everything else to add fresh support and confirmation; and although most cogent and abundant instances may exist to the contrary, yet either does not observe or despises them, or gets rid of and rejects them by some distinction, with violent and injurious prejudice, rather than sacrifice the authority of its first conclusion.").

*e.g.*, *United States v. Kemp*, 500 F.3d 257, 281 (3d Cir. 2007) ("[B]ribery may not be founded on a mere attempt to curry favor, . . . . there is a critical difference between bribery and generalized gifts provided in an attempt to build goodwill."). They are equally entitled to marshal evidence to argue that Senator Menendez did not need to be bribed to take an action that he and Dr. Melgen knew he would take anyway, whether on grounds of good policy, or a desire to remain consistent with past positions, or even simply friendship. *See United States v. Ciavarella*, 716 F.3d 705, 731-32 (3d Cir. 2013) ("For an honest services mail fraud conviction, in addition to the traditional mail fraud elements and that the scheme was conducted through the use of bribes or kickbacks, the Government must also prove: (1) that the payor provided a benefit to a public official intending that he will thereby take favorable official acts that he *would not otherwise take*; and (2) that the official accepted those benefits intending, in exchange for the benefits, to take official acts to benefit the payor." (emphasis added; quotation marks omitted)); *cf. United States v. Menendez*, 137 F. Supp. 3d 709, 724-45 (D.N.J. 2015) (Walls, J.) ("That Menendez intended to take acts *he would not otherwise have taken* is adequately charged . . . ." (emphasis added)).[2]

The jury is entrusted to decide whether the motive alleged by the government or the Defendants is the correct one, but for it to do its job fairly the Defendants must be allowed to mount a defense. "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476

---

[2] As a legal matter, even if Dr. Melgen had provided Senator Menendez a gift as a reward for some action he already took or intended to take, that would be a gratuity and not bribery (the crime charged here).

- 6 -

U.S. 683, 689-90 (1986)). "As a constitutional matter, a defendant's right to present a defense . . . . includes, at a minimum, . . . the right to put before a jury evidence that might influence the determination of guilt. [Courts have] identified violations of this right where, for example, a district court has declared a range of defense theories off-limits, without considering in detail the available evidence it was excluding, excluded key corroborative evidence for a central defense claim contesting the government's theory of prosecution, and excluded evidence refuting the government's theory of motive." *United States v. War Club*, 403 F. App'x 287, 289 (9th Cir. 2010) (quotation marks and citations omitted). Such an "[e]rror cannot be harmless where it prevents the defendant from providing an evidentiary basis for his defense." *Id.* at 290 (quotation marks omitted)); *see also United States v. Craig*, 1987 WL 20415, at *203 (N.D. Ill. Oct. 26, 1991) (Rovner, J (now Seventh Circuit judge)) (rejecting similar prosecution motion *in limine* to preclude arguing other motives than bribery).

(6) <u>The Merits Of Senator Menendez's Policy Positions Are Relevant</u>

As explained above, the Defendants agree that it is no defense to a bribery charge for a public official to say he was bribed to do a good thing. But it is absolutely a defense for the public official to argue *why* he took an official act, and that his motive was not corrupt but legitimate – *e.g.*, he believed it was an appropriate course of action. Similarly, the merits of the Senator's policy positions bear directly on Dr. Melgen's state of mind when allegedly seeking official acts, because the merits refute the government's inference that Dr. Melgen could only have been seeking action for corrupt purposes. It would violate the Defendants' fundamental constitutional rights to prevent them from making these arguments.

Where "wrongful intent is the essence of the crime," a defendant must be free to argue that his or her belief was an innocent one and is "entitled to the full benefit of this defense."

*Spurr v. United States*, 174 U.S. 728, 735 (1899). Even where the claimed innocent belief is objectively unreasonable, defendants are entitled to present evidence to the jury that they actually held that belief. *Cheek v. United States*, 498 U.S. 192, 203 (1991).

"Knowledge and belief are characteristically questions for the fact-finder, in this case the jury [and] forbidding the jury to consider evidence that might negate willfulness would raise a serious question under the Sixth Amendment's jury trial provision." *Id.* That is as true in the bribery context as any other. For example, in *United States v. Marlinga*, 457 F. Supp. 2d 769, 775-76 (E.D. Mich. 2006), the district court specifically rejected the government's attempt to preclude a public official charged with bribery from showing his innocent intent by introducing evidence that he took the same kinds of actions on other occasions.

