UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | No. 2:15-cr-155 |
| v. ) | Hon. William H. Walls |
| ) | |
| ROBERT MENENDEZ and ) | |
| SALOMON MELGEN, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## UNITED STATES' BRIEF IN SUPPORT OF POSITION THAT THE STREAM OF BENEFITS THEORY OF BRIBERY REMAINS CONTROLLING AUTHORITY IN THE THIRD CIRCUIT

The stream of benefits theory of bribery has long been recognized as a valid theory for prosecuting corruption. It captures the most egregious forms of bribery where, like here, corruption is so pervasive that it involves more than a single gift or an isolated official act, and often lasts for years. Specifically, it refers to a category of corruption where there are many gifts exchanged for many acts. The Supreme Court's decision in *McDonnell v. United States*, 136 S. Ct. 2355 (2016), did nothing to invalidate this theory as a basis for conviction. Indeed, since *McDonnell* was decided, the Third Circuit has reaffirmed the stream of benefits theory of bribery, as have several other courts. And in the dozens of corruption prosecutions carried out since *McDonnell*, not a single court has concluded that the decision invalidated the stream of benefits theory. The doctrine is so firmly rooted in our law that the Supreme Court would not act *sub silentio* to displace it. As the unanimous *McDonnell* Court insisted, "[a] more limited interpretation of the term 'official act' leaves ample room for prosecuting corruption." *McDonnell*, 136 S. Ct. at 2375. Eliminating the stream of benefits theory of bribery would contravene that guidance, jettison the vast majority of bribery prosecutions, and broadly legalize pay-to-play

politics. This Court should heed precedent and decline the defendants' invitation to upend a firmly established and vitally important body of law.

I. **THE THIRD CIRCUIT AND SEVERAL OTHER COURTS HAVE REAFFIRMED THE STREAM OF BENEFITS THEORY OF BRIBERY SINCE *MCDONNELL*.**

Since *McDonnell* was decided in 2016, the Third Circuit has explicitly reaffirmed the stream of benefits theory of bribery—recognizing that whether a paid-for act constitutes an "official act" under *McDonnell* is a separate question from whether a bribery scheme can occur where "these" are exchanged for "those," rather than "this for that." In *United States v. Repak*, 852 F.3d 230 (3d Cir. 2017), the Third Circuit affirmed a defendant public official's bribery conviction under *McDonnell*, while making clear that the Supreme Court's decision did nothing to undermine the viability of the stream of benefits theory of bribery. The defendant in *Repak*, the executive director of a local redevelopment authority, was convicted of bribery under the extortion and federal funds bribery statutes for accepting a new roof for his home and excavation services at his son's business in exchange for being influenced in the rewarding of contracts by the redevelopment authority. *Id.* at 237-38, 240. On appeal, Repak made two challenges to the sufficiency of the evidence supporting his extortion conviction: first, he claimed there was insufficient evidence that he agreed to be influenced—in other words, of his corrupt intent; second, he claimed that the awarding of contracts was not an "official act." *Id*. at 250.

In rejecting the defendant's claim that the government must prove an express agreement to be influenced, the Third Circuit emphasized that the government could properly prove intent by showing a public official was put on retainer, stating that "it is sufficient if the public official understands that he is expected, as a result of the payment, to exercise particular kinds of influence or to do certain things connected with his office *as specific opportunities arise*." *Id*. at 251 (quoting *United States v. Bradley*, 173 F.3d 225, 231 (3d Cir. 1999)) (emphasis added). The court further

noted that the district court had appropriately articulated this principle when it instructed the jury that "[t]he government is not required to prove an explicit promise to perform the official acts in return for the payment. Passive acceptance of a benefit by a public official is a sufficient basis for this type of extortion if the official knows that he is being offered payment in exchange for his ability to do official acts." *Id.* Importantly, in its discussion of the required showing of the defendant's intent, the court never once discussed or even referenced *McDonnell*. Instead, it primarily relied on a pre-*McDonnell* Third Circuit case, *United States v. Bradley*, which had affirmed a jury instruction on bribery that included the following language: "Moreover, the government does not have to prove that there was an express promise on the part of the public official to perform a particular act at the time of the payment." 173 F.3d at 231.

