# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

UNITED STATES OF AMERICA,

v.

ROBERT MENENDEZ

  and

SALOMON MELGEN,

               Defendants.

Crim. No. 2:15-cr-00155
Hon. William H. Walls

---

## DEFENDANTS' JOINT MOTION TO ADMIT DOCUMENTARY EVIDENCE

Abbe David Lowell
Jenny R. Kramer
Christopher D. Man
Victoria V. Corder
**NORTON ROSE FULBRIGHT US LLP**
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 974-5600

Raymond M. Brown
Justin P. Kolbenschlag
Gregg H. Hilzer
**GREENBAUM ROWE SMITH & DAVIS LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, N.J. 07095
(732) 476-3280

*Counsel for Defendant*
*Senator Robert Menendez*

Kirk Ogrosky
Murad Hussain
**ARNOLD & PORTER KAYE**
  **SCHOLER LLP**
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 942-5330

Jonathan D. Cogan
Samuel A. Stern
**KOBRE & KIM LLP**
800 3rd Avenue
New York, N.Y. 10022
(212) 488-1200

*Counsel for Defendant*
*Dr. Salomon Melgen*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................1

I.        THE COURT SHOULD ADMIT DEFENDANTS' EXHIBITS
THAT WERE OFFERED INTO EVIDENCE BUT DENIED
ADMISSION ...............................................................................................1

      A.      DEFENDANTS' EXHIBITS 2 AND 120 ...................................1

      B.      DEFENDANTS' EXHIBIT 3 ....................................................4

      C.      DEFENDANTS' EXHIBIT 6 ....................................................6

      D.      DEFENDANTS' EXHIBIT 325 .................................................7

      E.      DEFENDANTS' EXHIBITS 337A AND 337B.........................9

      F.      DEFENDANTS' EXHIBITS 342, 343, 346, 347, AND 361 ...................11

      G.      DEFENDANTS' EXHIBIT 525 .................................................13

      H.      DEFENDANTS' EXHIBITS 806A AND 806B........................17

      I.      DEFENDANTS' EXHIBIT 807 .................................................19

      J.      DEFENDANTS' EXHIBITS 1061 AND 1080 ........................20

      K.      DEFENDANTS' EXHIBIT 1121 ...............................................21

      L.      DEFENDANTS' EXHIBIT 1307 ...............................................22

      M.      DEFENDANTS' EXHIBITS 1320A AND 1320B.....................23

II.      THE COURT SHOULD ADMIT A COMPLETE VERSION OF
GOVERNMENT EXHIBIT 104.............................................................26

CONCLUSION.....................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansell v. Green Acres Contracting Co.*,
　347 F.3d 515 (3d Cir. 2003)..................................................................................25

*Emmanouil v. Roggio*,
　499 F. App'x 195 (3d Cir. 2012) ............................................................................6

*Firemen's Ins. Co. v. Follett*,
　72 F.2d 49 (7th Cir. 1934) ....................................................................................16

*Gonzalez v. Sec'y of Dep't of Homeland Sec.*,
　678 F.3d 254 (3d Cir. 2012).............................................................................7, 18

*Parham v. Johnson*,
　126 F.3d 454 (3d Cir. 1997).....................................................................................5

*Transportes Aereos Pegaso v. Bell Helicopter Textron, Inc.*,
　623 F. Supp. 2d 518 (D. Del. 2009)........................................................................15

*United States v. Dwyer*,
　493 F. App'x 313 (3d Cir. 2012) ...........................................................................19

*United States v. Hoffecker*,
　530 F.3d 137 (3d Cir. 2008), *cert. denied*, 555 U.S. 1049 (2008)..........................27

*United States v. Marin*,
　736 F.2d 87(2d Cir. 1982)........................................................................................27

*United States v. Pang*,
　362 F.3d 1187 (9th Cir. 2004), *cert. denied*, 2004 U.S. LEXIS 6977 (2004) ........20

*United States v. Reilly*,
　33 F.3d 1396 (3d Cir. 1994)..............................................................................1, 19

*United States v. Saada*,
　212 F.3d 210 (3d Cir. 2000)............................................................................15, 18

*United States v. Soures*,
　736 F.2d 87 (3d Cir. 1984).....................................................................................27

*United States v. Standefer*,
　610 F.2d 1076 (3d Cir. 1979)..........................................................................2, 24

*United States v. Stevens*,
    935 F.2d 1380 (3d Cir. 1991) ................................................................25

*United States v. Tyler*,
    281 F.3d 84 (3d Cir. 2002) ..................................................................15

*United States v. White*,
    692 F.3d 235 (2d Cir. 2012), as amended (Sept. 28, 2012) ...................9, 11, 13, 23

**Statutes**

18 U.S.C. § 201(b)(1) .................................................................................24

52 U.S.C. § 30111 .....................................................................................21

**Other Authorities**

Fed. R. Evid. 401 .....................................................................................11

Fed. R. Evid. 404 .....................................................................................25

Fed. R. Evid. 801 ...............................................................................*passim*

Fed. R. Evid. 803 ...............................................................................*passim*

Fed. R. Evid. 1002 ...................................................................................11

Fed. R. Evid. 1003 ...................................................................................11

## INTRODUCTION

Throughout trial, the Court has repeatedly precluded the admission of relevant and admissible documentary evidence when offered by the Defendants as potential exhibits.  The purpose of this motion is to request that the Court reconsider its prior rulings and admit these and other exhibits into evidence on the basis of their relevance, probative value, and admissibility.

## ARGUMENT

**I.    THE COURT SHOULD ADMIT DEFENDANTS' EXHIBITS THAT WERE OFFERED INTO EVIDENCE BUT DENIED ADMISSION**

Defendants previously attempted to admit the following exhibits, or moved to admit complete versions of exhibits that were subject to redaction, but were precluded from doing so. Defendants now again move for admission of the following exhibits for the reasons set forth below.

As a preliminary matter, the prosecution has not challenged the authenticity of any of these exhibits, each of which were previously provided well in advance of trial. Were there to be a challenge to authenticity, Defendants can easily meet the "slight" burden that authentication requires. *United States v. Reilly*, 33 F.3d 1396, 1404 (3d Cir. 1994).]

