# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA,

v.

ROBERT MENENDEZ

and

SALOMON MELGEN,

                      Defendants.

Crim. No. 2:15-cr-00155
Hon. William H. Walls

## DEFENDANTS' JOINT TRIAL BRIEF RESPONDING TO THE COURT'S REQUEST OF NOVEMBER 14, 2017

Defendants respectfully submit this trial brief to (1) reiterate and clarify their polling proposal set forth in the Comment to Third Circuit Model Criminal Jury Instruction 9.06 ("Comment 9.06"); (2) identify cases showing that a hung jury is a legitimate trial outcome; and (3) identify cases showing that Third Circuit trial judges have explicitly instructed juries that a hung jury is a legitimate outcome.

**I.    THE COMMENT 9.06 POLLING PROCESS IS APPROPRIATE IF THE JURY REMAINS DEADLOCKED.**

No further instruction is presently sought, in the absence of a subsequent jury note. Although Senator Menendez's counsel earlier sought a mistrial in connection with a jury deadlock, the Court denied that request. (*See* 11/13/17 Tr. 48:16-49:4.) Defendants simply raise the Comment 9.06 polling process to preemptively identify the proper way for both the Court and the parties to assess whether to give the jury any further instructions if it remains deadlocked. (11/14/17 Tr. 15:6-17:17.)

On the morning of November 14, 2017, the Court issued its second deadlock charge to the jury, consisting of Model Instruction 9.05 with several supplemental instructions.[1] (*See* 11/14/17 Tr. 4:8-6:5.) At the end of that day, defense counsel requested that if the jury issues another note stating that it is deadlocked, the Court should first "determine whether a supplemental charge is necessary" by employing the polling procedure set forth in Comment 9.06, which provides for an initial jury poll "[i]f the jury indicates that it is still deadlocked after the court has given [Model I]nstruction 9.05." Comment 9.06.

This polling process would begin with the Court's request to the foreman:

> Advise me of the status of deliberations. If the jury is divided, I do not want to know the numbers or the direction. I only want to know whether in your judgment there is a reasonable probability that the jury can arrive at a unanimous verdict in this case if sent back for further deliberations.

*See* Comment 9.06. If the foreman indicates that the jury is deadlocked, "the [C]ourt should question each juror, asking 'Do you agree that there is a hopeless deadlock which cannot be resolved by further deliberations?'" *Id.* Next, "if jurors' answers reflect that they are deadlocked, the [C]ourt should excuse the jury and hold a hearing with counsel and the defendant[s]" so the parties may be heard as to next steps. *Id.* As noted yesterday, although the next steps may include a party's request for a mistrial, the circumstances of any jury note or poll might suggest something else, such as a supplemental charge. (11/14/17 Tr. 17:11-17.)

---

[1] The Court issued its first deadlock charge on November 13, 2017, after the jury foreman issued a note at 2 p.m., stating: "On behalf of all jurors, we cannot reach a unanimous decision on any of the charges. Is there any additional guidance? What do we do now?" (*See* 11/13/17 Tr. 47:19-23.) The Court instructed the jury to continue deliberations the next day, and then excused the jurors early. (*See id.* at 49:22-51:9.) This instruction largely tracked the "Jurors' Duty" instruction in the final pre-deliberation charges, but omitted the following two sentences: "Now in the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict." (*See* 11/6/17 Tr. 180:18-24.)

## II. COURTS RECOGNIZE THAT A HUNG JURY IS A LEGITIMATE OUTCOME.

It is well established that a hung jury is a legitimate trial outcome. The Third Circuit confirmed as much in the seminal decision of *United States v. Fioravanti*, 412 F.2d 407 (3d Cir. 1969). There, the court prohibited the use of *Allen* charges that direct jurors among the minority of a deadlocked jury to reconsider their views in light of their disagreement with the majority. The Third Circuit's holding explicitly rested on the premise that trial judges may not coerce juries into returning a verdict, because a hung juries are essential components of the trial process:

> So long as the unanimous verdict is required in criminal cases, there will always be three possible decisions of the jury: (1) not guilty of any charge; (2) guilty of one or more counts of the indictment; and (3) no verdict because of a lack of unanimity. The possibility of a hung jury is as much a part of our jury unanimity schema as are verdicts of guilty or not guilty. And although dictates of sound judicial administration tend to encourage the rendition of verdicts rather than suffer the experience of hung juries, nevertheless, ***it is a cardinal principle of the law that a trial judge may not coerce a jury to the extent of demanding that they return a verdict.***

*Id.* at 416 (emphasis added). *Fioravanti* thus suggested a modified *Allen* instruction that implied the legitimacy of a deadlocked jury: "It is your duty, as jurors, to consult with one another, and to ***deliberate with a view to reaching an agreement if you can do so*** without violence to individual judgment." *Id.* at 420 n.32 (emphasis added). That language is now part of Model Instruction 9.05, which was part of this Court's deadlock charge. (*E.g.*, 11/14/17 Tr. 4:25-5:3.)

Later cases confirm *Fioravanti*'s continued vitality. *E.g.*, *United States v. E. Med. Billing, Inc.*, 230 F.3d 600, 608 (3d Cir. 2000) (analyzing *Fioravanti* and its progeny, reversing conviction due to an improperly coercive deadlock instruction, and explaining: "[A]t play in our ruling [in *Fioravanti*] was the belief that the justifications proffered in favor of *Allen* charges were outweighed by their potential to distort the workings of the jury system. Although efficient judicial administration clearly favors verdicts over hung juries, we pointed out that the

'possibility of a hung jury is as much a part of our jury unanimity schema as are verdicts of guilty or not guilty.'" (quoting 412 F.2d at 416)); *United States v. U.S. Gypsum Co.*, 550 F.2d 115, 133-34 (3d Cir. 1977) (Adams, J., concurring) (citing *Fioravanti* and explaining: "[A] jury need not, and may not, render a verdict if it is unable to attain agreement. . . .  In the present case, it is evident that the jury had the mistaken impression, for whatever reason, that it must reach a verdict of guilty or not guilty."), *aff'd*, 438 U.S. 422 (1978); *see also United States v. Haynes*, 729 F.3d 178, 194 (2d Cir. 2014) (finding improper a deadlock charge that "did not suggest that failing to reach a unanimous verdict was permissible," as "[a] reasonable juror could view this instruction as lending the Court's authority to the incorrect and coercive proposition that the only just result was a verdict," because "a verdict is just only if it represents the conscientiously held beliefs of all jurors"); *cf. United States v. Williams*, 590 F. App'x 122, 125 (3d Cir. 2014) (approving deadlock instruction which "explained that, although juries should try to reach a unanimous verdict, they should only achieve unanimity 'if it is consistent with the conscience of each member of the jury'").

### III. TRIAL COURTS IN THE THIRD CIRCUIT HAVE EXPLICITLY INSTRUCTED JURIES THAT A HUNG JURY IS A LEGITIMATE OUTCOME.

In *United States v. Price*, the Third Circuit considered the argument "that the [trial] court was required to instruct the jury that it could be a hung jury," and acknowledged that "***[t]here may be occasions where such an instruction might be necessary, such as in conjunction with*** the modified *Allen* instruction prescribed in *United States v. Fioravanti*," 13 F.3d 711, 725 (3d Cir. 1994) (citing 412 F.2d at 420 n.32; emphasis added) -- *i.e.*, in addition to *Fioravanti*'s instruction above about "reaching an agreement if you can do so," 412 F.2d at 420 n.32.  But in *Price*, there was "no evidence that the jury was deadlocked," so no explicit deadlock instruction was necessary. *Id.* But other Third Circuit trial courts have given such explicit instructions.

For example, in the murder case of *Government of Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir. 1974), "the jury informed the judge that it was unable to reach a unanimous verdict and asked, 'What happens next?'" *Id.* at 935.[2] The trial judge then "instructed the jurors that although ***they need not reach a verdict and could continue to disagree***, this was an important case and the jurors should try to reach a verdict if they could." *Id.* (emphasis added). The Third Circuit concluded that the instruction was not coercive, explaining:

> ***The charge here is simply a statement that jurors were not required to reach a verdict but should try to do so.*** It required only one additional afternoon of deliberation unless the jury felt a second afternoon would be beneficial; there was no threat that the jury would be locked up indefinitely unless a verdict was reached, nor was there any indication that jurors should doubt the judgments they had arrived at independently.