Defendants cannot argue they have innocent intent if they cannot introduce evidence to support their claim. It is axiomatic that a person's explanation for taking certain actions is more credible if the explanation is reasonable. As the Eleventh Circuit explained:

> It would be difficult if not impossible for a defendant to introduce evidence specifically about his mental state. Consequently, he had to focus on providing circumstantial evidence concerning collateral matters, such as the reasonableness of his beliefs, from which the jury could infer what his mental state was. The more untenable his belief that he was acting legally, the less likely he actually held it.

*United States v. Hurn*, 368 F.3d 1359, 1365 (11th Cir. 2004); *see also United States v. Alzanki*, 54 F.3d 994, 1004-05 & n.10 (1st Cir. 1995) (acknowledging that a person's cultural background and experience was relevant evidence as to whether the person genuinely believed they were threatened); *United States v. Lankford*, 955 F.2d 1545, 1550-51 (11th Cir. 1992) ("It is . . . highly probative for the defense to show that the defendant's belief – whether or not mistaken – was reasonable; evidence of the belief's reasonableness tends to negate a finding of willfulness and to support a finding that the defendant's belief was held in good faith.").

Courts routinely upheld defendants' right to introduce evidence to prove the reasonableness of their innocent intent defense.[3] A jury that understands the merits of Senator Menendez's policy positions promoting port security and opposing the wastage of medicine will be more likely to believe that these innocent policy reasons are what motivated his actions, rather than bribery. Here, for example, the government goes out of its way to suggest that Senator Menendez's support of multi-dosing is bad policy, claiming it is dangerous and (yet again, erroneously claiming) that Dr. Melgen "billed Medicare for a full vial of each dose" even though he had not bought a new vial for each dose.[4] (Dkt. 204 at 7.) The government's implied suggestion is that Senator Menendez had no valid policy reason to support multi-dosing, such that it hopes to persuade the jury that his true motivation for supporting multi-dosing must have been bribery. Senator Menendez is entitled to prove the contrary, that he acted based on good

---

[3] *See, e.g.*, *United States v. Barile*, 286 F.3d 749, 761 (4th Cir. 2002) (reversing conviction where expert was not able to testify as to reasonableness of allegedly false submissions to a government agency); *Hurn*, 368 F.3d at 1365; *United States v. Diallo*, 40 F.3d 32, 34 (2d Cir. 1994) (reversing conviction for drug smuggling where defendant claimed to be smuggling gold dust and was prevented from introducing evidence that gold dust was commonly smuggled in such a manner to prove the reasonableness of that belief); *United States v. Sheffield*, 992 F.2d 1164, 1170 (11th Cir. 1993) (reversing conviction of Air Force employee accused of embezzling government property because he was denied the opportunity to prove it was customary to make personal gifts out of government property to be given as retirement gifts); *United States v. Onumonu*, 967 F.2d 782, 788 (2d Cir. 1992) (reversing conviction for drug smuggling where defendant claimed to be smuggling diamonds and was prevented from introducing evidence that diamonds was commonly smuggled in such a manner to prove the reasonableness of that belief); *Lankford*, 955 F.2d at 1550-51 (expert testimony as to whether gifts should be treated as non-taxable gifts or campaign contributions); *United States v. Garber*, 607 F.2d 92, 100 (5th Cir. 1979) (*en banc*) (tax expert on reasonableness of belief blood plasma sales are not income).

[4] Medicare Part B 's statutory payment framework instructs that physicians must be paid for each "dosage unit" of medicine they administer to beneficiaries. *See* 42 U.S.C. § 1395w-3a(b)(1), (b)(2)(B). Indeed, Box 24(g) of Medicare's standard CMS-1500 claim form specifically instructs physicians seeking payment for services and items to report the number of "days or units" provided. CMS-1500 Claim Form (version 08/05), *available at* https://www.cms.gov/Medicare/CMS-Forms/CMS-Forms/downloads/cms1500805.pdf.
Nowhere does the statute or claim form *ever* refer to billing or payment based on the number of "vials" purchased or administered.

policy reasons – the very policy reasons that he allegedly advocated to the Executive Branch: that it is important to avoid wasting perfectly good medicine and unjustly enriching drug companies.