While reaffirming this retainer theory of bribery for proving a defendant's intent, the *Repak* court only invoked *McDonnell* in its consideration of Repak's second challenge to the sufficiency of the evidence: whether the object of his intent—that in which he intended to be influenced—was an "official act." *Id.* at 252-54. Although discussing at length *McDonnell*'s clarification of the meaning of "official act" under Section 201(a)(3), the court never applied *McDonnell* in its discussion of the link that must exist between the *quid* and the *quo* of a bribery exchange.

The Third Circuit's decision in *Repak* reflects the Circuit's post-*McDonnell* revisions to its model criminal jury instructions. After *McDonnell*, in October 2016, the Third Circuit's model criminal jury instructions for bribery and honest services fraud were modified to incorporate a new instruction on the definition of "official act." No modifications were made, however, to the instruction on the elements of Section 201. Moreover, the instructions for offenses under Sections 201 and 1346 retained lengthy discussions in the commentary on the validity of a conviction based on the receipt of a stream of benefits in exchange for official action, as opportunities arise.

Specifically, the model instructions retained the following paragraph in the comments to the 201 instruction:

> In addition, a conviction under this section may be based on a stream of benefits to the public official or to a third party whom the official favors, and the government does not need to establish that any specific benefit was given in exchange for a specific official act. Payments in violation of the statute may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf. *See* [*United States v.*] *Kemp*, 500 F.3d [257,] 282 [(3d Cir. 2007)].

And in the commentary to the Third Circuit's model instruction on Section 1346, a discussion of *McDonnell*'s effect on the meaning of "official act" was actually inserted just before the discussion of the validity of the stream of benefits theory of bribery:

> In *McDonnell v. United States*, 136 S.Ct. 2355 (2016), the honest services prosecution rested on allegations of bribery, and the parties agreed that bribery would be defined by reference to 18 U.S.C. § 201. Reversing the conviction, the Supreme Court clarified the meaning of "official act" and held that the trial court committed reversible error when it failed properly to instruct the jury on the meaning of the term, allowing the government to proceed with an overly broad definition. For further discussion, see Instruction 6.18.201B1-2 and comment.
>
> The improper benefit may consist of money, property, services, or any other act which advances the official's personal or business interests, including a loan. *See United States v. Kemp*, 500 F.3d 257, 285 (3d Cir. 2007). Moreover, a fraud under this section may be based on a stream of benefits to the public official or employee, and the government does not need to establish that any specific benefit was given in exchange for a specific official act. *See United States v. Ciavarella*, 716 F.3d 705, 729-30 (3d Cir. 2013) (judges' false financial disclosure filings supported conviction on honest services mail fraud carried out through scheme of bribery and kickbacks even though evidence did not establish specific bribe or kickback for the filing). Payments may be made with the intent to retain the official's services on an "as needed" basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf. *See Kemp*, 500 F.3d at 282.

The Third Circuit has thus given every indication that *McDonnell* had no effect on the continuing validity of the stream of benefits theory of bribery.