**A.    DEFENDANTS' EXHIBITS 2 AND 120**

In 2009, Senator Menendez wrote a book, *Growing American Roots*, about growing up Hispanic in America.  In the book, he singled out just a few people, and one of them was Dr. Melgen.  Defendants seek to admit only four pages of the book which mention Dr. Melgen, specifically the inside cover page bearing an inscription from Senator Menendez to Dr. Melgen, and pages 67, 68, and 240, identified as Defendants' Exhibits 2 and 120 (attached to this motion as Exhibit A).  The purpose of the exhibit is to demonstrate that, for all the many people he knew, Senator Menendez singled out Dr. Melgen.  This is powerful evidence supporting their

1

friendship defense, and allowing Flor Melgen to simply say "Dr. Melgen was mentioned in the book" does not give this important fact the weight it serves. (10/17/17 Tr. at 13-17, 26-30, 35.) What the Court allowed gives no context to the comment that Dr. Melgen was mentioned. The jury could believe he was one of 100 or 500 names. Just like putting context to the $1000 gift to Melissa Melgen, the fact that Dr. Melgen is one of only a few people in the book and the mention is meaningful is what gives this evidence its full weight. The Court cutting it down is the Court denying the defense its full defense. Following the Court's ruling, Defendants were subsequently precluded from laying a proper foundation or offering this document into evidence. (*Id.*) Defendants should be permitted to move the inscription and book excerpt into evidence.

This Court's rulings and Third Circuit precedent permit Defendants to establish friendship as a defense to the bribery charges in this case. (10/17/17 Tr. at 13 ("THE COURT: I frankly have no problems with your attempting to describe the alleged friendship and the degree of the friendship between these defendants and members of the family.").) *Cf. United States v. Standefer*, 610 F. 2d 1076, 1080 (3d Cir. 1979) (*en banc*) (discussing paucity of record evidence to support friendship defense in illegal gratuities case, and identifying several evidentiary deficiencies that jury was entitled to consider when rejecting friendship defense).

The inscription and book excerpt are compelling evidence of the depth of that friendship. While the jury was permitted to hear testimony that Senator Menendez wrote a book and that Dr. Melgen was mentioned, such limited testimony is no substitute for the jury seeing and reading what Senator Menendez wrote to and about Dr. Melgen, and the tone in which he wrote those things. The inscription and passages demonstrate Senator Menendez's deep admiration and affection for his friend Dr. Melgen and is relevant to the friendship defense.

The book excerpts are outside the definition of "hearsay," as the words in the book are not being offered for their truth.  Fed. R. Evid. 801(c)(2).  For example, it does not matter whether "Dr. Melgen was already a physician when he came to the United States from the Dominican Republic in 1979…" or that "[a]lthough a Dr. already, his first job in the United States was a medical assistant, while waiting to pass proficiency exam" are in fact true statements.  Rather, the book excerpt is being offered as circumstantial evidence of Senator Menendez's state of mind concerning Dr. Melgen and for circumstantial evidence that Senator Menendez's *motive* in taking the actions he took on CMS, Visas and Ports was one of friendship and not one of bribery.  To be clear, the book excerpt is *not* being offered as *direct* evidence of Senator Menendez's state of mind; if it were, then the excerpts would be offered for their truth pursuant to Federal Rule of Evidence 803(3), permitting a "statement of the declarant's then-existing state of mind (such as motive, intent, or plan) or emotional, sensory, or physical condition (such as mental feeling, pain, or bodily health) ….").  Rather, the mere fact that the Senator wrote these excerpts is *indirect* evidence of his state of mind.  When offered for this purpose, the book excerpts are not hearsay at all and should be admitted.

By contrast, the inscription is being offered for its truth as *direct* state of mind evidence pursuant to Rule 803(3).  Translated, it states that Senator Menendez is giving Dr. Melgen the book with affection for their brotherhood.  The inscription is thus classic Rule 803(3) evidence, describing Senator Menendez's then-existing state of mind and emotional condition at the time he wrote the inscription.  When offered for this purpose, the inscription falls under a hearsay exception and should be admitted.

3

### B.      DEFENDANTS' EXHIBIT 3

During direct examination of Senator Menendez's son, Robert Menendez, on October 16th, counsel sought to introduce Defendants' Exhibit 3 (attached to this motion as Exhibit B). That document is an article for a Dominican Republic newspaper which was based upon an interview Senator Robert Menendez gave in August 2006 while at Dr. Melgen's home in Casa do Campo that Mr. Menendez Jr. witnessed himself and could identify.  The top left corner of the article clearly displays a photograph of Senator Menendez at Dr. Melgen's home.  To conform with this Court's prior rulings as to admissibility, Defendants requested to introduce only the date of the article, the photograph, its caption, and the last sentence of the article.  The concluding sentence explicitly states that Senator Menendez was interviewed for the article at Dr. Melgen's home in the Dominican Republic as does the caption to the photograph.  Mr. Menendez testified that he was present for the interview as it was during a father-son trip in August 2006, that the interview took place, that he recognized the article in which that interview was published, and identified his father in the photograph with the article and that it was taken at Dr. Melgen's home in the Dominican Republic.  (10/16/17 Tr. at 84.)  The exhibit was offered "[j]ust for the picture and the caption that shows that the interview took place and it was, in fact, at Dr. Melgen's house," but the Court excluded it on the grounds that it was "part of the article." (*Id.*)

This evidence is relevant, as is the testimony itself, because it undercuts the prosecution's theory that the Defendants were somehow concealing the nature of the friendship.  And this picture is worth any amount of words.  Throughout the course of this trial, the prosecution has consistently argued that Senator Menendez concealed his friendship with Dr. Melgen.  The photograph is physical evidence that contradicts the prosecution's theory, as the interview occurred precisely when the prosecution alleges the conspiracy to have begun, is corroborative of

the testimony that Mr. Menendez provided, and it is just as relevant and admissible as his testimony.  It is similar to the photographs of Dr. Melgen's home that were admitted through the same witness.  (10/16/17 Tr. at 77, 82 (admitting Defendants' Exhibits. 121B, 121H and 84A).)  When there is an allegation to be met – for example that there was an effort to conceal that Senator Menendez was staying at Dr. Melgen's house (alleged in the indictment to be part of the bribes), a picture indicating that he gave an interview at the house and that the interview indicated that location is a relevant, important and admissible piece of evidence.

The exhibit cannot be excluded on hearsay grounds.  The caption that it took place at Dr. Melgen's house has been stated in brief form and the picture is the type of evidence that then gives texture to the testimony.  Were the caption to be deemed hearsay somehow, it would be excepted as it shows Senator Menendez and Dr. Melgen's state of mind that they did not believe their friendship or get-togethers were something that needed to be concealed.  Moreover, the defense did not offer DX-3 for the truth of what Senator Menendez said during the interview (and in fact agreed to redact the entire content of the article), but simply to demonstrate that Senator Menendez consented to be interviewed and photographed by the press at Dr. Melgen's home in 2006.  Indeed, this is certainly a time warranting mention that the document speaks for itself.  An out-of-court statement not offered to prove the truth of the matter asserted does not constitute hearsay, and thus is not subject to the prohibitions against hearsay.  *Parham v. Johnson*, 126 F.3d 454, 460 (3d Cir. 1997).  Because the exhibit does not constitute hearsay, it does not need to satisfy any hearsay exception or exclusion, such as the ancient document exception referenced by the court.  Fed. R. Evid. 803(16).