*Id.* at 936 (emphasis added).

Similarly, in a drug distribution case cited by the defense at yesterday's hearing, *United States v. Richards*, 284 F. App'x 929 (3d Cir. 2008), the Third Circuit held that a deadlock instruction given after the jury's first declaration of an impasse was not coercive where the trial court merely "ask[ed] the jury to return to the jury room and determine whether it could unanimously agree on a minimum quantity of drugs ***while explicitly advising the jury that deadlock was an option***." *Id.* at 935 (emphasis added).

In *Richards*, the jury had first asked the trial judge about what would happen if it were unanimous on the charge of possession of crack with intent to distribute, but not unanimous on the interrogatory asking the jury to find the quantity of drug at issue. 284 F. App'x at 931. The trial judge explained that "[i]f you cannot reach a unanimous verdict on the matters before you, ***you should notify the court that you are hopelessly deadlocked, and then the case will have to***

---

[2] *Gereau* was later abrogated on unrelated grounds by *Corley v. United States*, 556 U.S. 303 (2009), because *Gereau* refused to suppress the defendants' statements despite a delay in presentment after arrest. *Compare Gereau*, 502 F.2d at 922-24, *with Corley*, 556 U.S. at 312-13.

*be retried in front of another jury.*  So I ask that you please go back into the jury room, continue to review the evidence before you, and continue to deliberate." *Id.* (quoting instruction; emphasis added).  The jury later informed the trial judge that it was "deadlocked on the interrogatory." *Id.* (quoting jury note).  The trial judge then asked the jury "to return to the jury room to determine whether there is a minimum quantity of drugs upon which you can unanimously agree beyond a reasonable doubt," and then further advised: "*If you are unable to do so, please respond that you are hopelessly deadlocked and we will address that situation*." *Id.* (quoting jury instruction; emphasis added).  In approving these instructions as non-coercive, the Third Circuit noted that "this case readily is distinguishable from [other cited cases] finding that coercion exists where the trial courts substantially and explicitly pressure the jury to reach a verdict or *fail to notify the jury that deadlock is an option*." *Id.* at 935 (citing *Jenkins v. United States*, 380 U.S. 445, 446 (1965), and *U.S. Gypsum Co.*, 550 F.2d at 133 (Adams, J., concurring) (emphasis added)).

Dated: November 15, 2017

Respectfully submitted,

| | |
|---|---|
| /s/ Raymond M. Brown | /s/ Murad Hussain |
| Abbe David Lowell | Kirk Ogrosky |
| Jenny R. Kramer | Murad Hussain |
| Christopher D. Man | **ARNOLD & PORTER** |
| Victoria V. Corder | **KAYE SCHOLER LLP** |
| **NORTON ROSE FULBRIGHT US LLP** | 601 Massachusetts Avenue, N.W. |
| 1200 New Hampshire Avenue, N.W. | Washington, D.C. 20001 |
| Washington, D.C. 20036 | (202) 942-5330 |
| (202) 974-5600 | |
| | |
| Raymond M. Brown | Jonathan D. Cogan |
| Justin P. Kolbenschlag | Samuel A. Stern |
| Gregg H. Hilzer | **KOBRE & KIM LLP** |
| **GREENBAUM ROWE SMITH & DAVIS LLP** | 800 3rd Avenue |
| Metro Corporate Campus One | New York, N.Y. 10022 |

P.O. Box 5600  
Woodbridge, N.J. 07095  
(732) 476-3280

(212) 488-1200

*Counsel for Defendant*  
*Senator Robert Menendez*

*Counsel for Defendant*  
*Dr. Salomon Melgen*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2017, a true and correct copy of the foregoing Motion was filed with the CM/ECF system for the United States District Court for the District of New Jersey, which will send electronic notification of the filing to all counsel of record.

       /s/  Murad Hussain