### (7) The Government's Prior Good Acts Argument Is Flawed

The government contends, contrary to binding precedent, that Defendants cannot defend themselves against charges of corrupt motives "by offering evidence of official acts or gifts falling outside the scope of the charged scheme and occurring in situations distinct from those here – for example, by claiming that Menendez has a history of helping others with their visa applications or that Melgen has a history of allowing others to fly free-of-charge on his private jet." (Dkt. 204 at 23.) The government argues that such evidence would be "'prior good acts' evidence," and "nothing more than classic improper propensity evidence." (*Id.*)

The government's argument fails, because this supposed "prior good acts" evidence would be offered for a non-propensity purpose, that the Third Circuit *en banc* has previously endorsed as relevant in a public corruption case. Conspicuously, the government fails to cite a single Third Circuit case. (*See* Dkt. 207 at 23-24 (citing cases only from Fifth, Sixth, and Eleventh Circuits).)

Under Rule 404(b), Defendants may not use evidence of "prior good acts" – *i.e.*, specific acts of generosity by Dr. Melgen or actions by Senator Menendez for his friends and constituents and friends, without any expectation of *quid pro quo* – "to prove [their] character in order to show that on a particular occasion [they] acted in accordance with the character." Fed. R. Evid. 404(b)(1). But "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of

accident." *Id.* R. 404(b)(2). As explained below, this evidence is admissible to prove motive and intent, and is thus admissible for a non-propensity purpose under Rule 404(b).

*First*, the Third Circuit, sitting *en banc*, has specifically explained that the evidence that the government now seeks to exclude is indeed relevant to establish motive or intent. *See United States v. Standefer*, 610 F. 2d 1076 (3d Cir. 1979) (*en banc*). In *Standefer*, the defendant was charged with providing illegal gratuities to a federal official; similar to the bribery statute at issue here, that statute requires the government to establish a corrupt motive. *Compare, e.g.*, 18 U.S.C. § 201(b)(1)(a) (prohibiting giving with "intent to influence" an official act), *with id.* § 201(c) (prohibiting giving "for or because of" an official act). As part of his defense, the defendant "contended that the gifts were provided as a matter of friendship," rather than for corrupt motives.[5] *Id.* at 1080. The Third Circuit observed that the jury was entitled to reject the friendship defense, in part because "[no]thing in the record show[ed] that [the defendant] was as generous . . . in giving gifts to" people other than the defendant. *Id.*[6] In other words, the Third

---

[5] *Standefer* adopted an overly broad reading of "official act," which was subsequently rejected by the Supreme Court in *United States v. Sun-Diamond Growers of California*, 526 U.S. 398 (1999). That subsequent abrogation does not undercut the Third Circuit's analysis of the probative value of motive evidence.

[6] The Third Circuit also noted the general inadequacy of the friendship defense in that case:

> Although [the defendant] argued that the trips were given for reasons of friendship, there is no evidence that he ever provided trips for [the public official] prior to his becoming the IRS case manager for the [defendant's company's] account or that he has done so since [the official] left that position. . . . And it appears that [the defendant] had no social relationship with [the official], other than the contact he had with him in their various official capacities. Moreover, [the defendant's] immediate subordinate and own witness . . . testified that he did not believe [the defendant] and [the private citizen] to be "close personal friends," but that he considered them to be only "business friends."

*Standefer*, 610 F.2d at 1080 (footnotes omitted). The *Standefer* considerations are highly instructive for this case.

Circuit found that the jury was entitled to reject the friendship defense because there was no evidence of generous acts in other parts of the defendant's personal life. That analysis did not speak in terms of "prior good acts," but it confirms that the relevance and admissibility of evidence of a defendant's pattern of gift-giving to friends *other* than the allegedly corrupted public official.

Similarly, in *Marlinga*, a trial court in another circuit allowed a public official charged with bribery to introduce evidence that "it was [his] normal practice . . . to extend the same type of courtesies" to others "in cases he deemed worthy" as he extended to the alleged bribe-giver. *See* 457 F. Supp. at 775. Such evidence reflected the defendant's "innocent state of mind and lack of criminal intent" when undertaking similar actions for the alleged bribe-giver. *Id.*; *see also Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 525 (3d Cir. 2003) (applying reverse 404(b) doctrine to civil employment discrimination case, explaining that "[a] reasonable person could infer that [the supervisor's] hiring and treatment of [an employee similarly situated to the plaintiff] made it less likely that [the supervisor] acted with discriminatory intent when he terminated [the plaintiff]").