Like the Third Circuit, the Second Circuit has endorsed the stream of benefits theory of bribery post-*McDonnell*. In *United States v. Skelos*, the court found a *McDonnell* "official act"

4

instructional error while separately explaining that, in a corrupt agreement, "[a]cts constituting the agreement need not be agreed to in advance" and "[a] promise to perform such acts as the opportunities arise is sufficient." __ Fed. App'x __, 2017 WL 4250021 at *3 (2d Cir. Sept. 26, 2017) (quoting *United States v. Bruno*, 661 F.3d 733, 744 (2d Cir. 2011)).  The *Skelos* court then reiterated the proposition that "federal bribery and honest services fraud statutes 'criminalize scheme[s] involving payments at regular intervals in exchange for specific official[] acts as the opportunities to commit those acts arise, even if the opportunity to undertake the requested act has not arisen, and even if the payment is not exchanged for a particular act but given with the expectation that the official will exercise particular kinds of influence.'" *Id.* (quoting *United States v. Rosen*, 716 F.3d 691, 700 (2d Cir. 2013)).  Additionally, in *United States v. Silver*, 864 F.3d 102, 111 n.24 (2d Cir. 2017), the Second Circuit defined bribery's required *quid pro quo* with reference to two stream-of-benefits cases—*Bruno*, 661 F.3d at 743-44, and *United States v. Ganim*, 510 F.3d 134, 143 (2d Cir. 2007)).  The Second Circuit also explicitly endorsed the continued viability of stream of benefits bribery in its *Skelos* opinion.  *See Skelos*, 2017 WL 4250021 at *3 (citing *Bruno*, 661 F.3d at 744, for the proposition that a "promise to perform such acts as the opportunities arise is sufficient").

Likewise, the Seventh and Ninth Circuits have recognized that *McDonnell* was limited to defining the "official act" and did not otherwise change the required showing of the connection between things of value and official acts.  *See United States v. Blagojevich*, 854 F.3d 918, 921 (7th Cir. 2017) (rejecting the defendant's attempt to use *McDonnell* to challenge the sufficiency of the jury instruction on what the link must be between the *quid* and the *quo*, and explaining that the *McDonnell* Court only considered the definition of "official act"); *United States v. Malkus*, __ Fed.

5

App'x __, 2017 WL 3531422 at *1 (9th Cir. Aug. 17, 2017) ("*McDonnell* did not change the 'linkage' requirement of federal bribery statutes.").

District courts around the country, including others in the Third Circuit, have also recognized the continuing validity of the stream of benefits theory of bribery in the wake of *McDonnell*. *See United States v. Williams*, 2017 WL 2713404 at *2 (E.D. Pa. June 13, 2017) (describing the exchange of "a multitude of pecuniary benefits" for official acts alleged in the indictment and citing *Kemp* for the proposition that a *quid pro quo* can consist of a "stream of benefits"); *United States v. Fattah*, 223 F. Supp. 3d 336, 367 (E.D.P.A. 2016), *appeal pending*, No. 17-1346 (3d Cir.) (holding that an erroneous instruction on the meaning of "official act" under *McDonnell* did not influence the jury verdict because "[t]he Government without question established a *quid pro quo*, that is the stream of benefits provided by Vederman in exchange for the official acts"); *United States v. Suhl*, Crim. No. 15-CR-300-BRW (E.D. Ark. 2016) (instructing the jury that it could convict on a stream of benefits theory of bribery, Dkt. No. 123 at 18, over the defendant's objection that it would be "inconsistent with *McDonnell v. United States*, which emphasized the need for a specific and focused action that is pending or may be brought," Dkt. No. 115 at 17); *United States v. Lee*, 2016 WL 7336529, at *4 (N.D. Ohio 2016) (denying the defendant's motion to dismiss the indictment for failure to allege "official acts" under *McDonnell* and raising no concern as to the validity of the indictment under *McDonnell* where it charged an exchange of things of value for official acts "as future opportunities arose," Indictment, Crim. No. 15-CR-445-CAB, Dkt. No. 3).

Since *McDonnell*, courts have uniformly affirmed that the stream of benefits theory of bribery continues to thrive as a valid basis for criminal liability. No court has found that *McDonnell* invalidated or even weakened the theory.