### C.     DEFENDANTS' EXHIBIT 6

Defendants' Exhibit 6 (attached to this motion as Exhibit C) is an e-mail from Senator Menendez to Rob Kelly, his scheduler, sent on April 13, 2008, in which Senator Menendez requests Mr. Kelly to save the date of the wedding for Salomon Melgen's daughter, Melissa, on his schedule for March 7, 2009.  The Defense sought to admit this exhibit during the direct examination of Robert Kelly for the purpose of showing the importance of the friendship between Menendez and Melgen. (10/25/17 Tr. at 22-23.)  Simply put, the prosecution has alleged throughout the course of the trial that Senator Menendez was Dr. Melgen's "personal Senator" and took actions in exchange for alleged bribes.  Evidence such as the "save the date" scheduling of a personal event Senator Menendez intended to and indeed did attend a year in advance is certainly probative of the depth of the relationship, because it means that Dr. Melgen gave Senator Menendez significant advance notice of this deeply personal life event.  In addition, placing a personal event on Senator Menendez's official calendar is also indicative of: 1) a lack of concealment of the relationship (contrary to the prosecution's theory; as well as 2) an exception to the standard practice of merely blocking off personal time with a specific reference to the event.  The Court, however, excluded the document because "we don't need to hear any more about the wedding in that context." (*Id*. at 23.)

As set forth above, this evidence is relevant because it shows the importance of the friendship between Dr. Melgen and Senator Menendez, undercutting the prosecution's contention that the friendship was a sham covering the alleged corrupt scheme.  Placing a date of a wedding on one's calendar nearly a year in advance is the kind of action that true friends take for one another, tending to show that the friendship between Melgen and Menendez was real, and is thus relevant. *Emmanouil v. Roggio*, 499 F. App'x 195, 200 (3d Cir. 2012) ("[R]elevant evidence is admissible, and relevant evidence is any evidence that tends to make a consequential

fact more or less probable.").  The jury is entitled to assess, based on their own life experiences, whether such advance notice about a child's wedding reflects the depth of friendship that is core to Defendants' defense.  In addition, as is true with all of the exhibits discussed herein, the physical piece of evidence itself, here the document schedule entry, is important for the jury to have during deliberations as absence of which could leave the jury to speculate as to the facts and rely upon their memory of testimony.  When documents are corroborative of the testimony and are relevant and admissible, they should be admitted.

While the email is an out-of-court statement, the document is not offered to prove that the wedding in question did, in fact, occur.  (10/25/17 Tr. at 23 ("It's not for the fact of the wedding.").)  The purpose of the document is to demonstrate that Kelly was asked to put this date on Menendez's schedule nearly a year in advance of the event.  As this purpose is solely to establish that a given statement was made, it is not offered for the truth of the matter and thus is not hearsay.  *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 262 (3d Cir. 2012).

### D.   DEFENDANTS' EXHIBIT 325

Defendants' Exhibit 325 (attached to this motion as Exhibit D) is a one page document from the CMS website explains that CMS does not regulate the practice of medicine and their policies neither encourage or prohibit the administration of more than one dose from a single dose vial to one or more beneficiaries.  The Defense sought to admit this exhibit on multiple occasions.  On October 3, Defendants sought to lay a foundation to admit this document through questioning of Marilyn Tavenner, but the prosecution objected on the basis that Tavenner claimed not to recall the document.  The Court stated that it would not permit the defense to lay a foundation for this document and could recall Tavenner if they wished to enter the exhibit into evidence.  (10/03/17 Tr. at 159-161.)  On October 17, during the testimony of Alan Reider, the

Defendants again sought to offer it into evidence, but the prosecution objected to it as cumulative; the Court sustained the objection on the grounds that the issue had been elicited through testimony. (10/17/17 Tr. at 72-76, 106-135). Defendants once again tried to admit the document on October 19 for the purpose of establishing Senator Menendez's intent (what the Senator heard and read before he met or talked) in connection with the CMS issue, but before the defense could request its admission, the Court *sua sponte* ruled that it would not permit the admission of the document as it was cumulative. (10/19/17 Tr. at 104-109).

The prosecution has elicited testimony and evidence during its case-in-chief that Dr. Melgen's practice of multi-dosing Lucentis was against CMS reimbursement policy and its basis for doing so was to illustrate that the practice was improper (an argument relating to the underlying merits of the case). This document undermines the evidence as produced by the prosecution, and in fact shows that the CMS policy was unclear, at best, and therefore there were legitimate grounds to seek clarification of CMS policy regarding multi-dosing. (*Id.* at 106-107 ("[T]he point is, if that's what was shown and discussed in the Senator's office, that this distinction or difference, the Senator's staff and his people looking at this and saying my motive is that *this is unclear as a policy matter*." (emphasis added).) As Senator Menendez was *informed* of these issues as he prepared for the meetings and calls he participated in in 2012, it is a critical piece of evidence that shows his lack of improper motive or lack of intent.

This document is also key evidence of both the reasonableness of Senator Menendez's belief that there was a legitimate issue for Dr. Melgen to seek assistance with, and for Senator Menendez to argue when dealing with CMS and HHS. The more reasonable his beliefs about the dispute's legitimacy, the more plausible the defense that the Senator was not motivated corruption but by legitimate policy considerations.

8

During the testimony of Alan Reider, the prosecution objected to this document being entered into evidence on the basis that doing so would be cumulative and the Court agreed since the issue has been elicited through testimony.   That was really a misguided objection.   The material in the document is not cumulative of any other document that was admitted and surely not of testimony as those lines of questions were not elicited and, when they were, were also barred.   While the cumulative nature of otherwise relevant evidence is potentially grounds under Rule 403 to exclude it, "Rule 403 favors admissibility: evidence is only excluded when its probative value is *substantially outweighed* by the prejudice of jury confusion."   *United States v. White*, 692 F.3d 235, 247 (2d Cir. 2012), as amended (Sept. 28, 2012), there is no such risk here. While Defendants appreciate the Court's desire to minimize the burden upon the jury, the defense has a right to enter and the jury has the right to review pertinent documentary evidence during its deliberations in addition to relying on their memory of testimony.   The Court's interest in simply reducing "the amount of paper" cannot and should not trump the Defendants' rights to have all relevant and otherwise admissible evidence for review in rebutting the prosecution's allegations.