*Second*, although the government argues that "a defendant's intent under **distinct circumstances** on one day is not probative of his intent under different circumstances on another" (Dkt. 204 at 23 (emphasis added)), the circumstances surrounding the "prior good act" evidence being offered by the defendants are not "distinct" from the circumstances surrounding the charged conduct. For example, Senator Menendez is accused of receiving bribes from Dr. Melgen in exchange for assisting certain individuals with obtaining visas, and the government wants the jury to view those cases in isolation. But the evidence will show that Senator Menendez has taken similar steps to assist hundreds of visa applicants in similar circumstances

without receiving anything in return. No one would think he or she must bribe Senator Menendez for his help with visas, because he so regularly gives it anyway, and the fact that he does it so often is strong evidence that he did not need to be bribed to do it here.[7] The factual circumstances are identical – not distinct, as the government suggests. Thus, similar to *Marlinga*, the evidence of Senator Menendez's prior official acts "is indisputably probative of one of the primary issues here: why [he] handled [the alleged bribe-giver's issues] in the manner alleged." *See* 457 F. Supp. at 775.

Similarly, Dr. Melgen is accused of providing Senator Menendez with, among other things, flights on his plane, stays at his house, and political contributions, purportedly with a corrupt motive. But the Defendants intend to show the jury that Dr. Melgen routinely invited friends to fly on his plane and stay at his house, and that he and his wife routinely made significant political contributions to people unrelated to the Senator or New Jersey. Because Dr. Melgen freely and routinely gave those same things to others before, during, and after the alleged events, it is probative of his intent and motive – *i.e.*, whether corruption is a plausible motive for what he gave to Senator Menendez, and whether alternate, innocent motives are also available and plausible. Again, the circumstances are identical – not distinct. And *Standefer* – which remains binding precedent – makes clear that Dr. Melgen's routine hospitality to other friends and regular contributions to aligned political candidates is probative of his motives for giving similar things to Senator Menendez. *See* 610 F.2d at 1080.[8]

---

[7] The same is true of Senator Menendez's support for port security and avoiding wasteful health care practices. The jury should know that Senator Menendez did not reverse any position he once held on those issues once he received a gift from Dr. Melgen. Instead it should understand that Senator Menendez advocated the same kinds of policies both before and after he received anything from Dr. Melgen. That is powerful evidence that any gifts did not motivate his advocacy.

[8] The cases cited by the government on this point are all distinguishable because the circumstances surrounding the prior good acts in those cases were distinct from the circumstances surrounding the

This evidence is admissible to refute the government's aspersions about Defendants' innocent *motivations* under specific circumstances, and to educate the jury about the context for their actions in those circumstances, so that the jury will see how innocent motives indeed explain the alleged conduct. Such evidence "allows jurors to consider an alternate reason for Defendant[s'] actions in connection with" the allegedly corrupted official acts. *Marlinga*, 457 F. Supp. at 776.

*Finally*, where a defendant proffers reverse 404(b) evidence, "there is no possibility of prejudice to the defendant." *United States v. Stevens*, 935 F.2d 1380, 1384 (3d Cir. 1991) (reversing conviction for improper exclusion of reverse 404(b) evidence). Therefore, unlike when the government attempts to introduce evidence of prior bad acts under Rule 404(b), a defendant may introduce "reverse 404(b)" evidence for a non-propensity purpose so long as its probative value under Rule 401 is not substantially outweighed by [other] Rule 403 considerations," such as "undue waste of time and confusion of the issues." *Id.* at 1405. In other words, a defendant need only show "that the 'reverse 404(b)' evidence has a tendency to negate his guilt, and that it passes the Rule 403 balancing test." *Id.*; *see, e.g.*, *United States v. Hayes*, 219 F. App'x 114, 116-17 (3d Cir. 2007) (reversing conviction for conspiracy to falsify test results, because trial court improperly excluded exculpatory evidence "that tended to negate [the defendant's] involvement in any such conspiracy").

---

charged conduct. In other words, where the circumstances are too attenuated, the prior good acts are not probative of motive or intent, but rather are only probative of a general propensity to do good acts. For example, in *United States v. Dimora*, the Sixth Circuit held that it was not an abuse of discretion to exclude evidence that a defendant-politician helped constituents on a few other occasions without seeking bribes. 750 F.3d 619, 630 (6th Cir. 2014). The court explained that all that "[a]ll [that evidence] would have shown is that, ***in situations unrelated to the charges***, [the defendant] did favors for people who did not pay him bribes." *Id.* Here, on the other hand, the prior good acts evidence is identical to the charged conduct except for the only difference being the party who benefitted from them. In any event, *Standefer* confirms the relevance of such evidence, even if other circuits may disagree.