## II.  THIS COURT IS PROCEDURALLY BARRED FROM INVALIDATING THE STREAM OF BENEFITS THEORY OF BRIBERY.

There is no dispute that the Third Circuit has adopted the stream of benefits theory of bribery. The *McDonnell* opinion could not have affected that theory, as it does not contain any reference to "stream of benefits" or "retainer" theory; instead, it was limited to the meaning of "official act," not the scope or definition of the required link between the *quid* and the *quo* of a corrupt exchange. Therefore, the stream of benefits theory of bribery is controlling authority on all subordinate courts in the Third Circuit. It is a well-established principle of our federal courts that even if the Supreme Court issues a decision that calls into question a decision of a circuit court, it is the prerogative of that circuit court alone, and not a district court, to overrule its decisions. Thus, even if the Third Circuit had not re-affirmed the theory post-*McDonnell*—as it has—it would still be applicable law in this case.

### A.  The *McDonnell* Court Did Not Address the Well-Established Stream of Benefits Bribery Theory, and It Does Not Issue its Rulings *Sub Silentio*.

As discussed at length in the Government's prior filings with this Court, the stream of benefits theory of bribery is well established in this and every other circuit to have considered the issue. *E.g.*, Dkt. No. 185 at 5-10. The Supreme Court has also endorsed the stream of benefits theory of bribery. In *Skilling v. United States*, 561 U.S. 358, 412–13 (2010), the Court pointed to just three cases as models from which to draw the contours of bribery under federal law, and all three were stream of benefits bribery cases: *Ganim*, 510 F.3d 134, *United States v. Whitfield*, 590 F.3d 325 (5th Cir. 2009), and *Kemp*, 500 F.3d 257. Notably, the Court pinpoint cited to the portions of those opinions that discussed the stream of benefits theory of bribery. *See Skilling*, 561 U.S. at 413. *Skilling* and those opinions are instructive.

In *Ganim*, the Second Circuit rejected the same narrow definition of bribery proposed by defendants Menendez and Melgen here. 510 F.3d at 145–47 ("[The defendant's] proposal—that a specific act be identified and directly linked to a benefit at the time the benefit is received—demands too much. . . . [S]o long as the jury finds that an official accepted gifts in exchange for a promise to perform official acts for the giver, it need not find that the specific act to be performed was identified at the time of the promise, nor need it link each specific benefit to a single official act."). The Second Circuit recognized the importance of the stream of benefits theory of bribery in capturing egregious and pervasive corruption schemes, like those engaged in by defendants Menendez and Melgen: "To require otherwise could subvert the ends of justice in cases—such as the one before us—involving ongoing schemes." *Id.* at 147.

In *Whitfield*, the Fifth Circuit observed that "rather than single, lump-sum bribes, this case involved two prolonged bribery schemes spanning nearly four years each." 590 F.3d at 352. The prolonged and implicit nature of those schemes did not exculpate the defendants under the federal bribery laws:

> Although the district court did not require the Government to prove that Minor and the judges had identified a particular case that would be influenced at the time that Minor guaranteed the loans, the overwhelming weight of authority from this court and our sister circuits supports the conclusion that the law does not require such a showing from the Government.

*Id.* at 353.

And in *Kemp*, the Third Circuit observed that "the *quid pro quo* requirement is satisfied so long as the evidence shows a course of conduct of favors and gifts flowing to a public official *in exchange* for a pattern of official actions favorable to the donor." 500 F.3d at 282 (internal quotation marks omitted). This "course of conduct" and "pattern" permit a jury to infer a bribe agreement. The Third Circuit concluded, therefore, that "payments may be made with the intent

8

to retain the official's services on an 'as needed' basis, so that whenever the opportunity presents itself the official will take specific action on the payor's behalf." *Id.* As noted above, the Third Circuit expressly relied on *Kemp* in revising its model jury instructions on bribery post-*McDonnell*.