## E.     DEFENDANTS' EXHIBITS 337A AND 337B

These exhibits (attached to this motion as Exhibit E) consist of documents containing talking points that were provided to Marilyn Tavenner in connection with a meeting with Senator Menendez on June 6, 2012, and a follow-up call with Senator Menendez on July 1, 2012. Defendants attempted to admit this exhibit during the cross examination of Marilyn Tavenner to elicit what it was that Senator Menendez wanted to discuss with her and that in none of the requests was anything about multi-dosing or Dr. Melgen.   (10/03/17 Tr. at 114-136.)   The prosecution allowed her to testify that she thought the meeting was about these issues and his

9

case.  It is powerful evidence that these topics were *not* any raised by Senator Menendez.  Upon attempting to admit, the Court *sua sponte* objected to the exhibits as irrelevant.  (*Id*. at 115-116.) Following suit, the prosecution then objected to the admission of the documents but not to eliciting this line of testimony.  (*Id*. at 120).  The Court later refused to admit the exhibit as it was "not the best, to use the cliché, the best evidence in this. The best evidence is what is said or claimed to have been said in the meeting." (*Id*. at 135.)

Here too, the Court's allowing some but not the full undermined the strength of the evidence on a critical point.  The government got to admit document after document that said what a witness said.  Here, this showed the witness was not accurate on a key issue and the document should have been admitted.  Contrary to the *sua sponte* declaration of the Court, these documents are indeed critically relevant to the facts at issue in this matter.  During the direct examination of Tavenner, the prosecution was permitted to ask questions about her preparations for her meeting and call with Senator Menendez, and she volunteered that she "decided to sit down with the staff and see if there were other issues that might come up" beyond her pending nomination.  (*Id*. at 94-95.)  The prosecution elicited testimony about only one issue: that of Salomon Melgen, presenting the misleading impression that was the only topic discussed.  These documents show that, in fact, for the first meeting, Senator Menendez had not listed these as items to discuss and that intended to and did address multiple issues related to HHS and CMS oversight that he was likely to raise, and for the follow-up call that Menendez's concern was the policy related to multi-dosing, not any one specific case.  These rebut any assertion by the prosecution that Menendez's objective or goal was to obtain a favorable outcome for Melgen, and instead support the fact that Menendez was interested in resolving a policy issue.

Three objections to the admissibility of these documents were raised, none of which is meritorious. First, as discussed above, the documents are clearly relevant as they tend to disprove the facts as alleged by the prosecution in its case in chief. Fed. R. Evid. 401. Second, the best evidence rule that the Court appears to refer is not applicable here. The best evidence rule relates to the admission of copies of documentary evidence when originals are not available, Fed. R. Evid. 1002. The rule has nothing to do with the comparison between documentary and testimonial evidence. Even then, under the best evidence rule, Rule 1003 provides that duplicates or copies are also admissible unless their authenticity has been challenged. Fed. R. Evid. 1003. Neither the prosecution nor the court has challenged the authenticity of this document. At best, this could be viewed as a claim that the evidence is cumulative, but again, Rule 403 states that documents should be admitted even where cumulative unless the risk of jury confusion is so great as to "*substantially outweigh*[]" the probative value of the proffered documentary evidence. *White*, 692 F.3d at 247. There is no such risk here, and as such the documents should be admitted.

### F.      DEFENDANTS' EXHIBITS 342, 343, 346, 347, AND 361

These five emails (attached to this motion as Exhibit F) describe the internal HHS views in response to Senator Menendez's inquiry and the meetings that occurred between the agency and his Office. During the relevant time period, Amy Bassano was head of the HHS internal that helped prepare Marilyn Tavenner, Jonathan Blum and the Secretary for their meetings with Senator Menendez and would have testified in connection with these documents that the underlying issues were confusing and that there were contradictory policy issues at play. The defense had intended to admit these documents as a part of Ms. Bassano's testimony, but the prosecution argued that she should be precluded from testifying as a witness because she had no

11

contact with Menendez or his office.  (10/18/17 Tr. at 14-21).  The court agreed with the prosecution's objection and prevented Bassano from testifying, on the grounds that her testimony would be "cumulative."  (*Id*. at 20-21).

Regarding relevance, Ms. Bassano would have testified in connection with these documents that the underlying issues were confusing and that there were contradictory policy issues at play.  She also would have testified that she knew her views and that which made the policies confusing were being communicated to Senator Menendez and his staff.  (*Id*. at 18-19 (noting Menendez staff "got their information…that the CMS people acknowledged that there were both confusing and contradictory policies" from persons prepared by Ms. Bassano).)  That is a critical link in establishing why Senator Menendez said what he said and did what he did.  In addition, Ms. Bassano's testimony would have helped established the *objective* reasonableness of Defendants' beliefs that the policy was confusing and presented a legitimate dispute, because Ms. Bassano's independent conclusions reinforce for the jury that the plausibility that Defendants themselves also truly shared those views.  Ms. Bassano was head of the HHS internal division that helped prepare Marilyn Tavenner, Jonathan Blum and Secretary Sebelius for their meetings with Senator Menendez.  The prosecution called former agency personnel to testify in this trial and Ms. Bassano was one of the people who was involved in preparing them for those meetings and in responding to the questions that were asked by the Senator and his staff.  (*Id*. at 17 ("Miss Bassano was one of the people that was involved in preparing [Marilyn Tavenner, Jonathan Blum, and Kathleen Sebelius] for those meetings and in responding to the questions that were asked by the Senator and his staff.").)

The testimony and evidence were not cumulative since there has been testimony about what the internal staff at CMS thought about the issues.  Even if it could be considered

cumulative, as we have noted, "Rule 403 favors admissibility: evidence is only excluded when its probative value is *substantially outweighed* by the prejudice of jury confusion." *White*, 692 F.3d at 247. A deferential view of allowing potentially cumulative evidence is consistent with the right of the Defendants to offer documentary evidence in addition to testimonial evidence for the jury's consideration and deliberations. By barring the testimony of Ms. Bassano in its entirety, this Court denied the defense of its right to offer such exhibits into evidence.

### G.    DEFENDANTS' EXHIBIT 525

Defendants' Exhibit 525 (attached to this motion as Exhibit G) is a redacted version of a January 4, 2013 letter from Marc Elias, an attorney from Perkins Coie who represented Senator Menendez, to John C. Sassaman, Chief Counsel of the Senate Select Committee on Ethics, responding to a formal Senate Ethics inquiry. The defense sought to introduce this document through Mr. Elias on October 26, 2017, but was precluded from doing so prior to Mr. Elias taking the stand when the Court prevented Mr. Elias's entire testimony and incorrectly ruled that this was inadmissible hearsay and irrelevant advocacy by an attorney. (10/26/17 Tr. at 34-43, 66-80.)