Here, as already noted, the proposed "reverse 404(b)" evidence is probative of innocent motive and intent, introduced to rebut allegations of corrupt motive and criminal intent. Further, Defendants' evidence poses no danger of jury confusion under Rule 403. As the *Marlinga* court explained, where (as here) the government itself "intends to introduce collateral evidence regarding" the circumstances of the official acts in question "to support its theory of the case," "[t]here is no apparent reason to expect that the jury will have any more difficulty navigating [the public official]'s evidence in support of his opposing theory than it will have in navigating the Government's evidence." 457 F. Supp. 2d a 776. Thus, "[t]he probative value of the evidence offered by Defendant to disprove an element of the bribery and wire fraud charges far outweighs potential jury confusion." *Id.*

(8)     Speech Or Debate Clause Evidence

Senator Menendez objects to the government introducing any evidence at trial that is protected by the Speech or Debate Clause. Senator Menendez does not intend to waive that privilege.

(9)     Senate Ethics Rules Are Relevant

The government continues to imagine that the Senate Ethics Rules are irrelevant to a prosecution for failure to make required disclosures under the Ethics in Government Act (EIGA) because it chooses to ignore the parts of EIGA that undercut its position. EIGA gives every covered government entity the authority to provide guidance about what must be disclosed, and to craft the form on which disclosures are made.

In lieu of the disclosures required by EIGA itself, EIGA provides that a Senator can make disclosures on forms provided by the Senate. 5 U.S.C. app. § 102(b)(2)(A). It also provides that the Senate Ethics Committee can "render advisory opinions interpreting this title within its

respective jurisdiction" and that "good faith" reliance upon such opinions is an absolute defense to "any penalty or sanction." 5 U.S.C. app. § 106(b)(7). The Senate Ethics Committee certainly believes – and communicates to all Senators, including Senator Menendez – that among its responsibilities is to "implement the Senate public financial disclosure requirements of the Ethics in Government Act." Select Committee on Ethics, U.S. Senate, *Senate Ethics Committee Manual* at 4 (2003 ed.). "The Committee develops forms and instructions for financial disclosure, gives advice regarding compliance and reviews the completed Reports of Members, officers, employees, candidates, and certain other legislative branch personnel for compliance with applicable laws and Senate Rules. The Secretary of the Senate is responsible for making the forms available for public inspection." *Senate Ethics Manual* at 125. Thus, the Senate' guidance concerning financial disclosures is authorized by EIGA itself and is legally binding and, even if that were not so as a legal matter, it certainly is relevant to Senator Menendez's good faith intent because the Senate Ethics Committee tells all Senators that is true. The government's effort to look only to what is on the form, and not the instructions and guidance that go along with the form, would deny the jury the ability to put Senator Menendez's answers in context and evaluate his claim to have acted in good faith.

Dated: September 6, 2017

                              Respectfully submitted,

| | |
|---|---|
| Abbe David Lowell | Kirk Ogrosky |
| Jenny R. Kramer | Murad Hussain |
| Christopher D. Man | **ARNOLD & PORTER KAYE** |
| **NORTON ROSE FULBRIGHT US LLP** | **SCHOLER LLP** |
| 1200 New Hampshire Avenue, N.W. | 601 Massachusetts Avenue, N.W. |
| Washington, D.C. 20036 | Washington, D.C. 20001 |
| (202) 974-5600 | (202) 942-5330 |

- 17 -

| | |
|---|---|
| Raymond M. Brown<br>**GREENBAUM ROWE SMITH & DAVIS LLP**<br>Metro Corporate Campus One<br>P.O. Box 5600<br>Woodbridge, NJ 07095<br>(732) 476-3280<br><br>*Counsel for Defendant*<br>*Senator Robert Menendez* | Jonathan D. Cogan<br>Samuel A. Stern<br>**KOBRE & KIM LLP**<br>800 Third Avenue<br>New York, NY 10022<br>(212) 488-1200<br><br>*Counsel for Defendant*<br>*Dr. Salomon Melgen* |

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2017, a true and correct copy of the foregoing reply brief was filed with the CM/ECF system for the United States District Court for the District of New Jersey, which will send electronic notification of the filing to all counsel of record.

        /s/  Abbe David Lowell