Despite this controlling precedent, the defendants contend that the *McDonnell* opinion invalidated the stream of benefits theory of bribery. They advance this interpretation of *McDonnell* even though the opinion says nothing about it. Indeed, *McDonnell* does not contain any references to "stream of benefits"; it also does not contain any references to "retainer theory." Although *McDonnell* was a stream of benefits bribery case and the district court's instructions to the jury included an instruction on the stream of benefits theory of bribery just a few pages after its "official act" instruction, *see* 3:14-cr-0012-JRS, Dkt. No. 487 at 41:20-41:01, those instructions were not challenged and not part of the Supreme Court's consideration. In fact, the validity of the stream of benefits theory of bribery was not part of the petition for certiorari in *McDonnell*, *see* Petition for Writ of Certiorari, *McDonnell*, 136 S. Ct. 2355 (No. 15-474), nor was it part of the question presented for which the Court granted certiorari, *see McDonnell v. United States*, 136 S. Ct. 891 (2016). Consequently, the validity of the stream of benefits theory of bribery was not briefed by either party, nor was it discussed at oral argument. This absence of litigation or consideration over the stream of benefits theory of bribery forecloses any interpretation of *McDonnell* that would invalidate or weaken the long-held theory. *See, e.g.*, *Glover v. United States*, 531 U.S. 198, 205 (2001) ("In the ordinary course we do not decide questions neither raised nor resolved below."); *Yee v. Escondido*, 503 U.S. 519, 535 (1992) (pointing out that Supreme Court Rule 14.1(a) provides that only questions set forth in the petition, or fairly included therein, will be considered by the Court).

Moreover, in its opinion, the *McDonnell* Court made clear that "the issue in this case is the proper interpretation of the term 'official act'" under Section 201(a)(3). *Id*. at 2367; *see also id*. at 2375 (vacating the conviction "because the jury was not correctly instructed on the meaning of 'official act'"). And while the Court's holding was focused only on the definition of the term that constitutes the "*quo*" of a corrupt exchange, the Court said nothing of the scope of the "*pro*"—the intent—element defined by Sections 201(b)(1)(A) and (2)(A). Yet, it is only to the intent element that the stream of benefits theory applies.

In the absence of any discussion of "stream of benefits" or the required intent element of *quid pro quo* bribery, the defendants contend that the Supreme Court addressed the issue impliedly, by requiring that an official act be "specific and focused," and by reciting well-established law that an official act be part of the initial offer, solicitation, or agreement. Dkt. No. 177-1 at 2. But that has always been the case. Specifically, a bribe has always required an intent to exchange a thing of value (or things of value) for an official act (or official acts), and that is consistent with the stream of benefits theory of bribery. Further, in their analysis, the defendants seem to confuse a requirement that the official act be "specific and focused" with a requirement that the official act be "identified" at the time a thing of value is offered or solicited. *See* Dkt. No. 177-1 at 2. But no court has held that the nature of the official act must be identified at the time an agreement is made, and the defendants' interpretation contravenes *McDonnell*'s guidance that "the public official need not specify the means that he will use to perform his end of the bargain." *McDonnell*, 136 S. Ct. at 2371.

The defendants also argue that *McDonnell* foreclosed the stream of benefits theory of bribery because it applied the stricter nexus requirement of *Evans v. United States*, 504 U.S. 255 (1992), to all bribery cases. But their position can only be that the Supreme Court expanded *Evans*'

10

reach without actually saying so, because there is no support for the defendants' interpretation in the *McDonnell* opinion. Quite the opposite. In *Evans*, the Supreme Court ruled that where campaign contributions are used as the basis for a bribe, there must be an "explicit *quid pro quo*." 504 U.S. at 258. In their motion, the defendants note that *McDonnell* contains three citations to *Evans*. But the defendants exaggerate the significance of these citations. The Court merely cited *Evans* to reiterate principles of bribery law that have long been settled, not to create any new law. *See, e.g.*, *McDonnell*, 136 S. Ct. at 2370-71 (citing *Evans* for the proposition that "[u]nder this Court's precedents, a public official is not required to actually make a decision or take an action on a 'question, matter, cause, suit, proceeding or controversy'; it is enough that the official agree to do so"); *id.* at 2365 (citing *Evans* to establish that "Hobbs Act extortion [] include[s] taking a bribe" (internal quotation marks omitted)). Nowhere in the *McDonnell* opinion does the Court use *Evans* to impose new requirements on bribery prosecutions.