The relevance of this document is that it shows statements made by the Senator and his staff were as a result of a mistake rather than an attempt at concealment. The prosecution has argued and presented evidence to the jury that a January 30, 2013, press release from the Office of Senator Menendez that states the Senator was on Melgen's plane on three occasions, entered into evidence as Government's Exhibit 105, was a lie, and that the Senator concealed the remainder of his trips on the plane. The Court stated that Defendants could present evidence in their case that the statements made to the press on January 30, 2013, and February 4, 2013, were a mistake, rather than a lie. (9/19/17 Tr. at 193 ("COURT: You argue that it was a mistake. That doesn't

foreclose you from arguing what he said was the result of a mistake.").)  Defendants' Exhibit 525 is evidence of that mistake.  Specifically, just a few weeks prior to the January 30, 2013, press release and the February 4, 2013, CNN interview, Senator Menendez, by way of his counsel's January 4, 2013, letter, disclosed the following:

- Three trips on Dr. Melgen's plane: September 3-6, 2010, August 6-9, 2010, and May 14, 2010;

- An additional nineteen trips believed to be commercial that they were looking into at the time to produce responsive documents to the Senate Ethics Committee on a rolling basis;

- A $58,500 check, of which a copy was included, written by Senator Menendez to Dr. Melgen on the same date and provides a calculation of that amount.

Thus, Defendants' Exhibit 525 establishes that Senator Menendez disclosed, rather than concealed, the existence of trips charged in the Indictment.  While the jury is certainly free to decide whether the statements to the media were a mistake, it should have the benefit of the disclosures made by Defendants' Exhibit 525 in making that determination.  Again, without being provided with this critical evidence, the jury is left to speculate as to whether there was, in fact, concealment of certain facts when the documents themselves undercut that notion.

Similarly, this document undermines other claims of the prosecution regarding concealment. Agent Mohl testified for the prosecution that a letter sent the same day as Defendants' Exhibit 525 by Elias to Dr. Melgen which included a check reimbursing two trips taken by Menendez, entered into evidence as Government's Exhibit 41, did not reference payment for any of the 2006, 2007 or 2008 trips, implying that this omission was an attempt at concealment. (9/20/17 Tr. at 15-19.)  However, Defendants' Exhibit 525 is proof that on the very same day, Mr. Elias made an affirmative act of disclosure  to the Senate Ethics Committee

detailing the reason for the $58,500 payment and disclosing almost all of the charged trips, including trips from 2007, 2008 and 2009.  The letter clarifies Agent Mohl's misleading testimony, and it would be prejudicial to allow the jury to consider only one side of the story.

Additionally, Defendants' Exhibit 525 serves to disprove the testimony of Agent Mohl that Senator Menendez never provided an explanatory letter in connection with his financial disclosure forms disclosing any of the flights on Dr. Melgen's plane (9/25/17 Tr. at 11).  This letter, by its very nature, is demonstrative proof that Senator Menendez, through counsel, did provide such a letter to the Senate Ethics Committee. While Defendants were permitted to cross examine Agent Mohl on the existence of this document, the Court would not allow the admission of the document at that time; considering its relevance, the Court should do so now.  (9/25/13 Tr. at 111-123).

The disclosures made by way of Defendants' Exhibit 525 are verbal acts and do not constitute hearsay.  Under the Federal Rules of Evidence, a statement constituting a verbal act is not hearsay. *United States v. Tyler*, 281 F.3d 84, 98 (3d Cir. 2002) ("The hearsay rule excludes … statements which themselves 'affect[] the legal rights of the parties or [are] circumstance[s] bearing on conduct affecting their rights.'" (quoting Fed. R. Evid. 801(c))); *see also* Fed. R. Evid. 801, Advisory Committee Notes (discussing "verbal acts").  A verbal act is a statement that has legal significance or brings about a legal consequence, simply by its existence.  *United States v. Saada*, 212 F.3d 210, 218 n.8 (3d Cir. 2000).  Verbal acts "do not constitute hearsay because they are not being offered for the truth of the matter, but rather, are relevant for the mere fact that they were spoken."  *Transportes Aereos Pegaso v. Bell Helicopter Textron*, Inc., 623 F. Supp. 2d 518, 530 (D. Del. 2009) (citing *Saada*, 212 F.3d at 218).

Moreover, this document is a statement by Senator Menendez's agent on the Senator's behalf that affected his legal rights or, at the very least, was "a circumstance bearing on conduct affecting his rights."   Fed R. Evid. 801(c), Advisory Committee Notes.   The importance of Defendants' Exhibit 525 is that the words were actually spoken/disclosed to the Senate Ethics Committee, specifically to refute the contention that Senator Menendez concealed the facts of his trips on Dr. Melgen's plane.   *See*, *e.g.*, *Firemen's Ins. Co. v. Follett*, 72 F.2d 49, 52 (7th Cir. 1934) (holding, in insurance dispute, that defendant's letters were properly admitted to controvert statement by plaintiff that defendant "concealed the fact that the [defendant's] insured property was being used as a restaurant").   Since the veracity of the disclosure does not matter, the statements are not offered for the truth of the matter asserted therein and are not hearsay.

The Court seemed to focus that it did not think it admissible to allow some agent of Senator Menendez, in this case an attorney, to testify on his behalf on something the Court believed reflected only a point Senator Menendez could make.  (10/26/17 Tr. at 64 ("You will go to Philadelphia on that. I will not permit a lawyer to get up there and try to be the messenger of mistake by clients who have said nothing.").)   The fact that Mr. Elias was an attorney, for this purpose, is irrelevant.   After all, the defense previously called Dr. Melgen's attorney, Alan Reider, solely in his capacity as a fact witness who participated in key events.   The same would have been true for Mr. Elias.   And as with Mr. Reider, the defense was not going to elicit anything about legal advice or exchanges between Senator Menendez and Mr. Elias.   For all import, anyone who knew about the letter could sponsor it, but it happened to be Mr. Elias who provided the letter.   And, as to the point about Mr. Elias being some type of agent for Senator Menendez where his issues were being presented without his saying them, that is *no* different than a dozen witnesses who have testified: as the prosecution makes clear each and every time

16

one is called, all the staff of the Senator are also his agents.  Fed R. Evid. 801(c), Advisory Committee Notes.  *They* are on the stand to be cross-examined as they were throughout trial and so this is not an attempt to shield the presenter of competent and admissible evidence from examination.