With the Supreme Court's silence on the stream of benefits theory of bribery in *McDonnell*, especially in the face of its express reliance in *Skilling* on three stream of benefits cases, the defendants must contend that the Supreme Court invalidated the well-established stream of benefits theory of bribery without actually saying so. That is not how the Supreme Court issues its rulings. *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("This Court does not normally overturn, or so dramatically limit, earlier authority *sub silentio*."). And courts are not permitted to conclude that the implications from a Supreme Court ruling have the same effect as a formal overruling. *Free Speech Coal., Inc. v. Attorney Gen. United States*, 825 F.3d 149, 174 (3d Cir. 2016) ("The Court has admonished that other courts cannot conclude that '[its] more recent cases have, by implication, overruled an earlier precedent.'" (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997))); *see also United States v. Mitchell*, 690 F.3d 137, 144 (3d

11

Cir. 2012) (observing that the Supreme Court would not abandon a well-established doctrine *sub silentio*).

The fact that *McDonnell*'s stream instructions were not challenged, not part of the question presented, and not addressed by the Supreme Court weigh heavily against construing the opinion to have invalidated the stream of benefits theory of bribery. *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents." (quoting *Webster v. Fall,* 266 U.S. 507, 511 (1925))). Indeed, in *McDonnell* the Supreme Court vacated the conviction and reversed for a potential retrial. The Court clearly contemplated the possibility that McDonnell would be retried, requiring the district court to instruct the jury again. But it was notably silent on the district court's stream of benefits instructions. Therefore, if McDonnell had been retried, the district court would have necessarily provided the same stream of benefits instruction given at the first trial, and provided only a more limited definition of official act. This Court should do nothing differently here.

    **B.    The Third Circuit's Endorsement of the Stream of Benefits Theory of Bribery is Still Controlling Authority for this Court.**

Given *McDonnell*'s silence on the stream of benefits theory of bribery, the Third Circuit's long-established adoption of the stream of benefits theory of bribery eliminates any doubt about its application to this case. *See United States v. Mitlo*, 714 F.2d 294, 298 (3d Cir. 1983) ("[A] decision by this court, not overruled by the Supreme Court[,] is a decision of the court of last resort of this federal judicial circuit and is therefore binding on all inferior courts and litigants in the Third Judicial Circuit." (internal citation and quotation marks omitted)); *In re Bayside Prison Litig.*, 190 F. Supp. 2d 755, 763 (D.N.J. 2002) ("District Courts are bound by *stare decisis* to apply

12

the last statement of their Court of Appeals on an issue until either that Court or the Supreme Court *addresses* the issue." (emphasis added)).

Further, when there is controlling circuit precedent, a district court is bound by it even in the face of a Supreme Court decision that, at most, impliedly overturns that circuit authority. It is well established that it is the prerogative of the circuit court alone to reverse its prior decisions based on an implied holding of the Supreme Court. *See United States v. Ordaz*, 398 F.3d 236, 241 (3d Cir. 2005); *see also United States v. Weaver*, 267 F.3d 231, 251 (3d Cir. 2001) ("Despite speculation about the future of *Almendarez-Torres*, we heed the words of the Supreme Court . . . : 'If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" (internal citation omitted)). Put simply, a district court does not have the power to overturn a superior court, which is exactly what the defendants are asking this Court to do by urging that it invalidate the stream of benefits theory of bribery. *See Briand v. Lavigne*, 223 F. Supp. 2d 241, 247 (D. Me. 2002) ("A lower federal court in this Circuit is bound by First Circuit precedent even if a subsequent Supreme Court decision might justify a reevaluation of that holding."); *cf. Bosse v. Oklahoma*, 137 S. Ct. 1, 2 (2016) ("[I]t is this Court's prerogative alone to overrule one of its precedents."). This very Court has recognized this fundamental principle of our judicial system. *See Smith v. Ames Dep't Stores, Inc.*, 988 F. Supp. 827, 836 n.7 (D.N.J. 1997) (Walls, J.), *aff'd*, 172 F.3d 860 (3d Cir. 1998) (declining to follow an approach with "appealing logic" because it conflicts with controlling authority and "the Court is clearly bound by Third Circuit precedent").