### H.    DEFENDANTS' EXHIBITS 806A AND 806B

Defendants' Exhibits 806A and 806B (attached to this motion as Exhibit H) are two versions of the same January 2, 2013 email from Senator Menendez to Robert Kelly listing 19 trip dates.  806A is a clean copy of the email and 806B contains Rob Kelly's handwritten notes. The defense sought to introduce 806A and 806B through direct examination of Robert Kelly on October 25, 2017.  Rob Kelly testified that Senator Menendez e-mailed him this list of trips and that the list formed the basis for the work he performed over the course of the following year to, *inter alia*, determine how many flights Senator Menendez took on Dr. Melgen's plane. (10/25/17 Tr. at 148-151.)  However, the Court excluded the exhibits and only permitted Mr. Kelly to testify to the *range* of the dates on the list and did not permit Mr. Kelly to identify each (or any) of the specific dates listed by Senator Menendez.  (10/25/17 Tr. at 149.)  The Court's refusal to admit the document is prejudicial, as the importance of the e-mail is that in includes several of the charged trips.

These documents directly contradict the contention presented by the prosecution that the public statements made by Menendez and his staff were acts of concealment, and instead demonstrate that they were mistakes.  This document consists of an email Senator Menendez sent Mr. Kelly with a list of 19 trip dates, including several trips that were ultimately charged in the Superseding Indictment.  Mr. Kelly testified that this document formed the basis for the work he performed over the next year to determine Senator Menendez's travel.  (10/25/17 Tr. at 148-

151 ("THE COURT: ... Your boss gave you some dates of flights in a particular period of time and you did your work and you finished it in December of 2013, right?  THE WITNESS: Yes, sir.").)  These documents demonstrate the immense task that Menendez and his staff faced in verifying these trips, and moreover demonstrate that far from trying to conceal any flights, Menendez was actively attempting to determine the full extent of the flights he had taken.  The fact that Mr. Kelly was working on gathering information related to the charged flights (rather than just any flights), and that it took him a full year to do it, is evidence that the January 30, 2013, press release reflected the number of trips that Senator Menendez and his staff were aware of at the time the statements to the press were made and, therefore, the press release was a mistake and not a false statement.

        These documents are not hearsay because the relevance lies in the fact that the statement they include, namely the list of flights, was made, not in the truth of the information contained therein.  *Saada*, 212 F.3d at 218 ("[I]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of the matter asserted, and the statement is not hearsay.") (citing Fed. R. Evid. 801(c) Advisory Committee Notes).  There is no inherent truth of the material in the document (as counsel agreed to redact anything other than the dates).  Listing the dates would have given context to the testimony of the witness and shown that this was in fact the exercise undertaken.  The documents are offered not for the truth of the matter asserted, but solely to show that the letter containing those dates that were sent by Menendez to Kelly on January 2, 2013.  Such a statement admitted solely for the purpose of establishing that a given statement was made and not its contents is not hearsay and is admissible for that purpose.  *See*, *e.g.*, *Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 262 (3d Cir. 2012) ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as

to the truth of anything asserted, and the statement is not hearsay." (quoting Fed. R. Evid. 801(c) Advisory Committee Notes)).

In addition, the email reflects instructions provided by Senator Menendez who are not hearsay as they are not capable of being true or false, they merely show subsequent action. *United States v. Dwyer*, 493 F. App'x 313, 317 (3d Cir. 2012) ("[The Witness]'s testimony was not hearsay. She testified about what [her boss] instructed her to do and the fact that these instructions followed [her boss]'s meeting with [the defendant]. 'Instructions to an individual to do something are . . . not hearsay because they are not declarations of fact and therefore are not capable of being true or false.'" (quoting *United States v. Reilly*, 33 F.3d 1396, 1410 (3d Cir.1994).)

## I.   DEFENDANTS' EXHIBIT 807

Defendants' Exhibit 807 (attached as Exhibit I) is a February 5, 2014 check from Senator Menendez to Dr. Melgen in the amount of $4,943.10 representing Senator Menendez's repayment to Dr. Melgen of a loan of American Express points.  DX-807 would have been introduced by Marc Elias, who was Senator Menendez's counsel at the time the check was issued and has personal knowledge of the purpose of the payment, had he been permitted to testify.  As referenced above, he Court precluded him from testifying on October 26, 2017. (10/26/17 Tr. at 34-43, 66-80.)

The prosecution has presented evidence regarding the monetary value of the points Senator Menendez borrowed from Dr. Melgen for a hotel stay in Paris and argues that the points were part of the bribery scheme.  (9/11/17 Tr. at 8-14).  Similar to the $58,500 reimbursement check for flights that was permitted into evidence, DX-807 is a reimbursement check written by

19

Senator Menendez to Dr. Melgen for the value of the American Express points borrowed by Senator Menendez.

Defendants' Exhibit 807 is admissible, as checks fall squarely in the category of legally-operative verbal acts that are not barred by the hearsay rule. *United States v. Pang*, 362 F.3d 1187, 1192 (9th Cir. 2004), *cert. denied*, 2004 U.S. LEXIS 6977 (2004). That the check was written later than January 2013 is of no moment. If the prosecution presented after the fact payments for whatever weight it wanted the jury to consider, for example, GX 41, then the same basis should exist to allow the defense to do the same.

## J.     DEFENDANTS' EXHIBITS 1061 AND 1080

Defendants' Exhibit 1061 (attached as Exhibit J) is a New Millennium PAC credit card statement reflecting a $216.00 charge for "Affordable Sedan" on October 14, 2010, reflecting the car service for the car that picked Senator Menendez up from the airport, even though the charge appears to have hit the statement a few days later Defendants' Exhibit 1080 is an Federal Election Commission website screen shot reflecting allocation of the $216.00 charge to Menendez for Senate. Both show that the payment of the charge was allocated to Menendez for Senate, and would have been offered through Marc Elias, had he been permitted to testify. However, the Court did not permit Mr. Elias to testify about these issues and rejected Defendants' request to make a proffer as to his testimony. (10/26/17 Tr. at 74-75).

These documents are evidence that Senator Menendez's trip to Florida in October 2010 was political in nature and should have been invoiced and reimbursed, and thus could not have constituted bribes. Marc Elias, had the Court permitted him to testify, would have stated that he knew that the car charge was paid because it was a political weekend and that he approved payment to be made for part of the transportation that occurred. This is relevant considering that

20

the prosecution alleges this trip was a "quid" given in exchange for official acts.  (9/13/17 Tr. at 45-54; *id*. at 107-109.)