Accordingly, it is up to the Third Circuit to overrule its own precedent in light of a Supreme Court decision that does not directly address the validity of that precedent. Therefore, this Court

should instruct the jury consistent with the well-established Third Circuit law recognizing the validity of the stream of benefits theory of bribery. If the Third Circuit wishes to do something differently, it has the authority to do so.

## III. CONCLUSION

The stream-of-benefits theory of bribery has survived *McDonnell* because it is entirely consistent with the Supreme Court's stricture that bribery involve the exchange of things of value for actual or promised official action. At the core of that theory is the simple and well-accepted principle that, to be corrupt, a payment need not be intended to influence an *identified* official act, rather, it must be intended to influence *an* official act. The official act need not be identified at the time the payment is offered or made; there simply must be an understanding that the payment is intended to influence some official action. *McDonnell* affirmed—and embraced—this firmly established principle of bribery law. And the evidence in this case—replete with Senator Menendez's official action falling into four separate, purchased categories—easily satisfies *McDonnell*'s narrowed definition of official act and more than sufficiently establishes a stream of benefits flowing from defendant Melgen to defendant Menendez in exchange for influencing those official acts.

The stream of benefits theory is a cornerstone of federal bribery law, the elimination of which would have grave consequences extending far beyond this prosecution. At oral argument, this Court observed that Dean Skelos and Sheldon Silver, whose bribery convictions were recently reversed by *McDonnell*, will be retried. Those cases were stream of benefits bribery cases, and the Second Circuit opinions reversing their convictions do not cast any doubt on the validity of the district courts' instructions on that theory. This Court also remarked at oral argument that in light of the charging error in those cases and the inevitability of a retrial, "Silver may not rest." Oct.

11, 2017, Tr. at 123. If *McDonnell* invalidated the stream of benefits theory, however, then Silver may indeed rest easy. So can Dean Skelos. And so too could any public official who is ready to put a price tag on his willingness to perform yet-unspecified official action at some point in the future when the opportunity arises to aid a benefactor. Invalidating the stream-of-benefits theory of bribery would decriminalize the most egregious forms of corruption, incentivizing greedy businessmen to put politicians on retainer and immunizing lawmakers who solicit bribes in exchange for a promise to perform official acts, as opportunities arise. The Supreme Court did not, and this Court should not, render a decision that has the unsettling effect of legalizing all such conduct.

Respectfully submitted this 14th day of October, 2017.

>ANNALOU TIROL
>ACTING CHIEF
>PUBLIC INTEGRITY SECTION
>
>By:   s/ Peter Koski
>      Peter Koski
>      Deputy Chief
>      J.P. Cooney
>      Deputy Chief
>      Monique Abrishami
>      Trial Attorney
>      Amanda Vaughn
>      Trial Attorney
>      Public Integrity Section
>      1400 New York Ave. NW
>      Washington, D.C. 20005
>      Telephone: (202) 514-1412
>      Facsimile: (202) 514-3003

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this date, I electronically filed the foregoing pleading with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorneys of record for the defendants.

Dated: October 14, 2017
                                        s/ Peter Koski
                                        Peter Koski
                                        Deputy Chief
                                        Public Integrity Section
                                        Criminal Division
                                        U.S. Department of Justice