These documents are business records admissible pursuant to Federal Rule of Evidence 803(6).  For Defendants' Exhibit 1080, Federal Election Commission reports are kept in the course of business for the Commission and making the records are a regular practice of the Commission.  *See* 52 U.S.C. § 30111 (statute outlining duties of the Federal Election Commission).  Similarly, the prosecution has admitted multiple American Express records under the same exception to hearsay based on the certification of American Express officials that statements are regularly created and kept during the normal course of business.

### K.    DEFENDANTS' EXHIBIT 1121

This document (attached as Exhibit K) is an email from Alexander Margulies which was forwarded to Scott Smith regarding the status of Dr. Melgen's port contract negotiations with the government of the Dominican Republic.  The email received by Smith on February 21, 2012 would have refuted the witness's testimony that he was no longer involved in the issue after the meeting with Elio Muller and Walter Bastian on February 1, 2012.  Notably, the prosecution did not object to this document being entered into evidence.  (9/26/17 Tr. at 24-27).  The Court however sustained an objection *that was not made by the Government* and refused to allow its entry into evidence.  (Id. at 26-27.)

As this document refutes the testimony that was given by a government witness, it is clearly relevant as it goes to the credibility of his testimony.  Again, without objection, after laying the proper foundation, the Court, refused admission of this document into evidence, despite the fact that the document contradicted Mr. Smith's testimony.  As the purpose of the

admission for the document was impeachment, the document was not being offered for the truth of the matter asserted and thus cannot be excluded it is non-hearsay and admissible.

### L.      DEFENDANTS' EXHIBIT 1307

Defendants' Exhibit 1307 (attached as Exhibit L) is an email sent by Kory Vargas Caro, a fundraiser for Senator Menendez's campaign, to other members of the fundraising team dated December 14, 2011.  The email includes a list *composed by Vargas* of potential donors to the New Jersey Democratic State Committee ("NJDSC"), each of whom resides outside of New Jersey.  During the direct examination of Mr. Caro, the defense sought to admit the document into evidence; the Court, however, denied this request *absent* any objection from the prosecution, instead stating that it was his "discretion" to exclude the document and that the defense doesn't "need to burden the jury with another piece of paper." (10/24/17 Tr. at 108-110).  While the Court did not provide any additional reasons for the preclusion of admission, this appears to be an exclusion of the evidence based on an assertion that it is cumulative.

Counts 9 and 10 of the Indictment charge that the Melgen family's May 2012 contributions to the NJDSC were bribes.   This document is the origin of those contributions.  Mr. Vargas testified that his creation of this list led to his solicitation of the Melgen family for those contributions.  Mr. Vargas created that list based on neutral criteria, concerning loyal national donors who had previously made maximum contributions to Menendez for Senate.  Mr. Vargas made this list without input from Senator Menendez.  The fact that Dr. Melgen's name appeared on a list that Mr. Vargas created, *on his own, without any input from the Senator*, is highly probative of the fact that the solicitation and payment of the contribution was not related to any bribe.

Additionally, this list is directly probative of the "objective reasonableness" of Dr. Melgen's intent in making political contributions to Senator Menendez despite Dr. Melgen's residence in Florida.  The list identifies 30 other Menendez for Senate donors outside New Jersey, many of whom are Hispanic.  This list, and defense counsel's earlier attempts to lay the foundation for its admission during the cross-examination of Fran Katz Watson earlier this month in the prosecution's case, gave rise to Mr. Hussain's "objective reasonableness" letter brief of October 9, 2017, (*see* Dkt. 238), which the Court subsequently recognized as a valid theory of relevance (*see* 10/10/17 Tr. at 4.)

The only objection to the admission of this document that can be discerned from the record is the Court's concerns about its potentially cumulative nature.  As has been discussed, however, Rule 403 favors admission of documentary evidence even where it is cumulative unless the risk of jury confusion substantially outweighs its probative value. *United States v. White*, 692 F.3d 235, 247 (2d Cir. 2012), as amended (Sept. 28, 2012).  While the Court may not wish to "burden the jury with another piece of paper," (10/24/17 Tr. at 108-110), that desire is not a legitimate basis to exclude otherwise relevant and admissible documentary evidence.

Further, even if there were challenges to its admissibility, these would be without merit.  Mr. Vargas's donor list would be admissible as non-hearsay, because a list of 30-plus names does not assert any matter that might be true or false.  *See* Fed. R. Evid. 801(c)(2).  Alternately, if construed as containing factual assertions, the list would be admissible as a business record under Rule 803(6), given Mr. Vargas's testimony about his repeated creation of donor lists in the course of his solicitation of funds for the NJDSC.  Considering the above, it should be admitted.

### M.    DEFENDANTS' EXHIBITS 1320A AND 1320B

These documents (attached as Exhibit M) consist of printouts of searches conducted on

the Federal Election Commission's "classic" website, displaying the political contribution histories of Salomon and Flor Melgen (Defendants' Exhibit 1320A) and Melissa Melgen and Eduardo Rodriguez (Defendants' Exhibit 1320B).  The exhibits were already redacted so as to only display Melgen family contributions to four entities: Robert Menendez's campaign entity (Menendez for Senate/Menendez for Congress), his leadership PAC (New Millennium PAC), the Democratic Senatorial Campaign Committee, and the NJDSC.

Dr. Melgen's counsel moved these exhibits into evidence during the direct examination of fundraiser Kory Vargas Caro.  The Government objected to these exhibits based on relevance. (10/24/17 Tr. at 115-117.)

The documents are relevant to show that the Melgens had a history of making contributions related to Menendez or New Jersey, long predating the specific 2012 contributions charged as bribes in the Indictment.  As noted in Court, the history of contributions by Salomon Melgen alone undercut the government's contention that Melgen's intent and motive in contributing to Menendez was to receive official acts in return.  It instead shows that there was a long history of giving wholly unrelated to any alleged official act.  As the intent of Melgen in making contributions to Menendez is at issue in this matter, *see* 18 U.S.C. § 201(b)(1)(A), a document that shows an alternative intent for making those contributions, namely a long history of contributions amidst a longstanding friendship, is critically relevant to the issue at hand.  *See also United States v. Standefer*, 610 F. 2d 1076 (3d Cir. 1979) (*en banc*) (explaining that jury was entitled, when assessing whether corruption defendant acted out of friendship or improper motives, to consider evidence of whether the defendant had a prior history of giving gifts to the public official in question); *United States v. Manfredi*, No. 07-CR-352, 2009 WL 3762966, at *3 (W.D. Pa. Nov. 9, 2009) (criminal defendant may offer evidence of generosity as a pertinent trait

where relevant to the defense).

The donations related to Mrs. Melgen are directly relevant because Counts 9-10 charge that a May 16, 2012 contribution of $10,000 made in her name to the NJDSC was a bribe from Dr. Melgen. There is no evidence that this May 2012 contribution in her name was improper in any way. So long as the prosecution may continue charging the $10,000 from Mrs. Melgen as a bribe imputed to Dr. Melgen, the defense is entitled to rebut that charge by showing all the other occasions when Mrs. Melgen made contributions to Senator Menendez (and others) without any suggestion of bribery.

The donations related to Melissa Melgen and Eddie Rodriguez are also directly relevant because Counts 9-10 charge that their May 16, 2012 contribution of $20,000 to the NJDSC was also a bribe from Dr. Melgen. Although the prosecution has introduced evidence of a salary check from Dr. Melgen's medical practice to Ms. Melgen the day of that contribution, there is no evidence that Ms. Melgen and Mr. Rodriguez's contributions were improper in any way. So long as the prosecution may continue charging the $20,000 from this couple as a bribe imputed to Dr. Melgen, the defense is entitled to rebut that charge by showing all the other occasions when Ms. Melgen and Mr. Rodriguez made contributions to Senator Menendez (and others) without any suggestion of bribery.

Evidence of prior (or even subsequent) similar acts is admissible where it is relevant to a matter at issue, such as motive or intent. Fed. R. Evid. 404(b); *United States v. Stevens*, 935 F.2d 1380, 1405 (3d Cir. 1991); *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 520 (3d Cir. 2003) (subsequent "good" acts admissible to prove motive). Nothing in Rule 404(b) limits evidence of prior similar acts to acts of the defendant. Here, the prior acts are clearly relevant because, as discussed, they provide significant weight to Defendants' contention that the Melgen

family's contributions in May 2012 were made based on a long-term friendship with Menendez, specifically, and involvement in politics more generally.

As the Court appeared to agree during the argument on these issues, the documents themselves are admissible pursuant to the parties' oral stipulation that contribution records for government election commissions would be admissible.  (*See* 10/10/17 Tr. at 64.)  Alternately, the documents are admissible as public records routinely kept in the course of the FEC's regular processing of campaign disclosures, and therefore admissible under Federal Rule of Evidence 803(8)(A)(ii) or 803(6).

## II.     THE COURT SHOULD ADMIT A COMPLETE VERSION OF GOVERNMENT EXHIBIT 104

On September 20, 2017, the Court permitted the prosecution to play a partial video clip of an interview that Senator Menendez gave to CNN on February 4, 2013.  The interview included questions and answers regarding: (1) flights taken on Dr. Melgen's plane; and (2) salacious rumors regarding Senator Menendez.  However, the prosecution's redacted version of the video shown to the jury did not include Senator Menendez's answer to the question about the salacious and sexual rumors being circulated in the media at the time.  This left leaving the jury with the impression that the interview was solely about flights, which it was not.  The clip excluded the following relevant portion:

> The smears that right-wing blogs have been pushing since the election and that is totally unsubstantiated.  It is amazing to me that anonymous, nameless, faceless individuals on a website can drive that type of story into the mainstream but that is what they have done successfully.  Now no one can find them, nobody ever met them, nobody ever talked to them but that is where we are at.  So the bottom line is that all of those allegations are absolutely false.

(*See* Unredacted Version of Government's Exhibit 104.)

On September 19, 2017, Defendants objected to the prosecution's redacted version of the video and offered an alternative version of the redacted video in which the word "prostitution" is redacted but the remainder of the question and answer with regard to the salacious rumors remains intact.   (9/19/17 Tr. at 185-200.)  Over Defendant's objections, the Court permitted the prosecution to play its redacted version of the video clip.  (*Id.*)

Given the exchange that occurred before Mr. Kelly's testimony, the redacted portion (with one additional word redaction) is now both relevant and admissible.  The Court allowed testimony that what triggered the work to find out about trips was the "salacious and false" allegations.  This was a significant issue and the interview makes clear how much it was on Senator Menendez's mind during the interview. The Senator's answer to the question about salacious rumors on the CNN tape is relevant to give the jury the necessary context in which the statements about flights were made.  The jury can use this video footage providing context, if it wishes, to determine whether the statements about flights were lies or a mistake.  Senator Menendez's response to the CNN reporter was made in the context of relentless media inquiries regarding the salacious smears. The full context of the video would allow the jury to determine that Senator Menendez was focused on the salacious and embarrassing rumors at the time he gave the interview.

Defendants' redacted version of the CNN video is admissible pursuant to the doctrine of completeness.  Federal Rule of Evidence 106 provides that "[i]f a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. 106.  As explained by the Third Circuit, additional portions of a recording may be played "if it is necessary to (1) explain the admitted portion, (2) place the

admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." *United States v. Soures*, 736 F.2d 87, 91 (3d Cir. 1984) (citing *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)); *see also United States v. Hoffecker*, 530 F.3d 137, 192 (3d Cir. 2008), *cert. denied*, 555 U.S. 1049 (2008).  Here, the remainder of the CNN video should be played to explain the portions shown by the prosecution, to place the statements in context, to avoid misleading the trier of fact and to insure a fair and impartial understanding of the statements at issue.

## CONCLUSION

For the reasons discussed, the Court should reconsider its prior rulings and allow the admission of the exhibits listed above.

Dated: October 29, 2017

Respectfully submitted,


/s/  Abbe David Lowell
Abbe David Lowell
Jenny R. Kramer
Christopher D. Man
Victoria V. Corder
**NORTON ROSE FULBRIGHT US LLP**
1200 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 974-5600


Raymond M. Brown
Justin P. Kolbenschlag
Gregg H. Hilzer
**GREENBAUM ROWE SMITH & DAVIS LLP**
Metro Corporate Campus One
P.O. Box 5600
Woodbridge, N.J. 07095
(732) 476-3280


*Counsel for Defendant*
*Senator Robert Menendez*

Kirk Ogrosky
Murad Hussain
**ARNOLD & PORTER KAYE**
  **SCHOLER LLP**
601 Massachusetts Avenue, N.W.
Washington, D.C. 20001
(202) 942-5330


Jonathan D. Cogan
Samuel A. Stern
**KOBRE & KIM LLP**
800 3rd Avenue
New York, N.Y. 10022
(212) 488-1200


*Counsel for Defendant*
*Dr. Salomon Melgen*

## CERTIFICATE OF SERVICE

I hereby certify that on October 29, 2017, a true and correct copy of the foregoing Motion was filed with the CM/ECF system for the United States District Court for the District of New Jersey, which will send electronic notification of the filing to all counsel of record.


/s/  Abbe David Lowell